# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### JACKSON DIVISION

**THE STATE OF MISSISSIPPI, EX REL.
JIM HOOD, ATTORNEY GENERAL
FOR THE STATE OF MISSISSIPPI,**

        **Plaintiff-Counterclaim Defendant**

        **v.**                   **No.3:08-CV-780-HTW-LRA**

**ENTERGY MISSISSIPPI, INC., ENTERGY
CORPORATION, ENTERGY SERVICES,
INC., AND ENTERGY POWER, INC.,**

        **Defendants-Counterclaim Plaintiffs**

---

## DEFENDANTS' REBUTTAL MEMORANDUM IN SUPPORT OF THEIR MOTION FOR AN EXTENSION OF TIME TO FILE THEIR OPPOSITION TO PLAINTIFF'S MOTION TO REMAND AND TO SET A SCHEDULE FOR REMAND-RELATED DISCOVERY

### Introduction

Defendants-Counterclaim Plaintiffs Entergy Mississippi, Inc., Entergy Corporation, Entergy Services, Inc. and Entergy Power, Inc. (collectively, "Defendants") respectfully file this Rebuttal Memorandum in support of their motion for an extension of time [Doc 12] to file their opposition to the Plaintiffs' motion to remand and to set a schedule for conducting discovery related to the narrow factual issues raised by the remand motion.

As detailed below, the Attorney General has opposed this motion solely by arguing that Defendants has no right to remand-related discovery in this case. But remand-related discovery is permitted by this Court's Order of January 29, 2009 [Doc. 11], which the Attorney General has never challenged. Further, remand-related discovery is authorized by

Local Rule 16.1(B)(2)(b), as this Court has repeatedly stated. *Jordan v. American Suzicki Motor Corp.*, 2077 WL 3231651, *4 (S.D. Miss. 2007); *Campbell v. State Farm Fire & Cas. Co.,* 2008 WL 623903, * 3 (S.D. Miss. 2008). The discovery that Defendants seek is plainly remand-related, for it addresses *solely* the "jurisdictional facts" of the extent of diversity of citizenship and the amount in controversy. By contrast, Defendants make no claim of fraudulent joinder, and Defendants have not sought the kind of broad discovery on the merits disapproved in *Smallwood* v. *Illinois Cent. R. Co*., 385 F.3d 568 (5th Cir. 2004).

## Background

The Plaintiffs' Opposition to Defendants' Motion is pervaded with misstatements and accusations. It is thus appropriate to begin by reviewing the factors that led to the instant motion for a discovery schedule and an extension of time.

Contrary to the Attorney General's statement, the issues in this case are patently not a "matter of purely local concern." Opposition Memo, [Doc 13] ("Opp.") at 2 n.1. As the Complaint states (¶¶ 11, 30 n.5, & 39), Defendants in this case are members of the Entergy electrical system that provides service to retail customers in four different states. The power and cost allocations among these companies are regulated by the Federal Energy Regulatory Commission ("FERC") under the Federal Power Act, 16 U.S.C. § 791a, *et seq.* In his Complaint, the Attorney General claims that Defendants' interstate power and cost allocation decisions have caused too much high-cost electricity to be allocated to Mississippi and have resulted in "many hundreds of millions of dollars" of overcharges to Mississippi ratepayers between 1974 and the present. Compl. ¶ 1. The Attorney General seeks to recover damages on behalf of all ratepayers in Mississippi, including state agencies and political subdivisions, as well as consumers.

This Complaint is the most recent in a series of attempts by the Attorney General to have tribunals located in Mississippi adjudicate issues that are, in Defendants' view, within the exclusive jurisdiction of FERC. *See* Opp., at 1 & n.1. In particular, Defendants believe that the central allegations in the Attorney General's Complaint rest on claims about FERC's jurisdiction that the United States Supreme Court has TWICE held to be erroneous and inapplicable to the interstate Entergy System, including once in a case to which the Mississippi Attorney General was a party.[1] Accordingly, as the Opposition states (p. 1 & n.1), Defendants have been engaged in efforts to force the Attorney General to litigate these claims in the proper forum – FERC – and these efforts began in August, 2008, when the Attorney General had done no more than assert a right to investigate these interstate matters under state law. It has also been Defendants' consistent position that the determination of whether FERC has exclusive jurisdiction over these allegations is quintessentially an issue that must be resolved in a federal court.

