IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


THE STATE OF MISSISSIPPI,
*EX REL.* JIM HOOD, ATTORNEY
GENERAL FOR THE STATE OF MISSISSIPPI                              PLAINTIFF

V.                                          CIVIL ACTION NO. 3:08cv780 HTW-LRA

ENTERGY MISSISSIPPI, INC.,
ENTERGY CORPORATION,
ENTERGY SERVICES, INC.,
ENTERGY POWER, INC., AND
FICTITIOUS DEFENDANTS A-Z                                        DEFENDANTS

## MEMORANDUM OPINION DENYING REMAND

Before the court are four motions.  Plaintiff, the State of Mississippi, has filed a

motion asking this court to remand this lawsuit to state court [docket no. 9].  The

defendants, Entergy Mississippi, Inc.; Entergy Corporation;  Entergy Services, Inc.; and

Entergy Power, Inc., have filed a motion for judgment on the pleadings [docket no. 19]

and an amended motion for judgment on the pleadings [docket no. 24].  Defendant

Entergy Mississippi, Inc., has filed a motion for leave to file an amended notice of

removal [docket no. 30].

This court first will address the plaintiff's motions related to removal and remand,

as these motions question whether this court has subject matter jurisdiction over this

lawsuit.  After a careful review of the pleadings, relevant law, and submissions of the

parties, this court is persuaded to grant the defendant's motion to amend the notice of

removal [docket no. 30] and denies the plaintiff's motion to remand [docket no. 9].

## I.  Procedural History

On December 2, 2008, the State of Mississippi, by and through Jim Hood, the Attorney General for the State of Mississippi, filed a complaint in the Chancery Court of Hinds County, Mississippi, seeking declaratory and injunctive relief, urging multiple state law claims against defendants Entergy Mississippi, Inc.; Entergy Corporation; Entergy Services, Inc.; Entergy Power, Inc.; and Fictitious Defendants A through Z. Plaintiff alleges that, in violation of Mississippi law, the defendant power companies and their officers, directors, agents, representatives or employees have engaged in fraudulent, deceptive, unfair and/or illegal acts or practices with respect to the issuance of inflated power bills to Mississippi customers.  These illegal actions, says plaintiff, violate: (1) the Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.;* (2) the Mississippi Public Service Commission Statutes and Rules and Regulations under Miss. Code Ann. § 77-1-43(2); and (3) the Mississippi Antitrust Statutes under Miss. Code Ann. § 75-21-3(a), (b) and (c).  Additionally, accuses plaintiff, these defendants are liable for (4) fraud; and (5) breach of the obligation of good faith and fair dealing.  Defendants, says plaintiff, (6) have committed the tort of unjust enrichment; (7)  should be ordered to render an accounting, because (8) plaintiff has a right to restitution and disgorgement of ill-gotten gains, as well as damages, costs, expenses and attorney fees under Miss. Code Ann. §§ 75-24-11 and 75-24-19(1)(b).

The State of Mississippi, through its Attorney General, submits these claims "(a)

in [its] sovereign capacity, as representative of, and/or as *parens patriae* on behalf of, or for the benefit of, natural persons under state law; (b) as common law *parens patriae* in [its] sovereign capacity on behalf of the State's general economy; and (c) in [its] sovereign and/or proprietary capacity" as a customer and ratepayer of Entergy Mississippi, Inc.  Complaint, ¶ 9.

The defendants removed this lawsuit from state court (Chancery Court) to this federal forum on December 29, 2008.  Defendants claimed that this court has both federal question jurisdiction, under Title 28 U.S.C. § 1331,[1] and diversity of citizenship jurisdiction under the Class Action Fairness Act, Title 28 U.S.C. § 1332(d).  Plaintiff filed its motion to remand on January 29, 2009, challenging both bases for federal subject matter jurisdiction.

The State is a party, represented by Attorney General Jim Hood, but has no citizenship for the purposes of diversity jurisdiction.  *PYCA Industries, Inc. v. Harrison County Waste Water Management Dist.*, 81 F.3d 1412, 1416(5th Cir. 1996).

The citizenships of the remaining parties are as follows.  Defendant Entergy Corporation ("Entergy Corp.") is a publicly-traded holding company incorporated in the State of Delaware, with its principal place of business in New Orleans, Louisiana.  Complaint, ¶ 11.  Defendant Entergy Mississippi, Inc. ("EMI"), which is a wholly owned subsidiary of Entergy Corporation, is organized under the laws of the State of Mississippi and has its principal place of business in Jackson, Mississippi.  Answer at 7, docket no. 2.  Defendant Entergy Services, Inc. ("ESI"), a wholly owned subsidiary of

---

[1]  Title 28 U.S.C. § 1331 states, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Entergy Corporation, is domiciled in the State of Delaware and has its principal place of business in New Orleans, Louisiana.  Entergy Power, Inc. ("EPI"), a wholly owned subsidiary of Entergy Corp., has its principal place of business in the State of Arkansas.  Complaint, ¶ 13.  EPI operates electricity generating plants in Arkansas and sells electricity on the wholesale market, including selling electricity to Entergy Arkansas, Inc., which in turn has sold electricity to the Entergy System Exchange.  *Id.*  For convenience, this court will refer to Entergy Corp. and its subsidiaries collectively as "Entergy."

## II.  Facts and Background

EMI is an electric utility that serves over 430,000 customers including households, businesses and government entities in roughly 45 counties in the western half of the State of Mississippi.  Complaint, ¶¶ 1, 25.  EMI is one of six Entergy Operating Companies ("EOCs"), which are subsidiaries of Entergy Corporation.  Complaint, ¶ 11; memo in support of judgment on the pleadings, docket no. 21 at 5.  EMI's sibling companies operate in Arkansas, Louisiana, and Texas.  Memo at 5, docket no. 21.  Each EOC owns and operates local electricity distribution facilities which serve retail customers in its service area.  *Id* at 6.  EMI and the other EOCs, or their predecessors, originally entered into an agreement, the Entergy System Agreement ("Agreement"), in the year 1951, which governs the planning and joint operating of the electricity generating units and transmission of electricity across this four-state system.  The Entergy Operating Committee, composed of representatives of Entergy Corporation and each of the EOCs, administers the Agreement and makes centralized decisions, inter alia, about building new electrical generating units, purchasing electricity

4

or electric generating capacity from third parties, and allocating costs across the system.  Memo at 7, docket no. 21.

