# In the Matter of:

## The State of Mississippi Rel. Jim Hood, Attorney General for the State of Mississippi

*vs.*

## Entergy Mississippi, Inc., Entergy Corporation, et al

## Spencer S. Yang, Ph.D.

February 22, 2018



504-833-3330
www.currenland.com



EXHIBIT
C

```
 1        THE WITNESS:
 2              Plaintiffs is complaining about
 3        Entergy's misconduct, fraud and deceptive
 4        practices, and my understanding is that
 5        plaintiffs is not challenging the retail
 6        structure.  And, of course, because of
 7        the Entergy's misconduct, it may
 8        translate ultimately into the inflators
 9        -- inflated monthly bill for Mississippi
10        ratepayers, but that's not the essential
11        aspect of this case.  This case is about
12        misconduct, fraud, and deception, and as
13        a result, Mississippi ratepayers
14        suffered.
15   EXAMINATION BY MR. BREEDVELD:
16        Q.   Did you participate in developing
17   the Bates White report on behalf of Mississippi
18   Public Service Commission with regard to the
19   subject of EMI's proposal to join MISO?
20        A.   I vaguely recall that I made some
21   contribution on that, but while I'm sitting
22   here, unless you provide the documents, I
23   cannot exactly what contribution I was making
24   in that case.
25        Q.   Let me go back to damages real
```

```
 1               I understand.
 2          THE WITNESS:
 3               Right.
 4   EXAMINATION BY MR. BREEDVELD:
 5          Q.   I just want to know if you've seen
 6   them before.
 7          A.   Yeah, I've seen them before.
 8          MR. BREEDVELD:
 9               It's probably a good time to stop
10            and look over my notes, if that works for
11            you.
12          MR. PIONTEK:
13               All right.
14               (Whereupon a recess was taken at
15            1:56 P.M., and the proceedings reconvened
16            at 2:18 P.M.)
17   EXAMINATION BY MR. BREEDVELD:
18          Q.   I'm going to hand you what's been
19   marked as Deposition Exhibit No. 3.  If you
20   will identify that for the record, please.
21   Probably the second page is your best title.
22          A.   (Witness examines document.)
23               I see the title.
24          Q.   Can you go ahead and read it into
25   the record for me?
```

```
1        A.   Title is Evaluation of the Entergy
2   Mississippi Proposal to Join MISO.  (As read.)
3        Q.   And this was a report prepared by
4   Bates White; is that correct?
5        A.   That's right.
6        Q.   And I think we talked earlier in the
7   deposition, you said you participated to some
8   extent in the development of this report?
9        A.   That's right.
10       Q.   Will you turn to page 16 for me?
11       A.   Page --
12       Q.   16.
13       A.   16.  Well, first of all, my
14  participation is de minimus, probably most
15  likely answering questions, and it was very
16  short.  So I haven't read this testimony.  I
17  never wrote any portion of this testimony.  So
18  I could read it, but remember that I didn't
19  contribute anything in terms of writing this
20  testimony.
21       Q.   All right.
22       A.   What page you said?
23       Q.   16.
24       A.   16.
25       Q.   I'm going to ask you under that
```

```
 1    Section 3.1.6, the QF put benefit --
 2         A.   Yes.
 3         Q.   -- if you will read the first two
 4    paragraphs there.  And then let me know when
 5    you're done.
 6         A.   (Witness examines document.)
 7              Okay.  I finished reading.
 8         Q.   I'm going to ask a question about
 9    the first two sentences in the second paragraph
10    there.  I'm going to read them into the record
11    just so we've got it.
12              Those sentences read, The main
13    factor in reducing production cost in the joint
14    RTO cases is the elimination or rationalization
15    of the current requirement that Entergy
16    purchase significant volumes of energy from
17    qualifying facilities, QFs, on an as-available
18    basis.  Because this QF put energy is not
19    scheduled in advance, Entergy is obligated in
20    the status quo to commit its system resources
21    as if the QFs are not expected to generate and
22    to accommodate and purchase generation when it
23    does materialize -- purchase the generation
24    when it does materialize.  This imposes
25    significant inefficiencies on the system.  (As
```

```
 1   read.)
 2              Do you have any reason to disagree
 3   with that passage of this Bates White report?
 4        A.    I agree with this.
 5        Q.    And circling back around to some of
 6   our earlier discussion, you're not challenging
 7   the amounts of flexible resources or reserves
 8   that the system is committing and dispatching.
 9   You're just challenging what resources were
10   used to do so, is what it really boils down to;
11   right?
12        MR. PIONTEK:
13              Object to the form; mischaracterizes
14         his testimony.
15        THE WITNESS:
16              Again, as I said, the -- Entergy as
17         a system has to meet varying loads at all
18         times.
19   EXAMINATION BY MR. BREEDVELD:
20        Q.    And maintain reserves?
21        A.    Maintain reserves.
22        Q.    Okay.  And your point is you just
23   think they're using the wrong resources to do
24   it?
25        MR. PIONTEK:
```

```
 1
 2
 3
 4
 5
 6
 7
 8                    WITNESS' CERTIFICATE
 9
10
11        I have read or have had read to me
12   the foregoing transcript and find same to be
13   true and correct with the exception of any
14   changes or corrections listed on the attached
15   amendment sheet.
16
17
18
19        _____
          SPENCER S. YANG, Ph.D.
20
21        _____
          DATE SIGNED
22
23
24
25
```

```
 1                  REPORTER'S CERTIFICATE
 2          This certification is valid only for a
     transcript accompanied by my original signature
 3   and original required seal on this page.
            I, Kathy Shaw-Gallagher, Certified Court
 4   Reporter in and for the State of Louisiana, as
     the officer before whom this testimony was
 5   taken, do hereby certify that SPENCER S. YANG,
     Ph.D., to whom oath was administered, after
 6   having been duly sworn by me upon authority of
     R.S. 37:2554, did testify as hereinabove set
 7   forth in the foregoing 180 pages; that this
     testimony was reported by me in stenotype
 8   reporting method, was prepared and transcribed
     by me or under my personal direction and
 9   supervision, and is a true and correct
     transcript to the best of my ability and
10   understanding; that the transcript has been
     prepared in compliance with transcript format
11   guidelines required by statute or by rules of
     the board, and that I am informed about the
12   complete arrangement, financial or otherwise,
     with the person or entity making arrangements
13   for deposition services; that I have acted in
     compliance with the prohibition on contractual
14   relationships, as defined by Louisiana Code of
     Civil Procedure Article 1434 and in rules and
15   advisory opinions of the board; that I have no
     actual knowledge of any prohibited employment
16   or contractual relationship, direct or
     indirect, between a court reporting firm and
17   any party litigant in this matter nor is there
     any such relationship between myself and a
18   party litigant in this matter nor is there any
     such relationship between myself and a party
19   litigant in this matter; I am not related to
     counsel or to the parties herein, nor am I
20   otherwise interested in the outcome of this
     matter.
21
              _____
22            KATHY SHAW-GALLAGHER, CCR, RPR
              Certified Court Reporter
23            Curren Court Reporters
              749 Aurora Avenue
24            Suite 4
              Metairie, Louisiana  70005
25
```