When the instant Complaint was filed, Defendants removed this case under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), as well as federal question jurisdiction, 28 U.S.C. § 1331. In his motion for remand [Doc 9], the Attorney General did not merely make legal arguments that this action is not removable under these provisions. He further contended that this case falls within two CAFA "exceptions" that authorize a federal court to remand all or some of the claims in a case *after* there has been a determination that the case was properly removed. [Doc 10] In particular, the Attorney General relied on: (1) 28 U.S.C. § 1332(d)(4), which provides that a properly-removed case is to be remanded if more than two-thirds of the class members of citizens of the state and if the case is otherwise shown to be a local

---

[1] *Compare* Compl. ¶¶ 36-39 & 41-45, *with Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354 (1987) & *Entergy Louisiana, Inc. v. Louisiana Public Serv. Comm'n*, 539 U.S. 39 (2003).

and not an interstate matter; and (2) 28 U.S.C. § 1332(d)(11)(B)(1), which provides that, in a mass action, individuals with claims of less than $75,000 in damages may have their individual claims remanded to state court, with the federal court retaining jurisdiction over the rest of the claims. The Attorney General submitted the affidavit of Dr. Charles Smith [Doc 9-2] to support his assertion that over two-thirds of the class members are now citizens of Mississippi, which is a jurisdictional fact that relates to applicability of a CAFA exception.

      As detailed below, neither of these two specific arguments need be considered in connection with a motion to remand, and Defendants believe that the motion for a remand can and should be denied without reaching these issues. However, because the Attorney General raised these issues and because there is no rule of law that precludes the court from addressing these issues at the same time it rules on the motion for remand, Defendants must respond to these allegations in their reply to the Attorney General's motion for a remand. But to do so required that the Defendants conduct the discovery that the Court authorized immediately after the Attorney General filed his motion for a remand. [Doc. 11].

      *First*, discovery is necessary on the question whether two-thirds of the entities who have been Entergy Mississippi ratepayers between 1974 and the present were citizens of Mississippi when this Complaint was filed. As the Attorney General has not disputed, there are many hundreds of thousands of customers who have terminated service with Entergy Mississippi between 1974 and the present. As explained in the attached Affidavit of Martin Taylor, Entergy Mississippi simply does not have the information required to determine whether these former customers are now citizens of Mississippi. *See* Exhibit A. Defendants thus determined that they should obtain the documents relied upon by the Attorney General's expert, Dr. Smith, and depose Dr. Smith, in order to fully respond to the Attorney General's allegation. This discovery

has been served on the Attorney General. *See* Exhibit B [Doc 14]; *see also* Exhibit C, Interrogatory 9; Exhibit D, Document Requests, 2-4.

*Second*, discovery is necessary because of the Attorney General's surprising assertion that "it is clear that few, if any, claims" of individual consumers "would ever exceed $75,000" under the allegations of his Complaint and because of his invocation of 28 U.S.C. § 1332(d)(11)(B)(1) . [Doc 10, at 5]. Because overcharges of "many hundreds of millions of dollars" have been alleged, Defendants had thought it an inescapable inference that there are at least several hundred customers with claims in excess of $75,000 under the Complaint, and the mathematics that would lead to a different view are hard to imagine. Further, because 28 U.S.C. § 1332(d)(11)(B)(1) has been invoked, it may now be necessary to make a more precise estimate of the number of individuals with claims in excess of $75,000, and the Attorney General alone possesses the information required to make that assessment. That is so because the Complaint is studiously vague on a "jurisdictional fact" -- the total amount in controversy. All the Complaint alleges is that there have been "many hundreds of millions of dollars of overcharges," which means that the aggregate amount of claimed overcharges could be anywhere between $400 million and indeterminate larger amounts. A precise estimate of the number of individuals with claims exceeding $75,000 obviously requires having a clearer idea of the amount of the aggregate claims, and a series of targeted Interrogatories that seek this information have been served on the Attorney General. *See* Exhibit C, Interrogatories 1-8.

Nonetheless, in his Opposition to the motion for an extension, the Attorney General has accused Defendants of filing this motion for reasons of delay. He further contends that the law generally prohibits remand-related discovery, that the discovery that Defendants seek relates to information that Defendants already have, and that the information is irrelevant

because this case was improperly removed for other reasons. Since the filing of the Opposition, the Attorney General has sent Defendants a letter that states that the Attorney General will refuse to comply with the discovery that has been served unless and until the discovery is ordered by the Court and that also reiterates his grounds for opposing discovery. *See* Exhibit E.