The companies pool electricity under the Agreement.  In the Entergy System Exchange ("ESX"), EOCs with excess capacity feed electricity into the system for use by EOCs with insufficient capacity to meet customer demands in their service areas. Entergy Services, Inc. ("ESI"), under the direction of the Entergy Operating Committee, provides services to the EOCs, such as purchasing fuel for electricity production, accounting, and regulatory services.  ESI performs an accounting at the end of each month for energy transferred into and taken out of the ESX and issues Intra-System Bills to the EOCs to pay for electricity used from the pool.  Complaint, ¶ 35; Memo at 7, docket no. 21.

The Federal Energy Regulatory Commission ("FERC") is authorized by the Federal Power Act to regulate wholesale electricity sales in interstate commerce. *Entergy Louisiana, Inc. V. Louisiana Public Svc. Comm'n*, 539 U.S.39, 41, 123 S.Ct. 2050, 156 L.Ed.2d 34 (2003)(citing Federal Power Act, Title 16 U.S.C. § 824(b)).[2]

---

[2] Title 16 U.S.C. § 824(b) states in pertinent part:

(b) Use or sale of electric energy in interstate commerce
    (1) The provisions of this subchapter shall apply to the transmission of electric energy in interstate commerce and to the sale of electric energy at wholesale in interstate commerce, but except as provided in paragraph (2) shall not apply to any other sale of electric energy or deprive a State or State commission of its lawful authority now exercised over the exportation of hydroelectric energy which is transmitted across a State line. The Commission shall have jurisdiction over all facilities for such transmission or sale of electric energy, but shall not have jurisdiction, except as specifically provided in this subchapter and subchapter III of this chapter, over facilities used for the generation of electric energy or over facilities used in local distribution or only for the transmission of electric energy in intrastate commerce, or over facilities for the transmission of electric energy consumed wholly by the transmitter.

Entergy has filed the original and successor Agreements, including "service schedules" establishing wholesale rates, with FERC.  These wholesale rates govern the power transfers from one EOC to another on the ESX.

The states have a role, as well.  "State regulators establish the rates each operating company can charge in its retail sales, allowing each company to recover its costs and a reasonable return."  *Id* at 42.  In Mississippi, the Mississippi Public Service Commission ("MPSC") sets retail electricity rates for EMI to charge its customers.

Plaintiff, the State of Mississippi ("State"), alleges that EMI on regular occasions has been without the capacity to supply its customers with electricity.  To cope with these occasions, the State has had to "purchase" electricity from the ESX to make up that deficit.  Resultedly, Mississippi has become "a dumping ground for" high-cost electricity, says the State, because EMI has accepted relatively expensive electricity from ESX, instead of purchasing cheaper electricity from third parties.  Complaint, ¶ 1.  According to the State, EMI has been able to accomplish illegal sales of this "overpriced" electricity because it has a "state-sanctioned monopoly" in its service areas, and has misrepresented its costs and potential sources of supply to MPSC in order to obtain approval of its inflated retail rates.

### III. Motion to Remand: Legal Standard

Federal courts are courts of limited jurisdiction. *Hexamer v. Foreness*, 981 F.2d 821, 823 (5th Cir. 1993). Our reach is not all-encompassing; instead federal courts may only adjudicate a case or controversy within that jurisdictional realm prescribed by Congress. *Id.*

That jurisdictional portal is narrow and not every juridical dispute may gain entrance. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). Two doorways lead within: federal question jurisdiction, Title 28 U.S.C. § 1331; and/or diversity of citizenship jurisdiction, Title 28 U.S.C. § 1332. Original filings in federal court, as well as cases anxious to transfer from state court to federal court, are similarly tasked with needing to possess the right door key. Title 28 U.S.C. § 1441(a).[3] Even parties who have conjured removal papers and paid the filing fee in federal court will still be considered trespassers subject to immediate eviction once the court, upon its own motion or that of opposing counsel, notices that the rogue lawsuit has not entered properly through the federal doorway. Title 28 U.S.C. § 1447.[4]

To determine whether removal subject matter jurisdiction is present, federal courts are obliged to parse the claims in the state court petition as these claims existed at the time of removal. *Manguno*, 276 F.3d at 723. The removing defendant totes the burden of showing the propriety of the court's acquired jurisdiction. *Id.* If the removing

---

[3]Section 1441(a) states:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending. For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded.

[4]Section 1447(c) provides in pertinent part:

A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a). If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal.

party demonstrates acceptable facts in conjunction with either § 1331 or § 1332, the jurisdictional doors will swing open.  If not, that door will close.

Another key point.  Federal courts respect state courts and do not intend to interfere with proper state court jurisdiction over lawsuits lacking the appropriate grounds for federal subject matter jurisdiction.  *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 586-587, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999).  This "respect" has a label: comity.  *Id*.  This restraining doctrine, in removal disputes, expresses itself thusly: the federal court will strictly construe in favor of remand, any ambiguities in facts or state law in favor of the party seeking remand.  *Manguno*, 276 F.3d at 723.

Entergy has removed this action citing both this court's diversity and federal question subject matter jurisdiction.  Entergy argues that this matter falls under the diversity jurisdiction statute as a class or mass action with minimal diversity.  Entergy also invokes Title 28 U.S.C. § 1331, claiming this lawsuit involves a substantial issue of federal law.

## IV.  Diversity Jurisdiction Under Title 28 U.S.C. § 1332(d)

Entergy removed this action claiming that this court has original jurisdiction of the matter under Title 28 U.S.C. § 1332(d) as a class action or, alternatively, as a mass action. Notice of Removal, ¶¶ 11-22. Plaintiff argues that this action is neither.

In 2005, Congress promulgated the Class Action Fairness Act ("CAFA") which expanded federal diversity subject matter jurisdiction to combat perceived abuses in class action litigation and "abusive practices by plaintiffs' class counsel." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, (11th Cir. 2007); Dwight Carswell, Comment,

8

*CAFA and Parens Patriae Actions*, 78 U. CHI. L. REV. 345, 349 (2011).  CAFA's expressed aim is "to provide for more uniform federal disposition of class actions affecting interstate commerce."  *Lowery*, 483 F.3d 1197.