The Attorney General's contentions are both irrelevant and erroneous..

## I. The Attorney General's Claims Are Irrelevant.

First, the Attorney General has misunderstood Defendants' Motion. It did not ask the Court to authorize discovery. Remand-related discovery was permitted by the Court's Order [Doc 11] of January 29, 2009. This Order recites the relevant text of Local Rule 16.1(B)(2)(b) staying "all discovery not related to the remand . . . issue" and then orders the case "stayed pursuant to the Local Rules . . . . [Doc 11, at 1] In Defendants' motion, they thus moved only for a scheduling order setting "the date by which remand related discovery [must] be completed." [Doc 12, at 5]. Defendants' Motion recited that remand-related discovery was permitted, that the Attorney General had rejected Defendants' proposal to set a schedule, and that *Barkley v. First Franklin Fin. Corp.*, 367 F.Supp.2d 1052, 1053-54 (S.D.Miss. 2005) states that that the Court "commonly sets a schedule for completion of [remand related] discovery." [Doc 12, at ¶ 7]

Thus, the Court's Order of January 29, 2009 is the complete answer to all the Attorney General's claims. It is simply not the case that ALL discovery in this case has been stayed and that Defendants had to make a specific showing before they could engage in remand-related discovery. Opp. at 4-5. Discovery was permitted under the Court's prior Order in this case, and because the Attorney General concedes that he has refused to provide discovery, there plainly should be a schedule for the completion of discovery, and the date for the filing of

Defendants' Opposition to the Remand Motion should be set some time after the discovery is completed (for example, 10 days).

## II. Defendants Have A Right To Conduct Remand-Related Discovery.

Second, the Attorney General's claims would be baseless even if the Court had not entered its Order of January 29, 2009.

Under Local Rule 16.1(B)(2)(b), the filing of a motion for a remand results in a stay *only* of "discovery *not related to remand.*" The Order of January 29, 2009, merely implements Rule 16.1(B)(2)(b) and declares it operative in this case.

Further, even in courts where the Local Rules do not provide for remand-related discovery, courts have held that parties are entitled to engage in discovery relating to the jurisdictional facts at issue here: that is, the amount in controversy and the extent of diversity of citizenship. *See, e.g., Garbin v. Gulf State Pipeline*, 2001 WL 1386067, *1-2 (E.D. La. Nov. 7, 2001)) (citing *Foret v. S. Bureau Life Ins. Co.*, 918 F.2d 534, 537 (5th Cir. 1991) & *Opelika Nursing Home, Inc. v. Richardson*, 448 F.2d 658, 666 (5th Cir. 1971)); *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 403 (5th Cir. 1987); *McCraw v. Lyons*, 863 F. Supp. 430, 435 (W.D. Ky. 1994).

This Court has recently criticized counsel for ***not*** "us[ing] the remand related discovery permitted under the local rules" (*Jordan v. American Suzuki Motor Corp.*, 2007 WL 3231651, *4 (S.D. Miss. 2007)), and only last year, this Court reminded the parties "that the local rules of Court permit remand-related discovery to proceed without a scheduling order while the case is stayed pending a decision on a motion to remand." *Campbell*, 2008 WL 623903 at *3. Defendants were forced to file the instant motion for a scheduling order [Doc 12] because the Attorney General rebuffed Defendants' efforts to negotiate a discovery schedule. The

Attorney General has now gone a step further and has flatly refused to respond to Defendants' discovery requests, notwithstanding the Court's Order of January 29, 2009 to the contrary. *See* Exhibit E.