Codified at Title 28 U.S.C. § 1332(d), CAFA rewrites the jurisprudence of removal of lawsuits from state courts to federal courts urged as "class actions" or those encompassing large numbers of parties and damages.  Prior to CAFA's enactment, all defendants had to be diverse from all plaintiffs in order for the federal courts to have diversity jurisdiction.  Class actions, premised upon diversity jurisdiction were burdened with the same requirement:  that all named plaintiffs had to be diverse from all defendants.  *Lowery*, 483 F.3d at 1194 n.24.  CAFA modified this requirement, as well as the amount necessarily involved in the litigation.  *Id* at 1195.  CAFA also allows removal without the consent of all defendants.  *Id* (citing Title 29 U.S.C. § 1453(b)).

CAFA jurisdiction has limitations.  Lawsuits brought to protect the interests of the general public, as well as some which concern local matters and are "issues of particular state concern [. . .]" are outside CAFA's embrace and subject to remand.  *Id* at 1193-94.  These areas will be discussed below.

**A. Class Action**

Title 28 U.S.C. § 1332(d)(1)(B) defines "class action" for the purposes of diversity jurisdiction as "any civil action filed under Rule 23 of the Federal Rules of Civil Procedure, or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action. . ."

A class action lawsuit has a special identity.  Rule 23 outlines extensive

9

requirements and procedures to ensure that a class action has the distinctive features which justify a departure from "the usual rule that litigation is conducted by and on behalf of the individually named parties only." *Wal-Mart Stores, Inc. v. Dukes*, ___ U.S. ___, 131 S.Ct. 2541, 2550, 180 L.Ed.2d 374 (2011).  The State of Mississippi is one of the few states which has no statute authorizing class action lawsuits.  *See American Bankers Insur. Co. of Florida v. Booth*, 830 So.2d 1205 (Miss. 2002).  When Mississippi adopted the Mississippi Rules of Civil Procedure, "Rule 23, Class Actions, was intentionally, not accidentally, omitted."  *Id* at 1214.  "The rule is that Mississippi does not permit class actions."  *Id*.

Further, in this suit, the State claims that Entergy violated the Mississippi Consumer Protection Act, Miss Code Ann 75-24-1, *et seq.* ("MCPA").  This statute unmistakably states that it does not authorize filing of a class action lawsuit.  Miss. Code Ann. § 75-24-15(4).  Here is what it says:  "[n]othing in this chapter shall be construed to permit any class action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person."

Entergy argues that, although the MCPA disallows class actions brought by individual citizens, both the MCPA and Mississippi antitrust statutes authorize the Attorney General to bring a representative suit on behalf of citizens of Mississippi who have been harmed.  These statutes, says Entergy, are equivalent to Rule 23 which authorizes representative lawsuits, and, thus, qualify this lawsuit as a "class action" under the CAFA definition.

This court is not persuaded that the forms of representative suits allowed to be

10

prosecuted by the Attorney General of the State of Mississippi conform to the definition

of class action in the CAFA statute.  The State of Mississippi does not possess a Rule

such as Rule 23, and the State Supreme Court has stated explicitly that class actions

are prohibited in Mississippi.  830 So.2d at 1214.  The CAFA statute defines a "class

action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or

similar State statute or rule of judicial procedure authorizing an action to be brought by

1 or more representative persons as a class action."  Title 28 U.S.C. § 1332(d)(1)(B).

Mississippi has no such equivalent.  *See* 830 So.2d at 1214.  This court finds,

therefore, that this lawsuit is not a "class action" as defined in the CAFA statute.

### B. Mass Action

A lawsuit, to be removable under CAFA as a mass action, must meet the

following minimum conditions:

> (1) an amount in controversy requirement of an aggregate of $5,000,000
> in claims; (2) a diversity requirement of minimal diversity; (3) a numerosity
> requirement that the action involves the monetary claims of 100 or more
> plaintiffs; and (4) a commonality requirement that the plaintiffs' claims
> involve common questions of law or fact.  *Lowery*, 483 F.3d at 1202-
> 1203(citing § 1332(d)(11)(B)(i)'s definition of a mass action and
> incorporating certain referenced requirements drawn 1332(d)(11)(A) which
> defines a class action under CAFA).

The subsection of 1332, which defines a mass action, incorporates certain

requirements of a class action.  Thus, the Lowery court combined the requirements

sprinkled throughout the statue which apply to a mass action.  The definition of a mass

action also references a $75,000 amount in controversy requirement for plaintiffs'

individual claims.  Because the parties dispute whether this criterion is a jurisdictional

component of a mass action lawsuit, the court will discuss it in more detail below.

Plaintiff argues that this is not a mass action because: (1) the $75,000.00 requirement has not been established, (2) the local controversy exception applies, and (3) because this litigation is on behalf of the general public and falls under the general public exception.

Entergy counters that these exceptions do not apply here, and CAFA law does not require that it prove at the time of initial removal that any of the plaintiffs' claims exceed $75,000 in damages.  Further, says Entergy, it can prove by a preponderance of the evidence that numerous plaintiffs indeed do have claims in excess of $75,000, exclusive of interest and costs.  To cement this point, Entergy points to two affidavits submitted by its expert,  Charles J. Cicchetti, Ph.D., in which he concludes that many prospective plaintiffs in this lawsuit have claims for damages in excess of $75,000.

### 1.  Mass Action vs. *Parens Patriae*

CAFA extends jurisdiction over mass actions "brought individually by large groups of plaintiffs."  *Lowery*, 483 F.3d 1198.  If the State had its druthers, this court would end its analysis there, finding only one plaintiff on the face of the complaint.[5] Before addressing the exceptions to CAFA, therefore, this court will review the jurisprudence which Entergy argues allows it to remove a single plaintiff lawsuit under a statute addressing class and mass actions.

Entergy cites the Fifth Circuit case of *Louisiana ex rel. Caldwell v. Allstate Ins. Co*, 536 F.3d 418 (5ᵗʰ Cir. 2008), arguing from that case that "a *parens patriae* action

---

[5]  The State attacks removal of a single plaintiff lawsuit under CAFA saying, "Entergy's arguments [. . .] highlight the inherent problems with allowing a party to remove a single plaintiff case and then blissfully turn a blind eye to the fact that only one plaintiff exists."  Rebuttal at 6 n.6, docket no. 26.

brought by a state attorney general is . . . a 'mass action' under CAFA when the case is brought on behalf of more than a hundred individual claimants and seeks monetary relief for them under statutory or common law provisions," despite having only one plaintiff.  Memo in opposition to remand at 11, docket no. 23.