The Attorney General now asserts that the Fifth Circuit's decision in *Smallwood* v. *Illinois Cent. R. Co.*, 385 F.3d 568 (5th Cir. 2004), holds that remand-related discovery should be rarely granted and tightly restricted. The Attorney General is wrong. *Smallwood* addressed a very narrow issue involving removal based upon allegations of so-called "fraudulent joinder," *i.e.*, the plaintiff's addition of a defendant solely to defeat diversity jurisdiction. In *Smallwood*, the defendant sought to show fraudulent joinder by advancing arguments *on the merits*: that plaintiff would not have had a cause of action against the non-diverse party in state court. *Id.* at 573. The Fifth Circuit held that a fraudulent joinder inquiry must focus on the *joinder*, not on the merits of the claims that have been advanced against all the defendants in the case, and the Court concluded that there is no improper joinder when the claim against the in-state defendant would be barred for reasons that equally apply to the claim against the out-of-state defendant. It reasoned that, in this event, "there is no improper joinder; there is only a lawsuit lacking in merit." *Id.*

The Attorney General seizes on *Smallwood's* statement that discovery "should not be allowed except on a tight judicial tether." *Smallwood*, 385 F.3d at 574. However, the Fifth Circuit was addressing discovery relating to a claim that there had been fraudulent joinder because plaintiff had no "reasonable basis of recovery under state law," for *such* discovery could easily evolve into full-fledged discovery on the merits, which is irrelevant to the jurisdictional issues raised by a motion to remand a removed action. *Id.* at 573-74. Indeed, the *Smallwood* Court emphasized that "our holding today is narrow. It applies only in that limited range of

cases where the allegation of improper joinder rests only on a showing that there is no reasonable basis [for a plaintiff to recover under state law,] and that showing is equally dispositive of all defendants." *Id.* at 576. Similarly, this Court has barred discovery when the defendant's fraudulent joinder theory of removal was barred on the "face of the complaint" and where the defendant was seeking "broad" discovery on the merits, *not* remand-related discovery addressing such jurisdictional facts as the citizenship of the parties and the amount in controversy. *Jordan v. KMS, Inc.* 192 F. Supp. 2d 658, 660-61 (S.D. Miss. 2001).

Thus, this Court has rejected any notion that *Smallwood* prohibits the remand-related discovery that Defendants here seek. In the five years since *Smallwood* was decided, this Court has not amended Local Rule 16.1(B)(2)(b) and, as noted above, it has issued two recent decisions that have pointedly reminded counsel that remand-related discovery is permitted without a scheduling order, much less a prior order of permission. The Order of January 29, 2009 acknowledges the continuing viability of remand-related discovery on jurisdictional fact issues in the context of this case. Indeed, since *Smallwood,* this Court has allowed remand-related discovery even in fraudulent joinder cases. *Barkley v. First Franklin Fin. Corp.*, 367 F. Supp. 2d 1052, 1055 (S.D. Miss. 2005) (allowing remand-related discovery where removal had been based on fraudulent joinder); *L. P. Johnson Security Services v. Acceptance Indemnity Ins Co.*, 2007 WL 2900444 (S.D.Miss. 2007) (allowing remand-related discovery in fraudulent joinder case).

Here, the right to discovery is clear. Removal was not based on a fraudulent joinder theory, so *Smallwood* is irrelevant. Further, the Attorney General's motion for remand has raised jurisdictional fact issues – relating to the extent of diverse citizens among the member of the plaintiff class and the extent of the claimed overcharges – that are *not* addressed on the

"face of the Complaint." These are "jurisdictional facts" that must be determined to resolve the Attorney General's claim that this case falls within two exceptions to this Court's CAFA jurisdiction. Because the Attorney General has relied on a declaration of an expert, it would approach a denial of due process if Defendants could not depose that expert or otherwise question his statements and opinions and their bases. After all, Dr. Smith is subject to scrutiny under Fed. R. Ev. 702.

In addition, there is no absolutely no basis for the Attorney General's unsupported assertions that Defendants already have the information that they are seeking. First, as the Attorney General does not dispute, Entergy Mississippi has many hundreds of thousands of former customers who terminated service between 1974 and the present. As demonstrated in the Affidavit of Martin Taylor of Entergy Mississippi, Defendants do not have the current addresses of these former customers, and they have no way of determining whether former customers are now citizens of Mississippi or of some other State. *See* Exhibit A. It is patently absurd for the Attorney General to assert that "this information [is] readily available through the stroke of a few keys on [Defendants'] computers." Opp. 6. Second, Entergy obviously does not know the amounts of damages that the Attorney General intends to claim in this case, for his Complaint is studiously and deliberately vague on this point, referring only to "many hundreds of millions of dollars of overcharges." As shown by Defendants' narrowly tailored interrogatories (Exhibit C, Nos. 1-8), the Attorney General can readily now provide additional information that will provide more detail about the amounts which are being claimed and that will enable Defendants to provide a far more precise estimate of the number of class members with claims exceeding $75,000.