*Parens patriae* actions originated in the common law right of the King to serve as guardian over "people who lacked the legal capacity to act for themselves."  *Id* at 425. A state may bring a *parens patriae* action when the interest it is asserting "relates to its sovereignty" or where it is trying to "vindicate a 'quasi-sovereign interest.'" *Id* at 425- 426.  "[A] state has a quasi-sovereign interest in the health and well-being–both physical and economic–of its residents in general."  *Id* at 426.  An indicator of a quasi- sovereign interest is if it is something a state might address through its lawmaking power.  *Id*.

The Fifth Circuit in *Caldwell* has interpreted CAFA to expand the removability of *parens patriae* suits under CAFA.  *Id* at 425.  In *Caldwell*, the attorney general for Louisiana sued Allstate Insurance Company and a number of other defendants under the Louisiana Monopolies Act, alleging that the defendants had worked together to "illegally suppress competition in the insurance and related industries."  *Id* at 422.  The State charged Allstate, et al, with "manipulating Louisiana commerce by rigging the value of policyholder claims" and illegally raising the policyholders' premiums.  *Id*.

The Fifth Circuit looked at each claim in the complaint and assessed, claim-by- claim, who would benefit from prosecuting that claim.  The State, in addition to seeking an injunction against price fixing by insurance companies, was suing for restitution of

illegal profits and treble damages, as allowed in the State's anti-trust laws.  The

Louisiana Monopolies Act, created a private right of action for citizens to sue on their

own behalf.  The court found that the State of Louisiana was the real party in interest

for injunctive relief, but denied remand because the State was suing for restitution of

artificially high insurance premiums charged to state citizens.  The court decided that

the individual policyholders were the real parties in interest with respect to the claim for

restitution.

The *Caldwell* opinion instructs this court to evaluate a lawsuit on a claim-by-claim

basis, instead of determining the interest a state has in the lawsuit as a whole.  Look

behind the labels in the complaint to the substance of the claims to determine who is

the real party in interest, and says *Caldwell*, consider the citizenship of real parties in

interest to determine subject matter jurisdiction.[6]

---

[6] The *Caldwell* opinion has been debated by district and circuit courts since its decision. The Circuits are split in their approach to determining whether a purported *parens patriae* action may be removed under CAFA.  *Nevada v. Bank of America Corp.*, 672 F.3d 661, (9th Cir. 2012). The Seventh Circuit has discussed Caldwell's claim-by-claim approach and rejected it as unwarranted by the CAFA legislation.  *LG Display Co., Ltd. v. Madigan*, 665 F.3d 786, 773 (7th Cir. 2011).  In *LG Display*, the court acknowledged that a claim-by-claim analysis might yield a finding that individual consumers were real parties in interest even, if the state attorney general also had *parens patriae* standing in the lawsuit.  This conclusion, that both the state and the individual consumers are real parties in interest, would allow for minimal diversity and removal under CAFA.  The court in *LG Display*, however, favored an evaluation of the State's interest in the lawsuit as a whole.  *Id*.  The Ninth Circuit has joined the Seventh Circuit in its approach to these actions, choosing to determine if the state is the real party in interest based on "the essential nature and effect of the proceeding as it appears from the entire record."  672 F.3d at 670.

A key challenge in applying the *Caldwell* rationale to *parens patriae* lawsuits brought by a state attorney general, as cited in the Honorable Judge Leslie Southwick's dissent, is that looking past the parties in the complaint as it is filed requires the district court to not only rewrite the plaintiff's complaint, but to force the plaintiff to recruit or name parties not initially in the lawsuit.  *Caldwell*, 536 F.3d at 433 (Southwick, J. dissenting, "If the majority is correct and the suit is presently deformed, I find we do not have jurisdiction until the necessary transformation into a mass or class action occurs.").

The United States Supreme Court case of *Alfred L. Snapp & Son, Inc. v. Puerto Rico,*

In this case, the State of Mississippi unquestionably has an interest in the regulation of the retail, intrastate utility market and in the protection of its citizens from illegal over-billing for a basic necessity such as electricity.  The United States Supreme Court has found this to be an important interest, "traditionally associated with [the State's] police power."  *New Orleans Public Svc., Inc. v. Council of the City of New Orleans*, 491 U.S. 350, 365, 109 S.Ct. 2506, 2517, 105 L.Ed.2d 298 (1989).

Entergy argues that the State is not the <u>only</u> "real party in interest" for the claims brought under the MCPA and antitrust statutes, because these statutes authorize restitution to those harmed by Entergy's alleged illegal conduct.  Even if the State has a quasi-sovereign interest in these claims, the presence of consumers as "real parties in interest" creates minimal diversity.  *See In Re: Katrina Canal Litigation v. AAA Insur.*, 524 F.3d 700, 706 (5th Cir. 2008).[7]

---

*ex rel., Barez*, 458 U.S. 592, 102 S.Ct. 3260, 73 L.Ed.2d 995 (1982), and its progeny, demonstrate that the "real party in interest" analysis has a long history and beneficial application in certain circumstances.  In *parens patriae* actions brought by individual attorneys general and removed under CAFA, this analysis leads to an awkward litigation gymnastics, in which the State, as plaintiff, is attempting to minimize the number of plaintiffs and claims against the defendant, and defendants are actively soliciting plaintiffs to sue them.

This court is duty bound, however, to follow Fifth Circuit precedent as it is written, and will do its utmost carefully and accurately to apply the *Caldwell* decision faithfully.

[7]  This court's interpretation of *Caldwell* has been influenced by its reading of *In Re: Katrina Canal Litigation v. AAA Insurance*.  In the *Katrina Canal* case the State asserted its own proprietary interests in conjunction with filing a class action on behalf of a particular group of individuals for payment of coverage under the class members insurance policies.  The Fifth Circuit decided this case just three months before deciding the *Caldwell* case.  The Court in its *Katrina Canal* opinion found that despite a lack of "citizenship" by the State, because the State was representing both its own interest and the interest of individual class member, the presence of the individual class members satisfied the requirement for minimal diversity under CAFA.

In *Caldwell*, the Court addressed similar issues in the context of a case brought solely by the State Attorney General.  The *Caldwell* court found that the State's demand for treble damages was authorized under a statute granting the right to seek this remedy exclusively to individual insurance customers, and not the State.  The *Caldwell* court stated that "under § 137 [of the state Monopolies Act] the policyholders, and not the State, are the real parties in

15

This court must, therefore, assess whether, despite the State being the only plaintiff listed on the face of the complaint, additional "real parties in interest" may serve to confer CAFA jurisdiction on this court.