In short, this is a case in which the motion for a remand has raised issues that "cannot be resolved without [additional] information <u>and</u> the information can only be obtained through discovery." Opp. at 5. Discovery would be proper here even if the narrow test that the Attorney General advocates were the law in this Court – as it manifestly is not.

## III. Defendants Have Established Several Independent Bases For Federal Court Jurisdiction.

The Attorney General also opposes discovery by claiming that Defendants have not even established an arguable basis for jurisdiction under CAFA or federal question jurisdiction. *See* Opp., at 8-11. He contends that this case falls outside this Court's removal jurisdiction "in the first instance" and that there is thus no reason to have discovery to develop facts relating to the Attorney General's claim that two of the "exceptions" to this Court's CAFA jurisdiction apply: the local controversy exception and the provision allowing individuals with claims of less than $75,000 to seek remands when jurisdiction under CAFA is based on the existence of a "mass action." The short answer to this claim is that the Attorney General has chosen to rely on these two exceptions by making factual claims relating to the extent of diversity of citizenship and the amount in controversy, and discovery is required to determine if the Attorney General's factual claims are accurate. If the Attorney General wants to eliminate the need for discovery, then he should withdraw his claims under these two "exceptions" to this Court's CAFA jurisdiction and rest only on his arguments that "defendants have failed to establish jurisdiction in the first instance." Opp. 8.

More fundamentally, while this is not the time or place to refute the Attorney General's arguments in his motion for a remand, only a few brief words are required to demonstrate that there plainly is a basis for this Court's jurisdiction under both CAFA and federal question jurisdiction.

**CAFA.** CAFA gives federal courts jurisdiction over two distinct types of multi-party litigation when there is minimal diversity of citizenship and over $5 million in aggregate claims: (1) representative claims that fit within the definition of "class action," and (2) "mass actions" involving claims of more than 100 individuals. The instant action is both a class action and a mass action. It is removable because there is diversity of citizenship between some of the class members and some of the defendants and because the aggregate claims are at least "many hundreds of millions of dollars." *See Louisiana ex. rel. Caldwell v. Allstate Insurance Co.,* 536 F.3d 418, 423-30 (5th Cir. 2008). The Attorney General's contrary arguments are meritless.

*First,* he asserts that the instant case is not a "class action," and that the only possible basis for CAFA jurisdiction would be if this case were a "mass action." That is wrong. To make his contrary argument, the Attorney General relies on the ground that Mississippi does not have a state law, rule, or court decision that authorizes a class action. But that is irrelevant.

This lawsuit was filed "for the benefit of" individual purchasers of electricity from Entergy Mississippi, Inc., and the Complaint contends that Mississippi law allows the Mississippi Attorney General to bring damages actions as the legal representative of ratepayers in the State. Compl. ¶ 9. These allegations make this action a "class action" within the meaning of CAFA. As Congress emphasized, the term "class action" "should not be confined solely to lawsuits that are labeled 'class actions' by the named plaintiff *or the state rulemaking authority* [and that] lawsuits that *resemble* a purported class action should be considered class actions for the purposes of applying these provisions." S. Rep. No. 109-14, at 35 (2005) (emphasis added). As Senator Reid stated, CAFA "applies to cases brought by State attorneys general enforcing State laws on behalf of State consumers." *See* 151 Cong. Rec. S1151 (daily ed. Feb. 9, 2005). Thus, courts have held a suit is a class action within the meaning of CAFA if it is a

representative suit brought on behalf of similarly situated persons. *Bullard v. Burlington Northern Santa Fe Ry. Co.*, 535 F.3d 759, 762 (7th Cir. 2008); *accord* William B. Rubenstein, Alba Conte, & Herbert B. Newberg, 1 *Newberg on Class Actions* § 1:1 (4th ed. 2008). Because this is such an action, it is a "class action" within the meaning of CAFA, notwithstanding the fact that the Mississippi Rules of Civil Procedure do not have an analogue to Fed. R. Civ. P. 23 that allows *any* private person to bring a class action. The action is removable as a "class action" because the Attorney General is asserting that *he* has the authority to bring representative actions on behalf of all the state's electric ratepayers and not just the state agencies.