### a.  Real Party in Interest

"Rule 17 governs the determination of who can properly assert a claim. 'An action must be prosecuted in the name of the real party in interest.'  'The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery.'"  *In re: Miller*, 307 Fed.Appx. 785, 788 (5th Cir. 2008)(citing *Wieburg v. GTE Sw. Inc.*, 272 F.3d 302, 306 (5th Cir. 2001)).

In the case of *Caldwell v. Allstate,* the State demanded treble damages under a statute that explicitly granted individual consumers the right to sue for this remedy.  The defendant here has cited sections 75-24-11[8] and 75-24-15[9] as allowing for direct

interest."  536 F.3d at 429.

This court has interpreted the Mississippi statutes in question to grant both the State and the individual ratepayers status as "real parties in interest" with rights enforceable under the States' complaint.  The presence of both the State and the ratepayers satisfies the minimal diversity necessary for CAFA jurisdiction.  If, however, the *Caldwell* opinion is read to say that the State must be a nominal party with no substantive legal right with respect to a specific claim in the complaint, and acting solely in a representative capacity for those individuals who own that substantive legal right, CAFA jurisdiction might be lacking.

[8]  Miss. Code Ann § 75-24-11 says:

The court may make such additional orders or judgments, including restitution, as may be necessary to restore to any person in interest any monies or property, real or personal, which may have been acquired by means of any practice prohibited by this chapter, including the appointment of a receiver or the revocation of a license or certificate authorizing that person to engage in business in this State, or both.

[9] Miss. Code Ann § 75-24-15 says:

(1) In addition to all other statutory and common law rights, remedies and defenses, any person who purchases or leases goods or services primarily for personal, family or household

16

restitution to consumers for damages based on violations of the MCPA.  Section 75-21-9,[10] says Entergy, provides a private right of action for individual plaintiffs to recoup losses suffered from a violation of Mississippi's antitrust laws.

The threshold issue here is whether the defendants can show that a discrete group of Mississippi consumers have a legal right to demand damages under one of the Mississippi Code sections involved in this litigation, given the facts in this case.  The parties asserting this court's jurisdiction bear the burden to show the jurisdictional prerequisites are satisfied. *Manguno,* 276 F.3d at 723.

---

purposes and thereby suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment by the seller, lessor, manufacturer or producer of a method, act or practice prohibited by Section 75-24-5 may bring an action at law in the court having jurisdiction in the county in which the seller, lessor, manufacturer or producer resides, or has his principal place of business or, where the act or practice prohibited by Section 75-24-5 allegedly occurred, to recover such loss of money or damages for the loss of such property, or may assert, by way of setoff or counterclaim, the fact of such loss in a proceeding against him for the recovery of the purchase price or rental, or any portion thereof, of the goods or services.

(2) In any private action brought under this chapter, the plaintiff must have first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved by the Attorney General.

(3) In any action or counterclaim under this section of this chapter, a prevailing defendant may recover in addition to any other relief that may be provided in this section costs and a reasonable attorney's fee, if in the opinion of the court, said action or counterclaim was frivolous or filed for the purpose of harassment or delay.

(4) Nothing in this chapter shall be construed to permit any class action or suit, but every private action must be maintained in the name of and for the sole use and benefit of the individual person.

[10] Miss. Code Ann § 75-21-9 says, "[a]ny person, natural or artificial, injured or damaged by a trust and combine as herein defined, or by its effects direct or indirect, may recover all damages of every kind sustained by him or it and in addition a penalty of five hundred dollars ($500.00), by suit in any court of competent jurisdiction. Said suit may be brought against one or more of the parties to the trust or combine and one or more of the officers and representatives of any corporation a party to the same, or one or more of either. Such penalty may be recovered in each instance of injury. All recoveries herein provided for may be sued for in one suit."

b.  Section 75-24-11

Section 75-24-11 states "The court may make such additional orders or judgments, including restitution, as may be necessary to restore to any person in interest any monies or property, real or personal, which may have been acquired by means of any practice prohibited by this chapter."  This section of the act appears on its face to allow the Attorney General to pursue restitution for losses suffered by ratepayers from Entergy's alleged practice of overcharging them for electricity.

Mississippi law provides precedent supporting the ability of the State to recover restitution under Section 75-24-11 for both itself, in its proprietary interests, and for Mississippi residents, under a theory of unjust enrichment.

Unjust enrichment "is a creature of equity closely associated with 'implied contracts, quasi-contracts and trusts.'"  Mississippi courts have defined unjust enrichment as a situation in which no legal contract exists "but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another."  *Omnibank of Mantee v. United Southern Bank*, 607 So.2d 76, 92 (Miss. 1992).

In *Hood v. BASF Corp.,* the Chancery Court denied the defendant's motion to dismiss, finding that the State had a valid claim for unjust enrichment under the Section 75-24-11.  The court compared a claim for unjust enrichment to the term restitution in the statute saying these terms "are basically interchangeable in today's law." 2006 WL 308378, *13 (Miss. Ch. 2006).  The court determined that the State qualifies as a "person" under this section of the statute and can recover for its own losses, and can also recover for the losses of its citizens.

18

The court finds, therefore, without addressing the merits of the State's claim, that Section 75-24-11 may provide a viable statutory conduit for the State to recover restitution on the part of consumers injured by defendant's conduct.

Under the mandate of the *Caldwell* case, this court finds that, while the State has both a proprietary interest in this lawsuit as a ratepayer and may have the right to bring this suit in its *parens patriae* capacity, the individual ratepayers who were allegedly overcharged and stand to recoup their payments to EMI are also real parties in interest. Because the citizenship of these parties, which includes several hundred thousand Mississippi customers of Entergy, must be considered in the analysis of jurisdiction, this court finds that minimal diversity exists between the parties in this lawsuit.

### 2. Amount in Controversy

Defendant first argues that removal is proper without evidence of the number of plaintiffs with claims that exceed the jurisdictional minimums. And even if the $75,000 individual amount in controversy is a jurisdictional requirement, says Entergy, it can prove that a sufficient number of plaintiffs' claims exceed that amount.