*Second*, even if this Court were to determine that this case is not a "class action," jurisdiction would still be proper because this case would then be a "mass action." Indeed, in his Opposition, the Attorney General does not dispute that this case is a "mass action." Opp., at 8-9.

To argue that this Court nonetheless has no jurisdiction over this action, the Attorney General contends that a case may not be removed as a mass action because the fact that at least one Mississippi ratepayer has a claim in excess of $75,000 was not "facially apparent" from this complaint and was not specifically alleged in the Removal Petition. Opp. at 8-9, *citing* the Attorney General's Remand Memo at 5-6. This assertion is baseless, root and branch. Preliminarily, because the Complaint alleges "many hundreds of millions of dollars" in overcharges to Mississippi ratepayers, it is facially apparent that there are many ratepayers with claims of over $75,000, as the Attorney General should well know.

More fundamentally, there is no statutory requirement under CAFA that there be a showing that many or any class members have claims exceeding $75,000 at the time of removal. To make his contrary claim, the Attorney General is relying on the statutory provision that states that "the term 'mass action' means any civil action … in which monetary relief claims

of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, except that jurisdiction shall exist only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under subsection (a)." 28 U.S.C. § 1332(d)(11)(B)(i). Subsection (a), in turn, sets forth a requirement of $75,000. *See* 28 U.S.C. § 1332(a).

The Attorney General has misread this provision. The $75,000 amount-in-controversy requirement does not restrict *removal* of a mass action. As Congress stated, that requirement merely permits individual plaintiffs whose claims are valued at less than $75,000 to seek *remand* of their individuals claims, and these remands do not affect the propriety of the removal or alter the Court's jurisdiction over the claims of the remaining individuals. *See* S. Rep. No. 109-41, p. 47.

Further, the Fifth Circuit expressly so held in *Caldwell v. Allstate Ins.., supra,* 536 F.3d 418 (5th Cir. 2008). The Court held that the case before it was "properly removed" as a mass action because it was "a civil action involving the monetary claims of 100 or more persons that is proposed to be tried jointly on the ground that the claims involve common questions of law or fact; the aggregate amount in controversy is at least $5 million, this action involves claims of more than 100 Louisiana citizens who are minimally diverse from Defendants, and it is being brought in a representative capacity on behalf of those who allegedly suffered harm." *Id.* at 430. The Fifth Circuit did not discuss whether the amount-in-controversy component had been demonstrated for any of the individual claimants, for it recognized that this is not a requirement of the removal of an action.

Accordingly, the Attorney General has attempted to inject an issue unrelated to the propriety of the removal into this Court's consideration of the remand motion. But if any

such issue is to be litigated now, Defendants are entitled to discovery relating to the amount of the Attorney General's claim, for it is nowhere specified in the Complaint. *See, e.g., McCraw v. Lyons*, 863 F. Supp. 430, 435 (W.D. Ky. 1994) (explaining that a defendant "in the face of vague pleadings" can meet its burden by filing for removal, and then taking discovery on jurisdictional amount); *Garbin*, 2001 WL 1386067 at *2 (granting defendant discovery into amount in controversy). Indeed, the Complaint is studiously vague as to the total amount in controversy, stating only that there are "many hundreds of millions of dollars" in overcharges, which could mean that he has alleged overcharges that range somewhere between $400 million and higher indeterminate amounts. But as reflected in Defendants' interrogatories, it should be an easy matter for the Attorney General to provide more specificity regarding the aggregate amount in issue, which would permit more reliable estimates of the number of customers with claims exceeding $75,000. *See* Exhibit C, Nos. 1-8.

  *Third*, the Attorney General asserts that even if this case meets the threshold requirements for CAFA jurisdiction, this Court should nonetheless remand because this suit falls within CAFA's exception for local controversies in which more than two-thirds of the class members are citizens of the state, in which there are significant independent allegations of wrongdoing by the in-state defendant, in which substantial relief is sought against the in-state defendant, and in which the defendants' conduct did not cause harm outside the state. *See* 28 U.S.C. § 1332(d)(4). The Attorney General bears the burden of proving that each of these four conditions has been satisfied. While Defendants believe none of these four conditions exist, the easiest way to refute the Attorney General's reliance on this section is to refute the Attorney General's allegation that more than two-thirds of the class members are Mississippi citizens. To make this showing, Defendants certainly have the right to examine the documents that the