#### a.  The $75,000 amount in controversy requirement

Entergy says that evaluation of jurisdiction over a mass action lawsuit is a two-step process. First, says Entergy, the court must determine if the entire lawsuit is properly removed by examining threshold jurisdictional requirements which are: 1) an aggregate amount in controversy of $5 million; 2) minimal diversity; 3) monetary claims of 100 or more plaintiffs which rest on common issues of law or fact. *See Lowery*, 483 F.3d at 1202-1203 (saying that *at a minimum* these requirements must be met to satisfy

CAFA mass action jurisdiction).[11]  Entergy says that after removal, the court then should remand any plaintiffs' individual claims which do not satisfy the $75,000 individual amount in controversy requirement.  This court is persuaded that Entergy's interpretation is consistent with the language of the statute, a reasonable interpretation of the wording in the context of CAFA as a whole, and with the legislative history behind its enactment.

The State cites the Ninth Circuit case, *Abrego Abrego v. Dow Chemical Co.*, 443 F.3d 676 (9th Cir. 2006), which did not decide this issue, but found that the removing party had the burden to show that at least one plaintiff had claims valued at more than $75,000.  *Id* at 688-89.  In *Abrego*, the complaint showed that each plaintiff's claim was for at least $25,000 and 1,160 plaintiffs were suing.  *Id*.  The amount in controversy of at least $29,000,000, exceeded the aggregate jurisdictional minimum for a CAFA class action.  But the Abrego court affirmed the lower court's remand saying:

> Dow, however, has not established that even one plaintiff satisfies the $75,000 jurisdictional amount requirement of § 1332(a), applicable to mass actions by virtue of § 1332(d)(11)(B)(i). Although, as noted, we do not decide whether this case could go forward if only one or a few plaintiffs are within the category over whom "jurisdiction shall exist," we do conclude-as should be obvious-that the case cannot go forward unless there is at least one plaintiff whose claims can remain in federal court. *Id* at 689.

---

[11]  *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007) did not decide whether the $75,000 individual amount in controversy requirement in the definition of a mass action was a threshold jurisdictional requirement or whether it provided an exception to CAFA jurisdiction for individual claims for less than that amount.  The court, though, provided extensive analysis of arguments on both sides, and determined that a preferred reading of the statute indicates that the individual amount in controversy requirement does not govern the jurisdiction of the federal court over the entire lawsuit, but requires the court to remand individual claims for less than $75,000 after removal.  The *Lowery* court decided the matter of jurisdiction, however, by finding that the defendant had not proven that the lawsuit satisfied the $5,000,000 aggregate amount in controversy requirement.

The Eleventh Circuit in *Lowery v. Alabama Power Company* carefully analyzed the $75,000 individual amount in controversy requirement in the CAFA statute.  Just as the *Abrego* court, the *Lowery* court did not ultimately decide this issue, but provided careful analysis of the $75,000 individual amount in controversy requirement.

The plain reading of the statute indicates that the $75,000 individual amount in controversy is an exception to CAFA jurisdiction, not a threshold requirement.  The Lowery court examined this issue and found it inconclusive.  But this court reads the definition of mass action to indicate by its plain language that the $75,000 amount in controversy requirement to be an exception to or exclusion from CAFA jurisdiction.  The statute defines a mass action as:

> any civil action [. . .] in which monetary relief claims of 100 or more persons are proposed to be tried jointly on the ground that the plaintiffs' claims involve common questions of law or fact, *except* that jurisdiction shall exist only over those plaintiffs *whose claims* in a mass action satisfy the jurisdictional amount requirements under subsection (a)[$75,000, exclusive of interest and costs].  Title 28 U.S.C. § 1332(d)(11)(B)(I)(emphasis added).

Congress described the characteristics of a mass action and then stated "except that" jurisdiction may be maintained only over certain claims within that universe.  The mass action refers to the entire lawsuit, which must meet the numerosity requirement and have claims aggregated based on common law and fact.  This language indicates that Congress intended to create broader jurisdiction, and then eliminate those claims that do not meet certain requirements found in § 1332(a).

Merriam-Webster's Collegiate Dictionary, 10th edition, defines the word "except" as "with the exclusion or exception of; *to take out or leave out from a number or a whole*; exclude [. . .]."  Merriam-Webster's includes the word "only" as a definition of

21

except, illustrating it with the sentence "I would go except that it's too far."  This court reads the most appropriate definition within the context of the statutory language to be to take out or leave out from a number or a whole.  This interpretation is consistent with the statutory language which distinguishes jurisdiction over the lawsuit from the amount in controversy requirement for individual claims.

The *Lowery* court expressed concern that this reading possibly could leave the court with jurisdiction over a lawsuit, where no plaintiffs can meet the individual amount in controversy requirement.  483 F.3d at 1204.  This is a valid concern, which has not been answered to date.  A lawsuit without even a single plaintiff cannot be considered a class or mass action.  This court has examined the statutory language and applied cannons of interpretation to do the least damage to the statute, while applying it in a pragmatic way to the facts before it.

The cannons of statutory interpretation direct this court, when possible, to "give effect . . . to every word and clause" and to read the language in question "in the context of the statute as a whole."  *Id* at 1204.  To find that jurisdiction requires that all plaintiffs have claims which exceed the $75,000 amount in controversy at the time of removal, when interpreted within the statute as a whole, would necessarily render the aggregate amount in controversy requirement as mere surplusage.  *Id.*  Mass action jurisdiction unquestionably requires  claims of 100 plaintiffs or more which have an aggregate amount in controversy over $5,000,000.  *Id*; Title 28 U.S.C. §§ 1332(d)(2), (d)(11)(b)(I).  If the "$75,000 individual amount in controversy requirement" were also a threshold jurisdictional requirement, lawsuits which met this requirement would necessarily have an aggregate amount in controversy of $7,500,000 (100 plaintiffs X

22

$75,000 = $7,500,000).  *Lowery*, 483 F.3d at 1204-1205.

When the plain language of the statute and application of cannons of interpretation do not definitely decide the issue, legislative history may serve as a useful tool to interpret a statute.  The Committee Report on the bill introducing CAFA, Senate Judiciary Committee, Senate Report 109-14, states that:

> Subsection 1332(d)(11)(B)(i) includes a statement indicating that jurisdiction exists only over those plaintiffs whose claims in a mass action satisfy the jurisdictional amount requirements under section 1332(a). The Committee notes that the intent of this proviso is as follows. If a mass action satisfies the criteria set forth in the section (that is, it involves the monetary relief claims of 100 or more persons that are proposed to be tried jointly on the ground that the claims involve common questions of law or fact and it meets the tests for federal diversity jurisdiction otherwise established by the legislation), it may be removed to a federal court, which is authorized to exercise jurisdiction over the action. Under the proviso, however, it is the Committee's intent that any claims that are included in the mass action that standing alone do not satisfy the jurisdictional amount requirements of Section 1332(a) (currently $75,000), would be remanded to state court. Subsequent remands of individual claims not meeting the section 1332 jurisdictional amount requirement may take the action below the 100-plaintiff jurisdictional threshold or the $5 million aggregated jurisdictional amount requirement. However, so long as the mass action met the various jurisdictional requirements at the time of removal, it is the Committee's view that those subsequent remands should not extinguish federal diversity jurisdictional over the action.