Attorney General's expert (Dr. Smith) reviewed before he submitted his declaration and to depose Dr. Smith. Such discovery is limited and focused on the pertinent "jurisdictional fact" issue – the extent of diversity of citizenship -- and thus is clearly authorized under the law. *See, e.g., J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 403 (5th Cir. 1987) (noting remand discovery relating to plaintiff's "principal place of business"); *Garbin*, 2001 WL 1386067 at \*1-2 (granting discovery into party citizenship); *Campbell*, 2008 WL 623903, at \*2-3 (ordering remand-related discovery into issue of whether defendant insurance agent acted with reasonable care).

Nor is there any merit to the Attorney General's assertion that Defendants otherwise have the relevant information. Although Defendant Entergy Mississippi of course has information about current customers and also often obtains forwarding addresses when customers terminate service, Defendants do not track the residences of former customers who had Entergy Mississippi service at one point in time between 1974 and the present and later terminated it. *See* Exhibit A (Taylor Affidavit, ¶¶3-4). Over the course of thirty five years, Entergy Mississippi's former customers number in the many hundreds of thousands. Defendants thus do not have the information required to determine if over two-thirds of the persons who were ratepayers between 1974 and the present are now citizens of Mississippi.

**Federal Question Jurisdiction.** Further, separate and apart from CAFA, this Court has jurisdiction over this case under 28 U.S.C. § 1331. To argue that there is no federal question jurisdiction, the Attorney General notes that he formally pled only state law causes of action and did not expressly allege a violation of the Federal Power Act or of the FERC Tariff (called the Entergy System Agreement) that governs Defendants' power supply and cost allocation decisions. But the Attorney General ignores that federal question jurisdiction exists

when, as here, a substantial question of federal law is necessarily "embedded in state law claims." *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005).

As the Fifth Circuit has held, "federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008). These tests are abundantly satisfied here.

The Attorney General alleges that the power purchasing and dispatching arm of the Entergy System – defendant Entergy Services – "illegally" dispatched and allocated Entergy Mississippi "expensive" electricity produced by sister Entergy Companies that operate in other states, rather than purchasing cheaper power that allegedly was available from third parties. *E..g.*, Compl. ¶¶ 1-3, 36-39, 42-44, 104. He also alleges that Entergy Mississippi acted illegally by "accep[ting]" this "expensive" power and by passing through all the resulting wholesale power costs to Mississippi customers through fuel adjustment clauses. *E.g.*, Compl ¶¶ 46-50, 104.

These claims necessarily raise fundamental questions under federal law. Indeed, the Attorney General is here raising a claim under federal law that the United States Supreme Court has TWICE rejected and held inapplicable to the Entergy System – including once in a case to which an earlier Mississippi Attorney General was a party. *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354 (1987) ("MP&L"); *accord Entergy Louisiana, Inc. v. Louisiana Public Serv. Comm'n*, 539 U.S. 39 (2003) ("ELI").

In particular, the Attorney General admits, as he must, that the four-state Entergy electric system is governed by "a tariff that is filed with and approved by FERC" pursuant to the Federal Power Act, 16 U.S.C. § 791a, *et seq.*, and that is known as the Entergy System Agreement. Compl. ¶ 39. But the Attorney General claims that FERC does not "regulate" the "amount and timing" of the power that is allocated among the Operating Companies within the Entergy System and that the FERC tariff permitted Entergy Mississippi independently to purchase power from outside the system and to refuse the power allocated to it by Entergy Services. Compl. ¶¶ 38-39. On this same basis, the Attorney General alleges that Entergy Services acted "illegally" in allocating Entergy Mississippi electricity generated by other Entergy companies, rather than purchasing electricity from independent producers. *Id.* ¶¶ 52-58. Both allegations are thus necessarily claims under federal law. In this regard, many of the Attorney General's more specific allegations also necessarily require decision of other issues under the FERC tariffs and are thus also questions of federal law.