Legislative history cannot control the decision of this court, and resort to its counsel is generally only appropriate if the court finds the statute to be ambiguous.  *See McLaurin v. Noble Drilling, Inc.*, 529 F.3d 285, 288 (5th Cir. 2008).  But in instances where the disputed issue is not authoritatively resolved by reference to the statute, reliance on legislative history may be helpful.  *Id*.  In this case the legislative history explicitly addresses the question before the court and is fully consistent with this court's own reading of the statute.

The *Abrego* court's rationale that at least one plaintiff must meet the $75,000 individual amount in controversy requirement makes pragmatic sense.  Jurisdiction would mean nothing over a lawsuit if every plaintiff is remanded, because there would be no "class" or "mass" to pursue the litigation.  This does not translate, however, to a determination that a CAFA mass action exists only when the removing defendant can initially prove that 100 purported plaintiffs each have claims which exceed $75,000 in damages.

The reasoning in the *Lowery* case is also persuasive that the $75,000 individual amount in controversy should be treated as an exception to CAFA mass actions, and not a threshold requirement.  This court need not decide the issue here because the defendant has provided evidence to show that a number of the prospective plaintiffs have claims which exceed the individual statutory minimum.

### b.  Evidence of plaintiffs with claims that exceed $75,000

Entergy also seeks leave to amend its notice of removal to add its claim that numerous plaintiffs have damages in excess of the minimum jurisdictional amount. Title 28 U.S.C. § 1653 allows that "[d]efective allegations of jurisdiction [may] be amended, [upon terms,] in the trial or appellate courts."  *Jebaco, Inc. v. Harrah's Operating Co., Inc.*, 587 F.3d 314, 322 (5th Cir. 2009) (citing § 1653 and equating it with Fed. R. Civ. P. 15(a)).  The Fifth Circuit "has stated that leave to amend is to be granted liberally unless the movant has acted in bad faith or with a dilatory motive, granting the motion would cause prejudice, or amendment would be futile."  *Id* (citations omitted).

Entergy has submitted two sworn affidavits from expert Charles J. Cicchetti, Ph.D., which Entergy says, prove by a preponderance of the evidence that as many as

24

1,017 current and past ratepayers would have claims in excess of $75,000.  Docket
nos. 23-2, 25-11.  In his analysis, Cicchetti indicates that, depending on the amount of
damages assumed and different calculations for the time-value-of money, the number
of ratepayers from 1974 to 2008 who would have damages claims in excess of $75,000
are between 13 and 1,017.  Docket no. 25-11, Table 2.  The variance in number of
plaintiffs stems from different assumptions about possible aggregate damages, ranging
from a total of $25 million in overcharges up to $400 million in overcharges, and
different methods of accounting for the time value of money.

     The State has not attacked the adequacy of the method defendant's expert used
to calculate the number of plaintiffs whose claims satisfy the § 1332(a) requirement.
The State argues that: (1) a failure by Entergy to include in its allegations that at least
one of the putative plaintiffs has suffered $75,000 in damages constitutes a defective
notice of removal; and (2) Entergy has made a faulty assumption that the State's
claimed damages are $400 million based on the statement in the complaint that EMI's
"actions have resulted in many hundreds of millions of dollars of increased electricity
and fuel costs paid by Mississippi consumers."

     Entergy, however, has provided a supplemental affidavit from its expert which
provides the number of prospective plaintiffs whose claims exceed $75,000 based on
an aggregate damages claim of $25 million, $50 million, $100 million, $200 million,
$300 million, and $400 million.  The State has not challenged the experts' methodology
of extrapolating a number of prospective plaintiffs whose claims purportedly satisfy the
CAFA requirements, but only challenged one of the expert's assumptions as
speculative.  Accordingly, this court finds that with the expansion of the expert's

analysis to cover a range of aggregate amount in controversy assumptions, Entergy has met its burden to show that some number of plaintiffs, more probably than not, have claims which exceed $75,000.

This court finds that whether the $75,000 amount in controversy requirement per claim is a jurisdictional requirement or an exception which excludes specific plaintiffs' claims from CAFA jurisdiction is immaterial here.  Entergy has provided sufficient evidence that numerous plaintiffs, if considered real parties in interest, have damages claims for at least $75,000.

The parties have not engaged in discovery at this time. If during discovery, evidence surfaces that no plaintiffs have claims in excess of $75,000, or that Entergy's method of projecting the number of prospective plaintiffs with claims of this value reasonably comes into question, this court will allow the State to raise this argument again and will consider the ramifications at that time.

### 3.  Local Controversy Exception

The State cites an exception to CAFA class and mass action jurisdiction which would divest this court of diversity jurisdiction if this lawsuit is primarily between local prospective plaintiffs against a significant in-state defendant.  The Fifth Circuit has characterized this exception as a "mandatory abstention provision" in the CAFA statute. *Hollinger v. Home State Mutual Ins. Co.*, 654 F.3d 564, 567 (5th Cir. 2011).  This exception should be narrowly construed "for the district courts to ferret out the controversy that uniquely affects a particular locality to the exclusion of all others."  *Id* at 570 (citations omitted).  This local controversy exception states:

(4) A district court shall decline to exercise jurisdiction under paragraph (2)--

26

(A)(i) over a class action in which--

(I) greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed;

(II) at least 1 defendant is a defendant--
(aa) from whom significant relief is sought by members of the plaintiff class;
(bb) whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and
(cc) who is a citizen of the State in which the action was originally filed; and

(III) principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed; and

(ii) during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons;

As mentioned above, the removing party bears the burden to prove that the case was properly removed and this court has subject matter jurisdiction.  Once the court determines that removal was proper, the party requesting remand bears the burden to prove an exception to jurisdiction.  *Preston v. Tenet Healthsystem Memorial Medical Ctr., Inc.*, 485 F.3d 804, (5th Cir. 2007).  This is not to say that the burden to prove jurisdiction ever shifts away from the party invoking it, but an exception to CAFA jurisdiction may be likened to "a defense" to jurisdiction.  The State, as the party urging this defense, must meet its burden to show this defense is adequate and appropriate under the circumstances.