In addition, the Attorney General's allegations epitomize the claims that must be decided in federal court to preserve the proper allocation of authority between FERC and state and federal courts. In this regard, the Supreme Court has twice rejected the Attorney General's claims, holding that the FERC tariffs that govern the Entergy System *require* Entergy Mississippi and each of its sister operating companies to purchase "specific quantities" of power at specific times at the "rates" established under the FERC tariffs. *MP&L*, 487 U.S. at 373-74; *accord, ELI*, 539 U.S. at 47-50. Accordingly, because federal law mandates that Entergy Mississippi incur the power costs that have been allocated to it under the Entergy System Agreement, the Supreme Court has held that states must allow these FERC-mandated wholesale costs to be flowed through to retail ratepayers – unless and until the costs are found unreasonable

by FERC. Federal law thus preempts any attempt by state officials to apply state law to "trap" or otherwise prevent recovery of these costs, and if a state believes that the costs allocated by a FERC tariff are excessive, its exclusive remedy is to file a complaint before FERC. *MP&L* at 371-73; *ELI* at 47-50.

In short, while this is not the time and place to discuss the merits of the Attorney General's Motion for a Remand, there is patently a basis for the removal of this case under both CAFA and federal question jurisdiction, and the Defendants' right to discovery cannot be denied on the basis of the Attorney General's meritless assertions to the contrary

However, given the work that Defendants have done since the motion for an extension and for a discovery schedule was filed, Defendants believe that it is not necessary that they be granted an extension until June 8, 2009 for the filing of their Opposition to the Remand motion. If the Attorney General will quickly provide the requested discovery and any reasonable follow up discovery, Defendants can file their Opposition relatively quickly thereafter. Thus, Defendants suggest that their Opposition be made due 10 days after the Attorney General provides a full response to the requested discovery or 10 days after a motion to compel is denied.

### Conclusion

For the reasons stated, the Court should order the Attorney General to comply with the discovery that Defendants have served and with any reasonable follow up discovery, and should order that the time for the filing of Defendants' Opposition to the Motion for a Remand will be extended until 10 days after the Attorney General provides a full response to the requested discovery or 10 days after a motion to compel is denied.

Respectfully submitted,

ENTERGY MISSISSIPPI, INC.,
ENTERGY CORPORATION, ENTERGY
SERVICES, INC. and ENTERGY POWER, INC.
Defendants

By their attorneys,


/s/ David W. Carpenter
DAVID W. CARPENTER, IL Bar No. 3123098
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7237
Facsimile: (312) 853-7036
dcarpenter@sidley.com


/s/ James L. Robertson
JAMES L. ROBERTSON, MS Bar No. 5612
Post Office Box 651
Jackson, MS 39205-0651
Telephone: (601) 944-7735
Facsimile: (601) 968-5593
E-mail: jlr@wisecarter.com


/s/ Michael B. Wallace
MICHAEL B. WALLACE, MS Bar No. 6904
Post Office Box 651
Jackson, MS 39205-0651
Telephone: (601) 968-5534
Facsimile: (601) 944-7738
E-mail: mbw@wisecarter.com


OF COUNSEL:

O. H. STOREY, III, AR Bar No. 69078
Deputy General Counsel
ENTERGY SERVICES, INC.
425 West Capitol Avenue, 27th Floor
Little Rock, AR 72201
Telephone: (501) 377-5879
ostorey@entergy.com

JAMES W. SNIDER, JR., MS Bar No. 7671
Managing Counsel
ENTERGY MISSISSIPPI, INC.
Post Office Box 1640
Jackson, MS 39215-1640
Telephone: (601) 969-2658
E-mail: jsnider@entergy.com

WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, MS 39205-0651
Telephone: (601) 968-5500

SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
Telephone: (312) 853-7237

## CERTIFICATE OF SERVICE

I, James L. Robertson, one of the attorneys for Defendants, do hereby certify that I have

this day filed a true and correct copy of the above and foregoing document via ECF with the

Clerk of the Court, which sent notification of such filing to:

Harold E. Pizzetta, III, Esq.
Special Assistant Attorney General
Chief, Civil Litigation Division
Office of the Attorney General
State of Mississippi
550 High Street, Suite 1100
Jackson, MS 39201
HPIZZ@ago.state.ms.us

Bridgette W. Wiggins, Esq.
Special Assistant Attorney General
Office of the Attorney General
State of Mississippi
550 High Street, Suite 1100
Jackson, MS 39201
BWILL@ago.state.ms.us

So certified, this 9th day of March, 2009.

/s/ James L. Robertson
JAMES L. ROBERTSON