The threshold question here is whether the State can show that greater than two-thirds of the members of the purported plaintiff group are citizens of Mississippi.  The

State asserts that this lawsuit only makes claims on behalf of current EMI customers. The State's expert, Professor Charles E. Smith, Jr., has provided a sworn affidavit of the method he used to estimate "the proportion of an alleged group of putative class members that, on December 2008, were (a) U.S. Citizens, (b) residents of the State of Mississippi, and (c) possessed of an evident intent to remain as such."  Smith aff., ¶ 3, docket no. 9-2.  He projected that the proportion of residential EMI customers in western Mississippi, which would remain residents of Mississippi until the end of 2009 was greater than 95%.  This evidence aims to demonstrate that more than two-thirds of the putative group of plaintiffs who were current customers of EMI at the time that the State filed this lawsuit would continue to be Mississippi residents for one year.

Entergy claims that the State is suing on behalf of current and former EMI customers who allegedly have been overcharged for electricity from 1974 to the present.  Entergy has provided the sworn affidavit of expert Jeffrey A. Dubin, Ph.D., countering the State's contention that two-thirds of the putative class of plaintiffs are Mississippi residents.  Entergy's expert grappled with the proportion of the total number of EMI customers from 1974 through 2008 who were still Mississippi residents at the time the State filed this lawsuit.  This calculation takes into consideration both current and former EMI customers.  Entergy's expert has estimated that the "percentage of current and former EMI customers from the period 1974 to 2008 who were residents of Mississippi at the end of 2008 [to be] between 56.0% and 61.5% under varying assumptions using migration data from the IRS."  Dubin aff., ¶ 10, docket no. 23-7.

The parties have stipulated that if the court reads the complaint to demand restitution for all ratepaying customers of EMI from 1974 to 2008, then the number of

28

plaintiffs who are Mississippi residents is less than two-thirds of the total number of prospective plaintiffs.  If the court reads the complaint to demand restitution only for current EMI customers (in 2008) the State can show, and the defendant stipulates, that this two-thirds resident requirement is met.  Stipulation and joinder, docket nos. 27, 28.

The State rests its argument on the language of the complaint, saying that it does not explicitly demand restitution for former EMI customers.  The State says that its use of the word "customer" in the complaint signifies "a current and continued relationship with the business," not someone who "stops buying from the business."  Rebuttal at 7 n.7, docket no. 26.  Further, the State argues that because this is a *parens patriae* action, it only has standing to sue for current Mississippi residents.  Thus, by definition, the suit may only encompass the interests of Mississippi residents.  Plaintiff has not provided, nor has this court found definitive authority addressing whether a State Attorney General may sue only on behalf of current state residents, or if he may legally sue on behalf of former citizens of the state.

Entergy cites the complaint language in which the State charges Entergy with illegal overcharges since 1974.  Complaint, ¶ 9.  A muscular piece of evidence Entergy offers is a transcript of a hearing in the Chancery Court of Hinds County, Mississippi.  As transcribed therein, Attorney General Jim Hood argued that the Chancery Court had jurisdiction, and not the Public Service Commission, because the Chancery Court had the authority to award damages to current and *past Entergy customers*, whereas the Public Service Commission could only give refunds to current ratepayers.  Transcript at 17-18, docket no. 23-11.

As mentioned above, the State bears the burden to prove this exception to

CAFA jurisdiction.  While the State has provided strong arguments, and this court is mindful that the plaintiff is master of its complaint, this court finds that the State has failed to satisfy its burden in this instance.  The Attorney General, prosecutor of this action, has made statements on the record in a state court proceeding which indicate that he intends to claim restitution for individual ratepayers both past and present.  The language of the complaint is not conclusive in this regard, but provides a clear legal vehicle to enforce restitution "to restore to any person in interest any monies or property [. . .] which may have been acquired by means of any practice prohibited by this chapter."  Miss. Code Ann. § 75-24-11.

### 4.  General Public Exception

Federal courts must remand mass actions, despite satisfying the minimal diversity, numerosity, and aggregate amount in controversy criteria under CAFA, if the mass actions fall into the "general public exception."  This exception states that a "mass action shall not include any civil action in which all of the claims in the action are asserted on behalf of the general public (and not on behalf of individual claimants or members of a purported class) pursuant to a State statute specifically authorizing such action."  Title 28 U.S.C. § 1332(d)(11)(B)(ii)(III).

The finding that the State has brought this action in its representative capacity to recoup restitution for individual EMI ratepayers precludes application of the general public exception.  Even if the State has a quasi-sovereign interest in protecting Mississippi consumers from being overcharged for a basic utility, the presence of the discrete group of EMI ratepayers who have a substantive legal right to receive restitution for alleged overcharges for their electricity means that "all of the claims in the

30

action" are not asserted on behalf of the general public.  This court finds that the State has not met its burden to prove this exception applies in this case.

### V.  Conclusion

This court has contemplated the arguments of both parties, and found that under the authority of Fifth Circuit precedent, given the circumstances and facts in the record, CAFA confers diversity subject matter jurisdiction on this court over this lawsuit.  While the State has argued strenuously that certain exceptions to that jurisdiction apply here, it has failed to carry its burden to prove those exceptions.  Further, defendant Entergy has supplemented its initial notice of removal to address one of the State's key points of contention, the amount in controversy requirement of $75,000 which applies to individual plaintiffs' claims.  For these reasons, this court grants the defendant's motion for leave to amend its notice of removal [docket no. 30], and denies the plaintiff's motion to remand [docket no. 9].

Entergy has argued that this court has federal question jurisdiction, in addition to diversity jurisdiction.  This court has found that subject matter jurisdiction, under the CAFA statute, applies.  Entergy's assertion of an additional ground for jurisdiction, therefore, need not be addressed here.


**SO ORDERED AND ADJUDGED**, this, the 25th day of August, 2012.

                                        **/s/ Henry T. Wingate**
                                        UNITED STATES DISTRICT JUDGE

Memorandum Opinion Denying Remand
Civil Action No. 3:08-cv-780-HTW-LRA