**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| THE STATE OF MISSISSIPPI, EX REL. | ) | |
| JIM HOOD, ATTORNEY GENERAL | ) | |
| FOR THE STATE OF MISSISSIPPI, | ) | |
| | ) | |
| Plaintiff-Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | **No. 3:08-CV-780-CWR-LRA** |
| | ) | |
| ENTERGY MISSISSIPPI, INC., ENTERGY | ) | |
| CORPORATION, ENTERGY SERVICES, | ) | **ORAL ARGUMENT REQUESTED** |
| INC., AND ENTERGY POWER, INC., | ) | |
| | ) | |
| Defendants-Counterclaim Plaintiffs. | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' MOTION**
**FOR SUMMARY JUDGMENT AS A MATTER OF STATE LAW**

Roy D. Campbell, III (MSB 5562)
J. William Manuel (MSB 9891)
Alicia N. Netterville (MSB 105055)
BRADLEY ARANT BOULT
CUMMINGS LIP
One Jackson Place
188 East Capitol Street, Suite 400
P.O. Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
rcampbell@bradley.com
wmanuel@bradley.com
anetterville@bradley.com

Charles E. Ross (MSB 5683)
James L. Robertson (MSB 5612)
Rebecca Hawkins (MSB 8786)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, MS 39205-0651
(601) 968-5534 – Telephone
(601) 944-7738 – Facsimile
jlr@wisecarter.com
cer@wisecarter.com
rwh@wisecarter.com

Sanford I. Weisburst, *Pro Hac Vice*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
sandyweisburst@quinnemanuel.com

*Counsel for Defendants (continued on next page)*

Tianna H. Raby (MSB 100256)
Christopher R. Shaw (MSB 100393)
ENTERGY MISSISSIPPI, INC.
308 E. Pearl Street, Suite 700 (39201)
Mail Unit M-ELEC-4A
P.O. Box 1640
Jackson, MS  39215-1640
(601) 969-2656 – Telephone
(601) 969-2696 – Facsimile
traby@entergy.com
cshaw4@entergy.com

John A. Braymer, *Pro Hac Vice*
Associate General Counsel
ENTERGY SERVICES, INC.
639 Loyola Avenue, Suite 2600
New Orleans, LA  70133
jbrayme@entergy.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................... iii

TABLE OF EXHIBITS ......................................................................................................... vii

INTRODUCTION ...................................................................................................................1

ARGUMENT ............................................................................................................................1

I.      DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S ANTITRUST CLAIM ...........................................................1

      A.     The Antitrust Claim Is Barred By *Cumberland* ............................................1

      B.     Plaintiff Has Not Properly Defined A Relevant Market ...............................2

      C.     No Evidence Supports A Claim Based On Entergy's Alleged
Refusal To Deal With Independent Power Producers ...................................2

      D.     There is No Evidence Of Antitrust Injury ....................................................3

II.     DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S CONSUMER PROTECTION CLAIM ...................................4

      A.     The Consumer Protection Claim Is Barred By *Cumberland*. ........................4

      B.     Plaintiff Does Not Seek Injunctive Relief, A Prerequisite
For Awarding Restitution Or Civil Penalties ...............................................5

      C.     Defendants Made No Misrepresentations To Consumers
Upon Which Consumers Reasonably Relied ...............................................6

      D.     Plaintiff Cannot Recover Restitution Or Damages Based
On Purchases By Private Mississippi Parties ..............................................6

III.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S COMMON LAW CLAIMS ....................................................8

      A.     *Parens Patriae* Does Not Allow Recovery On Behalf of Private Parties ......8

      B.     Plaintiff Cannot Prove Essential Elements Of His Fraud Claim ..................10

i

C.    Plaintiff Cannot Prove A Claim For Breach Of The Common Law DutyOf Good Faith And Fair Dealing ........................................................10

D.    Plaintiff Is Not Entitled To An Accounting ...................................................11

IV.    ANY CLAIMS ON BEHALF OF PRIVATE PERSONS ARISING THREE YEARS BEFORE THE SUIT ARE BARRED BY THE STATUTE OF LIMITATIONS ...........................................................................11

V.    LACHES AND ESTOPPEL BAR PLAINTIFF'S CLAIMS ..............................11

VI.    ENTERGY CORPORATION AND ENTERGY POWER, INC. ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE THAT THESE ENTITIES ENGAGED IN DIRECT CONDUCT OR THAT THEY ARE VICARIOUSLY LIABLE FOR EMI'S DIRECT CONDUCT ...........................................................................12

CONCLUSION ...........................................................................................................15

CERTIFICATE OF SERVICE ..................................................................................17

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Aiken v. Rimkus Consulting Grp. Inc.*, 333 F. App'x 806 (5th Cir. 2009) (unpub.).....................15

*Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel. Barez*, 458 U.S. 592 (1982).......................8, 9

*Arnoult v. CL Med. SARL*, No. 1:14-cv-271-KS-MTP,
    2015 WL 5554301 (S.D. Miss. Sept. 21, 2015)........................................................................14

*Brown Shoe Co. v. United States*, 370 U.S. 294 (1962)................................................................2

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ...........................................3

*City of Los Angeles v. Lyon*, 461 U.S. 95 (1983)..........................................................................5

*Griffin v. HSBC Mortg. Servs., Inc.*, No. 4:14-CV-0132-DMB-JMV,
    2015 WL 4041657 (N.D. Miss. July 1, 2015) ......................................................................13

*Harris v. City of Houston*, 151 F.3d 186 (5th Cir. 1998) ..............................................................5

*Hood ex rel. Miss. v. Microsoft Corp.*, 428 F. Supp. 2d 537 (S.D. Miss. 2006) ...........................8

*Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc.*,
    No. CV 16-00634 JMS-KJM, 2018 WL 491780 (D. Haw. Jan. 19, 2018) .............................4

*In re Dynamic Random Access Memory Antitrust Litig.*,
    No. M 02-1486 PJH, 2007 WL 2517851 (N.D. Cal. Aug. 31, 2007) ......................................9

*Indep. Tr. Corp. v. Fidelity Nat'l Title Ins. Co. of N.Y.*, 577 F. Supp. 2d 1023
    (N.D. Ill. 2008).....................................................................................................................10

*Jayco Sys., Inc. v. Savin Bus. Mach. Corp.*, 777 F.2d 306 (5th Cir. 1985) ...................................2

*Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418 (5th Cir. 2008) ..............................8

*Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773 (5th Cir. 1997)...................................................13

*Major Mart, Inc. v. Mitchell Distrib. Co.*, 46 F. Supp. 3d 639 (S.D. Miss. 2014) .........................2

*Miss. ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796 (5th Cir. 2012),
    *rev'd on other grounds*, 571 U.S. 161 (2014)....................................................................4, 7

*New York ex rel. Abrams v. Seneci*, 817 F.2d 1015 (2d Cir. 1987) ..........................................8, 9

*New York ex rel. Schneiderman v. Intel Corp.*, No. CIV. 09-827-LPS,
    2011 WL 6100446 (D. Del. Dec. 7, 2011) ..........................................8, 9

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) ..................................................8, 9

*Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405 (3d Cir. 1997)....................4

*Smith v. St. Regis Corp.*, 850 F. Supp. 1296 (S.D. Miss. 1994),
    *aff'd*, 48 F.3d 531 (5th Cir. 1995) .......................................................15

*State of Okla. ex rel. Johnson v. Cook*, 304 U.S. 387 (1938)...................................8, 9

*Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961) .....................................2

*Todd v. Exxon Corp.*, 275 F.3d 191 (2d Cir. 2001) ...............................................2

*United States v. Beebe*, 127 U.S. 338 (1888) ..................................................11

*Unites States v. Bestfoods*, 524 U.S. 51 (1998) ...............................................13

*United States v. Colgate & Co.*, 250 U.S. 300 (1919) ...........................................3

*Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398 (2004) ...............3

**Federal Administrative Decisions**

*Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 1984 WL 565319 (1984)................................6

**State Cases**

*Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196 (Miss. 2001) .................................10, 11

*Bailey v. Estate of Kemp*, 955 So. 2d 777 (Miss. 2001)...........................................11

*Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331 (Miss. Ct. App. 2013) .............................15

*Buchanan v. Ameristar Casino Vicksburg, Inc.*, 957 So. 2d 969 (Miss. 2007)......................13, 14

*Canadian Nat. Ry. Co. v. Waltman*, 94 So. 3d 1111 (Miss. 2012) ................................14

*City of Aspen v. Kinder Morgan, Inc.*, 143 P.3d 1076 (Colo. App. 2006)....................................4

*Cumberland Tel. & Tel. Co. v. State ex rel. Attorney General*,
  54 So. 446 (Miss. 1911) ............................................................ 1, 2, 4

*Dixie Greyhound Lines, Inc. v. Miss. Pub. Serv. Comm'n*, 200 So. 579 (Miss. 1941) .................. 1

*First Nat'l Bank of Jackson v. Huff*, 441 So. 2d 1317 (Miss. 1983) ............................... 7

*Gano v. Delmas*, 105 So. 535 (Miss. 1925) ........................................................ 3

*Hunter v. Hankinson*, 106 So. 514 (Miss. 1925) ............................................... 5, 6

*Lincoln County v. Entrican*, 230 So. 2d 801 (Miss. 1970) ......................................... 7

*McKesson Corp. v. State of Miss.*, Order, Cause No. 2011-M-01066-SCT
  (Miss. Dec. 15, 2011) (unpub.) ................................................................. 5

*State ex rel. Horne v. Autozone, Inc.*, 275 P.3d 1278 (Ariz. 2012) ............................... 7

*Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331 (Miss. 2004) ......................... 3

*Penn Nat'l Gaming, Inc. v. Ratliff*, 954 So. 2d 427 (Miss. 2007) ................................ 14

*State v. Woodruff*, 150 So. 760 (Miss. 1933) .................................................... 11

*Swartzfager v. Saul*, 213 So. 3d 55 (Miss. 2017) ............................................... 11

*Pickering v. Langston Law Firm, P.A.*, 88 So. 2d 1269 (Miss. 2012) .............................. 7

*Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175 (Miss. 2004) ............................. 11

*Watson Labs., Inc. v. State of Miss.*, No. 2014-CA-01213-SCT,
  2018 WL 372297 (Miss. Jan. 11, 2018) ....................................................... 6, 10

*Wicker v. Union Cty. Gen. Hosp.*, 556 So. 2d 297 (Miss. 1989) ................................... 2

**Federal Rules**

Fed.R.Civ.P. 12 .................................................................................. 12

**State Statutes**

Miss. Code Ann. § 15-1-49 ....................................................................... 11

Miss. Code Ann. § 75-21-3 ........................................................................ 1

Miss. Code Ann. § 75-24-3 ................................................................................6

Miss. Code Ann. § 75-24-5 ................................................................................5

Miss. Code Ann. § 75-24-9 ................................................................................5

Miss. Code Ann. § 75-24-11 .......................................................................5, 6, 7

Miss. Code Ann. § 75-24-13 ................................................................................7

Miss. Code Ann. § 75-24-19 ................................................................................5

Miss. Code Ann. § 77-3-42 ................................................................................12

H.B. 2396, 51st Legl, 1st Reg. Sess. (Ariz. 2013) ...........................................7

## TABLE OF EXHIBITS

Submitted as Attachments to Defendants' Motion
for Summary Judgment as a Matter of State Law (Doc. 266)

| | |
|---|---|
| Exhibit A | Plaintiff's Answers to Interrogatories, Nos. 1 and 3 (April 10, 2017) |
| Exhibit B | Opening Expert Report of Dr. David DeRamus (excerpts) |
| Exhibit C | Deposition Transcript of Plaintiff's Rule 30(b)(6) Witness Crystal Secoy (April 19, 2018) (excerpts) |
| Exhibit D | Order, *McKesson Corp. v. State of Mississippi* |
| Exhibit E | Plaintiff's Second Supplemental Disclosures (August 24, 2017) |
| Exhibit F | Entergy System Agreement, Attachment 1 to the Declaration of Michelle Thiry |
| Exhibit G | Direct Testimony of Theodore H. Bunting, Jr. (MPSC, July 7, 2008) (excerpts) |
| Exhibit H | Direct Testimony of Jay A. Lewis (MPSC, October 20, 2008) |
| Exhibit I | Declaration of Robert M. Hawkins |

## INTRODUCTION

Defendants[1] separately moved for summary judgment on the grounds that Plaintiff's claims are preempted by Mississippi or federal law. *See* Doc. 262. If the Court grants that motion, it does not need to decide this motion. But if the Court denies the preemption motion and considers the merits of Plaintiff's claims, the Court should grant Defendants summary judgment because, as discussed below, Plaintiff has failed to establish elements essential to each of his claims.[2]

## ARGUMENT

## I. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ANTITRUST CLAIM

### A. The Antitrust Claim Is Barred By *Cumberland*

Plaintiff's claim under the Mississippi Antitrust Act ("MAA") (Doc. 135 ¶¶ 119-121), based on Miss. Code Ann. § 75-21-3, is foreclosed by *Cumberland Tel. & Tel. Co. v. State ex rel. Attorney General*, 54 So. 446 (Miss. 1911). *Cumberland* held that telephone rates regulated by the MPSC's predecessor (the Railroad Commission[3]) were not subject to challenge under the MAA because the MAA was not intended to interfere with the Commission's existing powers. *Id.* at 448. The Court reasoned that "the Legislature intended that the [regulatory] laws for the supervision of common carriers should constitute a complete and independent system within themselves, and that the anti-trust laws were not intended as any part of such system." *Id.* at 449.

Here, Plaintiff alleges that every aspect of Defendants' alleged misconduct caused an inflation in EMI's retail rates above what Plaintiff contends they should have been.[4] But the MPSC

---

[1] Entergy Mississippi, Inc. ("EMI"), a utility that provides electricity to customers in Mississippi; Entergy Corporation, parent company of EMI; Entergy Services, Inc. ("ESI"), a service company for other Entergy entities; and Entergy Power, Inc. ("EPI"), a company that buys and sells wholesale power.

[2] The Statement of Facts in Defendants' preemption brief (Doc. 263 at 5-15) is incorporated by reference.

[3] *See Dixie Greyhound Lines, Inc. v. Miss. Pub. Serv. Comm'n*, 200 So. 579, 583 (Miss. 1941).

[4] (Ex. A at Resp. to Interrogatory No. 3; Ex. B at 2; Ex. C at 32:20-22.) "Ex. _" denotes exhibits submitted as attachments to the subject motion for summary judgment, Doc. 266; *see* Table of Exhibits, *supra*, at vii.

has the same extensive, and exclusive, regulatory authority to establish retail electricity rates as the Railroad Commission had to establish telephone rates in *Cumberland*. The MAA thus does not provide a cause of action to challenge electricity rates established by the MPSC.

**B.     Plaintiff Has Not Properly Defined A Relevant Market**

Even if *Cumberland* somehow does not apply, to establish an antitrust claim, Plaintiff must define a relevant market, in terms of both product and geography. *See, e.g.*, *Wicker v. Union Cty. Gen. Hosp.*, 556 So. 2d 297, 300 (Miss. 1989); *Jayco Sys., Inc. v. Savin Bus. Mach. Corp.*, 777 F.2d 306, 319 (5th Cir. 1985).[5] A properly defined product market includes the product at issue and all reasonably interchangeable substitutes. *See, e.g.*, *Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962). A properly defined geographic market includes the area of effective competition in which the sellers (or in a monopsony context, the buyers) operate and to which the buyers (sellers) can practically turn as alternatives to transacting with the defendant. *See, e.g.*, *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 331-33 (1961) (monopoly); *Todd v. Exxon Corp.*, 275 F.3d 191, 201-02 (2d Cir. 2001) (monopsony). Proper definition of a relevant market is necessary to determine whether a company has a sufficient share to have market power. *See, e.g.*, *Jayco*, 777 F.2d at 319. Plaintiff asserts that Defendants have monopoly or monopsony market power in one or more markets (Ex. B at 12-13), but he has failed to provide any evidence of a properly defined market, either in terms of product or geography, under the above standards.

**C.     No Evidence Supports A Claim Based On Entergy's Alleged Refusal To Deal With Independent Power Producers**

The antitrust laws do not generally restrict "the long-recognized right of a trader or a manufacturer engaged in private business freely to exercise his own independent discretion as to

---

[5] Courts look to federal antitrust law in analyzing the MAA. *See, e.g.*, *Major Mart, Inc. v. Mitchell Distrib. Co.*, 46 F. Supp. 3d 639, 656 (S.D. Miss. 2014).

parties with whom he would deal." *E.g.*, *Gano v. Delmas*, 105 So. 535, 537 (Miss. 1925) (citing *United States v. Colgate & Co.*, 250 U.S. 300 (1919)); *Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko, LLP*, 540 U.S. 398, 408 (2004). Accordingly, to state an antitrust claim challenging a firm's refusal to deal, a plaintiff must establish the exception to the general rule: that (1) the defendant unilaterally terminated and refused to continue a voluntary course of dealing, even if compensated at retail price; *and* (2) the defendant was willing to forsake short-term profits to achieve an anticompetitive end. *See Trinko*, 540 U.S. at 408-09.

Plaintiff asserts that EMI or the Entergy System refused to purchase energy from Independent Power Producers ("IPPs"). (Ex. B at 19.) Plaintiff, however, has no evidence that EMI or the Entergy System once had, but then terminated, such a course of dealing. In addition, Plaintiff has no evidence that Entergy was forsaking short-term profits to achieve an anticompetitive end. To the contrary, Plaintiff asserts that EMI was *increasing* its short-term profits by avoiding retirement of its legacy units, which, according to Plaintiff's witness Dr. DeRamus, increased the size of EMI's rate base, which is used by the MPSC to determine the rates EMI may charge its retail customers. (Ex. B at 22-23.)

### D. There Is No Evidence Of Antitrust Injury

To withstand summary judgment, Plaintiff must produce evidence of antitrust injury, which is "'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.'" *Owens Corning v. R.J. Reynolds Tobacco Co.*, 868 So. 2d 331, 344 (Miss. 2004) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). The antitrust laws are intended to protect competition, not competitors. *See, e.g.*, *Brunswick*, 429 U.S. at 488.

Plaintiff asserts that EMI harmed competition by using energy from its own (and other EOCs') generating units instead of purchasing energy from IPPs. (Ex. B at 19.) But courts have

held that such conduct cannot support an antitrust claim because the utility is both a producer/seller

of energy and a buyer of energy, and thus is not properly viewed as competing with IPPs to supply

itself. *See, e.g.*, *Schuylkill Energy Res., Inc. v. Pa. Power & Light Co.*, 113 F.3d 405, 415-17 (3d

Cir. 1997) (defendant's policy of favoring its own units over IPPs could not harm competition

because IPP was defendant's supplier, not its competitor, and thus there was no antitrust injury);

*Hu Honua Bioenergy, LLC v. Hawaiian Elec. Indus., Inc.*, No. CV 16-00634 JMS-KJM, 2018 WL

491780, at *11-*13 (D. Haw. Jan. 19, 2018) (same).[6]

## II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CONSUMER PROTECTION CLAIM

### A. The Consumer Protection Claim Is Barred By *Cumberland*

As discussed in Point I.A, *supra*, *Cumberland* held that the Legislature was aware of the

Railroad Commission and its regulatory authority when the MAA was enacted, and thus the

Legislature could not have intended that the MAA provide a cause of action to challenge rates

established by the Commission. This logic applies equally to the Mississippi Consumer Protection

Act ("MCPA"), which, like the MAA, was enacted after the Commission and its regulatory

authority were already in place.[7]

---

[6] To the extent Plaintiff asserts that EMI and/or the Entergy System refused to purchase from IPPs in order to increase its rate base (Ex. B at 3, 15-16, 19, 22-23), that conduct is not within the purview of the antitrust laws. Instead, it pertains to the details of how a *regulated* monopolist's prices are set by the regulator. *See, e.g.*, *Schuylkill*, 113 F.3d at 414; Point I.A, *supra*.

Additionally, Plaintiff has not articulated any damages theory that corresponds to his antitrust cause of action, and the lone damages theory Plaintiff did put forth for his entire case is preempted for the reasons explained in Defendants' separate motion for summary judgment. *See* Doc. 263 at 36-37.

Finally, to the extent that the State, through Plaintiff, may be seeking compensatory damages for private parties under the MAA, that is not allowed. *See Miss. ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 801 (5th Cir. 2012) (MAA does not allow restitution to be recovered by State for other parties because Mississippi law "prohibits double recovery for the same harm" and State cannot recover for injury to consumers while preserving consumers' statutory right under § 75-24-9 to bring their own claim), *rev'd on other grounds*, 571 U.S. 161 (2014); *see also infra* n.13 (statutory remedy is exclusive).

[7] Other state courts have reasoned similarly. *See, e.g.*, *City of Aspen v. Kinder Morgan, Inc.*, 143 P.3d 1076, 1079 (Colo. App. 2006).

**B.    Plaintiff Does Not Seek Injunctive Relief, A Prerequisite For Awarding Restitution Or Civil Penalties**

Plaintiff's MCPA claims seek restitution pursuant to Miss. Code Ann. § 75-24-11 and civil penalties pursuant to § 75-24-19.  But a court may order restitution or penalties under the MCPA only if the plaintiff states a viable claim for an injunction under § 75-24-9.  This prerequisite is described in § 75-24-11:  "The court may make such *additional* orders or judgments, including restitution ...."  (Emphasis added.)  Similarly, § 75-24-19 provides that civil penalties may be awarded only in an injunction action "under § 75-24-9."  Further, the Mississippi Supreme Court has construed omission of a viable request for an injunction as abandoning an MCPA claim.[8]

To state a claim for injunctive relief under the language of § 75-24-9, Plaintiff must seek "to restrain and prevent" future violations of § 75-24-5.  That is, he must show that a violation is ongoing ("restrain") or that there is an "actual danger" of it being renewed ("prevent"), based on factual allegations, not conclusory assertions.  *Hunter v. Hankinson*, 106 So. 514, 516 (Miss. 1925) ("There is no allegation that there is a threat or actual danger of the [completed] act being repeated. We think this is fatal ....").  Past conduct cannot be enjoined.  *Id.*; *Harris v. City of Houston*, 151 F.3d 186, 189 (5th Cir. 1998).

Here, it is undisputed that EMI withdrew from the ESA in 2015 (not long after joining the Midcontinent Independent System Operator, Inc. ("MISO") system), and Plaintiff has not suggested that the misconduct alleged in his suit has continued under the MISO regime, so any supposed violations are past conduct, with no "real or immediate threat that the plaintiff will be wronged again [or even an allegation of such]."  *City of Los Angeles v. Lyon,* 461 U.S. 95, 111 (1983); *see also Hunter*, 106 So. at 516.  It is likewise undisputed that, since before this suit was

---

[8] *McKesson Corp. v. State of Miss.*, Order, No. 2011-M-01066-SCT (Miss. Dec. 15, 2011) (unpub.) (Ex. D at 2).

initiated, the MPSC has both (1) required and granted explicit approval for all changes to EMI's fuel adjustment clause charges, and (2) employed outside auditors to review the energy procurement processes of EMI and other utilities and, upon presentation of those audit reports, the MPSC has entered orders accepting EMI's fuel adjustment clause filings while at times ordering EMI to change prospectively certain procurement processes. (See Ex. I.) During the seven years this action was pending before EMI's withdrawal from the System Agreement, Plaintiff could have, yet never, moved for an injunction. Any claim for an injunction is now moot, and the MCPA claims should thus be dismissed.

### C. Defendants Made No Misrepresentations To Consumers Upon Which Consumers Reasonably Relied

The gravamen of Plaintiff's MCPA claim is that EMI allegedly made misrepresentations about its fuel costs in filings before the MPSC, *i.e.*, not to retail electricity consumers. Doc. 135 ¶ 77. But Plaintiff does not allege that any Defendant made a misrepresentation upon which any consumer relied, nor is a MPSC filing the type of representation "likely to mislead *consumers*." *See Matter of Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 1984 WL 565319, at *37 (1984) (emphasis added).[9] Without reliance by consumers, there is no basis for a claim under the "Consumer Protection" Act. *See Watson Labs., Inc. v. State of Miss.*, No. 2014-CA-01213-SCT, 2018 WL 372297, ¶ 51 (Miss. Jan. 11, 2018).

### D. Plaintiff Cannot Recover Restitution Or Damages Based On Purchases By Private Mississippi Parties

Plaintiff's claim for restitution under Miss. Code Ann. § 75-24-11 seeks "disgorgement" of profits from private consumer purchases.[10] Doc. 135 ¶¶ 113-14 & p. 37 (subpart C). Nowhere

---

[9] Miss. Code Ann. § 75-24-3(c) (Federal Trade Commission interpretations can provide guidance in defining unfair or deceptive trade practices).

[10] (*See* Ex. E at 15, referring to "[t]he sum of Mississippi customer damages from excessive costs" and disgorgement of profits based on "excessive costs" "pass[ed] onto [EMI's] customers.")

does Plaintiff suggest that this restitution will go anywhere other than into the state coffers, as opposed to private consumers, even if based on transactions by private consumers.

This relief is not allowed by the MCPA, specifically Miss. Code Ann. § 75-24-11, relied on by Plaintiff, Doc. 135 ¶ 114, which provides: "The Court may make such additional orders or judgments, including restitution, as may be necessary to *restore to any person in interest* any monies or property, real or personal, which may have been acquired by means of any practice prohibited by this chapter …." (emphasis added). This language limits restitution *exclusively* "to any person in interest" from whom money was acquired in violation of the MCPA, and is consistent with the long-established rule that a party who wrongfully obtains something should return it *to the party from which it was taken*. *E.g.*, *First Nat'l Bank of Jackson v. Huff*, 441 So. 2d 1317, 1322 (Miss. 1983). The Fifth Circuit reached the same conclusion in *Miss. ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 800-02 (5th Cir. 2012), *rev'd on other grounds*, 571 U.S. 161 (2014), holding that § 75-24-11 gives the State no authority to keep money based on harm to private citizens (and calling the "suggestion" the State could do so "troubling").[11] *See also State ex rel. Horne v. Autozone, Inc.*, 275 P.3d 1278, 1282 (Ariz. 2012) (similar Arizona law).[12]

Plaintiff may argue that he has *parens patriae* authority to assert MCPA claims on behalf of Mississippi private consumers and to keep the money for the State, but remedies for violation of the MCPA are limited to those within the statute itself.[13] There is no provision in the MCPA for disgorgement of profits to the State for private party purchases.

---

[11] That § 75-24-11 requires monies recovered by the Attorney General on behalf of private parties to be restored to those parties is also shown by provisions for appointment of a receiver in §§ 75-24-11 and 75-24-13. Plaintiff has not requested the appointment of a receiver in this case.

[12] The Arizona legislature later amended the Act to let the State keep money based on private transactions. H.B. 2396, 51st Legl, 1st Reg. Sess. (Ariz. 2013). The Mississippi legislature has not done so.

[13] The express statutory remedies provided by the MCPA displace any remedy that *may* have been available to an attorney general at common law. *See Pickering v. Langston Law Firm, P.A.*, 88 So. 3d 1269, 1278-79 (Miss. 2012); *see also Lincoln Cty. v. Entrican*, 230 So. 2d 801, 804 (Miss. 1970) ("[A] statutory remedy

## III.   DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S COMMON LAW CLAIMS

### A.   *Parens Patriae* Does Not Allow Recovery On Behalf Of Private Parties

Plaintiff also seeks to recover monetary damages as *parens patriae* for individual Mississippi consumers under several common law theories:  unjust enrichment (Doc. 135 ¶¶ 115-18), fraud (*id.* ¶¶ 122-26), good faith and fair dealing (*id.* ¶¶ 127-30), and accounting (*id.* ¶¶ 131-33).  For each theory, Plaintiff asserts a common law cause of action for alleged harms committed to a particular and identifiable group of Mississippi electricity customers.

The common law provides no authority for Plaintiff to assert these causes of action. While the MAA and MCPA allow the Attorney General to take certain actions on behalf of individuals (and some courts have referred to that authority as *parens patriae* standing), *see, e.g.*, *Hood ex rel. Miss. v. Microsoft Corp.*, 428 F. Supp. 2d 537, 545 (S.D. Miss. 2006), common law *parens patriae* authority is much narrower than this statutory authority.  *La. ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 427 n.5 (5th Cir. 2008), *overruled on other grounds*, *AU Optronics*, 571 U.S. 161 (2014).  In its modern form, common law *parens patriae* doctrine requires Plaintiff to vindicate—through the theories he asserts and relief he obtains—a quasi-sovereign interest.  *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982).  "Interests of private parties" do not qualify as quasi-sovereign interests and "do not become such simply by virtue of the State's aiding in their achievement."  *Id.* at 602.  Common law *parens patriae* doctrine "does not go so far as to permit [a suit] in the name of the State but in reality for the benefit of particular individuals, albeit the State asserts an economic interest in the claims and declares their enforcement to be a matter of state policy."  *State of Okla. ex rel. Johnson v. Cook*, 304 U.S. 387, 394 (1938); *accord*

---

to enforce a new right or liability created by the same statute is exclusive unless the statute clearly shows a contrary intention.").  This principle applies equally to the MAA, *supra* at n.6.

*Pa. v. N.J.*, 426 U.S. 660, 666 (1976); *N.Y. ex rel. Abrams v. Seneci*, 817 F.2d 1015, 1017-18 (2d Cir. 1987); *N. Y. ex rel. Schneiderman v. Intel Corp*., No. CIV. 09-827-LPS, 2011 WL 6100446, at *6 (D. Del. Dec. 7, 2011); *In re Dynamic Random Access Memory Antitrust Litig*., No. M 02-1486 PJH, 2007 WL 2517851, at *8 (N.D. Cal. Aug. 31, 2007) ("There is no broadly recognized common law *parens patriae* authority for monetary damages claims [on behalf of individuals].").

In *Pennsylvania v. New Jersey*, for example, the Court examined a state's authority to challenge a tax that allegedly violated some of its citizens' rights under the Fourteenth Amendment. It held that the plaintiff state lacked common law *parens patriae* standing, reasoning that the suit was "nothing more than a collectivity of private suits against [another state] for taxes withheld from private parties." 426 U.S. at 666. The plaintiff state could not, under the *parens patriae* banner, litigate "as a volunteer the personal claims of its citizens." *Id*. at 665.

Plaintiff's common law theories asserted for individuals are, as in *Pennsylvania v. New Jersey*, a collection of personal claims that Plaintiff litigates as a volunteer. These theories are not founded on a quasi-sovereign interest, despite assurances that their enforcement is a "matter of state policy." *State of Okla. ex rel. Johnson*, 304 U.S. at 394.

Two further considerations erase any doubt on this point: *First*, Plaintiff seeks monetary relief for individual harm—the amounts by which Plaintiff claims customers overpaid for electricity. Because these are "damages for injuries suffered by individuals," rather than relief directed to the "integrity of the state's marketplace and the economic well-being of all its citizens," the damages "cannot serve as the foundation for the state's authority" as *parens patriae*. *Seneci*, 817 F.2d at 1017-18. *Second*, these customers form a particular and identifiable group (electricity customers). The common law *parens patriae* is not a device to address "injury to an identifiable group of individual residents." *Alfred L. Snapp & Son*, 458 U.S. at 607.

### B. Plaintiff Cannot Prove Essential Elements Of His Fraud Claim

To prevail on a common-law fraud claim, a plaintiff must prove, among other things, a misrepresentation that a hearer relied on. *Watson*, 2018 WL 372297, at ¶ 20. As discussed in the MCPA argument section above, Plaintiff has not alleged any fraudulent representation to EMI's customers; instead, Plaintiff alleges only misrepresentations to the MPSC. Doc. 135 ¶ 124.[14] A party who has neither heard nor relied on a misrepresentation may not assert a fraud claim. *See Watson*, 2018 WL 372297, at ¶ 20 (referring to "hearer," "the hearer's ignorance," and "his [*i.e.*, the hearer's] reliance"); *Indep. Tr. Corp. v. Fidelity Nat'l Title Ins. Co. of N.Y.*, 577 F. Supp. 2d 1023, 1037-38 (N.D. Ill. 2008) (rejecting claim of plaintiff who never knew about alleged misrepresentations made to Illinois Department of Financial Institutions). And there is certainly no allegation or evidence that EMI's customers relied on these alleged misrepresentations. Plaintiff's fraud claim lacks the very essence of fraud—reliance by the injured party on the alleged misrepresentation. *See Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1207-08 (Miss. 2001) (plaintiffs failed to prove fraud because they "failed to demonstrate any affirmative representation made by either [of defendants] which induced their justifiable reliance thereon").

### C. Plaintiff Cannot Prove A Claim For Breach Of The Common Law Duty Of Good Faith And Fair Dealing

Plaintiff asserts a claim for breach of good faith and fair dealing, but without a contract, there is no claim for a breach of duty of good faith and fair dealing. *Id.* at 1207 ("[t]he duty of good faith and fair dealing arises from the existence of a *contract* between the parties" (emphasis in original)). Here, the Amended Complaint contains no reference to any contract that defendants

---

[14] This is not a situation where the speaker gave information to a third party knowing the third party would then provide it to other persons who would rely on it. *See, e.g., Watson, supra*, at ¶ 32 ("Watson knew that the numbers would be presented as such when it forwarded them [to First DataBank] to be published"). No evidence exists that the MPSC ever passed along any allegedly fraudulent EMI statement to ratepayers.

breached. Accordingly, Plaintiff's claim for breach of duty of good faith and fair dealing fails. *See id.* at 1210 (breach of good faith duty claim fails where there is no contractual relationship).

###### D.      Plaintiff Is Not Entitled To An Accounting

Plaintiff's request for an accounting is patently unnecessary. There is no basis here for such a remedy where voluminous discovery has been conducted. *See Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1180 (Miss. 2004) (claims for accounting often seek information that can be obtained through discovery process). Further, EMI's filings with the MPSC are available to Plaintiff, and the MPSC has already conducted independent audits.

#### IV.      ANY CLAIMS ON BEHALF OF PRIVATE PERSONS ARISING THREE YEARS BEFORE THE SUIT ARE BARRED BY THE STATUTE OF LIMITATIONS

Claims by private plaintiffs carry a three-year statute of limitations. Miss. Code Ann. § 15-1-49. Plaintiff should not be allowed to recover, in a representative capacity on behalf of private consumers, that which they could not recover on their own in a private action. *See United States v. Beebe*, 127 U.S. 338, 347 (1888) (time-based defenses apply to claims brought by government for private party relief); *State v. Woodruff*, 150 So. 760, 764-65 (Miss. 1933) (same). Therefore, claims on behalf of private consumers for electricity purchases made more than three years before the Complaint was filed (*i.e.*, before December 2, 2005, *see* Doc. 1-3) are time-barred.

#### V.      LACHES AND ESTOPPEL BAR PLAINTIFF'S CLAIMS

All of Plaintiff's claims are also barred by laches and estoppel. Laches applies when there is inexcusable delay in asserting a claim, and the opposing party is unduly prejudiced. *Bailey v. Estate of Kemp*, 955 So. 2d 777, 784 (Miss. 2001). Relatedly, estoppel applies when a party has relied to its detriment on the actions of the party opposite. *Swartzfager v. Saul*, 213 So. 3d 55, 65 (Miss. 2017). Here, the delay in asserting claims dating back to 1998 (the damages period is 1998-2008, *see* Ex. B at 1) is inexcusable. EMI's filings were entirely transparent and were matters of

public record. All relevant information was subject to "continuous monitoring" by the Mississippi Public Utilities Staff and was audited annually. Miss. Code Ann. § 77-3-42(2). The MPSC provides a "full and complete report" of each audit to the Legislature. *Id.* § 77-3-42(7). EMI relied on the MPSC's repeated acceptances and approval of EMI's submissions concerning rates, on the rates the MPSC authorized, and on Plaintiff's failure to challenge either EMI's practices or MPSC's authorization for over a decade. Those actions deprived EMI of any opportunity to adjust its practices affecting rates. (*See* Ex. I, ¶ 4.) Any complaint as to EMI's practices affecting rates could and should have been brought long before 2008.

## VI. ENTERGY CORPORATION AND ENTERGY POWER, INC. ARE ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE IS NO EVIDENCE THAT THESE ENTITIES ENGAGED IN DIRECT CONDUCT OR THAT THEY ARE VICARIOUSLY LIABLE FOR EMI'S DIRECT CONDUCT

Plaintiff's claims arise from his allegation that *EMI* charged customers too much in retail rates based on EMI's failure to seek and obtain permission from the Operating Committee to purchase IPP energy for EMI's own account, and that EMI representatives misrepresented EMI's conduct in testimony to the MPSC. *See, e.g.*, Doc. 135 ¶¶ 2, 38, 39, 41, 46; Doc. 86 at 30 ("[Plaintiff] challenges *EMI's* failure to avail itself of the option of purchasing less expensive power from a third party." (emphasis added)). Nevertheless, Plaintiff also attempts to hold Entergy Corporation and Entergy Power, Inc. ("EPI") liable. But there is no evidence of any conduct by Entergy Corporation or EPI, nor is there evidence to support vicarious liability.[15]

In seeking to attribute statements to Entergy Corporation, Plaintiff points to testimony by Theodore Bunting, Jr., who served as Chief Accounting Officer for both Entergy Corporation and

---

[15] Entergy Corporation and EPI previously moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2). Docs. 121 and 123. The Court ruled that these Defendants had waived this defense. Doc. 144. They do not challenge that ruling in this motion. Instead, they advance the distinct argument that, as a matter of substantive Mississippi law, there is no basis to hold them liable based on the record evidence.

EMI, and Jay Lewis, who served as Chief Financial Officer of Entergy Corporation and also held a position at EMI.  Doc. 135 ¶¶ 70-71; Doc. 127 at 15-16.[16]  But it is undisputed that both Mr. Bunting and Mr. Lewis were testifying "on behalf *of Entergy Mississippi, Inc.*," not on behalf of *Entergy Corporation*.  (Ex. G at 1:17-19; Ex. H at 1:16-18 (emphasis added).)  "[D]irectors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership."  *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (quoting *Lusk v. Foxmeyer Health Corp.*, 129 F.3d 773, 779 (5th Cir. 1997)).  Courts generally assume that "directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary."  *Id.*

As to EPI, Plaintiff alleges only that EPI produced and sold energy, some of which the System or EMI eventually purchased.  Doc. 135 ¶¶ 84-90.  While he claims that EMI's purchases of EPI energy "prevented [EMI] from purchasing less expensive sources of electricity that were available from non-affiliates," *id.* ¶ 90, Plaintiff provides no evidence that EPI took any action to influence or otherwise to affect the System's or EMI's decision to purchase energy from EPI.[17]

Apparently recognizing the lack of any direct conduct by Entergy Corporation or EPI, Plaintiff seeks to pierce the corporate veil and hold Entergy Corporation and EPI indirectly liable for EMI's conduct.  But no evidence supports such a theory.  "In Mississippi, 'two or more corporations are separate and distinct entities,' which are responsible for their own conduct unless circumstances justify the piercing of the corporate veil."  *Griffin v. HSBC Mortg. Servs., Inc.*, No. 4:14-CV-0132-DMB-JMV, 2015 WL 4041657, at *5 (N.D. Miss. July 1, 2015) (quoting *Buchanan v. Ameristar Casino Vicksburg, Inc.*, 957 So. 2d 969, 978 (Miss. 2007)).  "Mississippi

---

[16] It is not clear that Plaintiff challenges Operating Committee decisions.  To the extent he does, Entergy Corporation had only a 20% vote and thus lacked the power to control any decision, which required a majority vote.  (*See* Ex. F at § 5.04.)

[17] EPI was not a member of the System or a party to the ESA.

case law generally favors maintaining corporate entities and avoiding attempts to pierce the corporate veil." *Canadian Nat. Ry. Co. v. Waltman*, 94 So. 3d 1111, 1115 (Miss. 2012). Accordingly, Mississippi courts "decline to pierce the corporate veil except in those extraordinary factual circumstances where to do otherwise would subvert the ends of justice." *Penn Nat'l Gaming, Inc. v. Ratliff*, 954 So. 2d 427, 431 (Miss. 2007). To pierce the veil, the complaining party must demonstrate "(1) some frustration of expectations regarding the party to whom he looked for performance; (2) the flagrant disregard of corporate formalities by the defendant corporation and its principals; and (3) a demonstration of fraud or other equivalent misfeasance on the part of the corporate shareholder." *Id.*

Plaintiff has adduced no such evidence here. The most Plaintiff can show, again, is that some of EMI's officers and directors also hold positions with Entergy Corporation, combined with conclusory allegations that Entergy Corporation exercises "domination and control" over EMI. Doc. 135 ¶¶ 80-82. But it is well-established that "the corporate veil should not be pierced merely because there [is] a commonality of ownership and directors or officers of [the parent] and [the subsidiary]," *Buchanan*, 957 So. 2d at 979, and a plaintiff "must demonstrate something more than a shareholder using and controlling a corporation to promote its own ends," *Arnoult v. CL Med. SARL*, No. 1:14-cv-271-KS-MTP, 2015 WL 5554301, at *7 (S.D. Miss. Sept. 21, 2015).

Plaintiff also seeks to hold Entergy Corporation and EPI responsible for EMI's actions by alleging—without supporting evidence—that the "Defendants have engaged in a conspiracy, common enterprise, joint venture, and/or common course of conduct." Doc. 135 ¶ 16. But none of the eight causes of action in the Amended Complaint is a claim for conspiracy. Thus, no cause of action entitles the Plaintiff to recover from Entergy Corporation or EPI based on EMI's conduct. Even if a conspiracy claim had been alleged, it would still fail. "To establish a civil conspiracy,

the plaintiff must prove (1) an agreement between two or more persons, (2) to accomplish an unlawful purpose or a lawful purpose unlawfully, (3) an overt act in furtherance of the conspiracy, [and] (4) ... damages to the plaintiff as a proximate result." *Bradley v. Kelley Bros. Contractors*, 117 So. 3d 331, 339 (Miss. Ct. App. 2013). "[T]o avoid summary judgment, the plaintiffs must offer evidence which supports a finding at trial that the defendants agreed to commit an illegal act." *Smith v. St. Regis Corp.*, 850 F. Supp. 1296, 1324 (S.D. Miss. 1994) (granting summary judgment on conspiracy claim as "plaintiffs' allegations [were] conclusory at best"), *aff'd*, 48 F.3d 531 (5th Cir. 1995).

Plaintiff provides no evidence, just conclusory allegations, that Defendants conspired to have EMI purchase energy from the Entergy System Exchange instead of energy from IPPs. Even if he had identified such evidence, it still would fall short. "A civil conspiracy claim cannot stand alone, but must be based on an underlying tort." *Aiken v. Rimkus Consulting Grp. Inc.*, 333 F. App'x 806, 812 (5th Cir. 2009) (unpub.). Here, the only tort alleged is fraud. The evidence is devoid of any agreement between Defendants to provide false testimony to the MPSC—the only fraudulent statements Plaintiff alleges. Doc. 135 ¶¶ 64-78. As described above, the only testimony to the MPSC was made on behalf of EMI.

## CONCLUSION

Summary judgment should be granted to Defendants.

RESPECTFULLY SUBMITTED, this 8th day of June, 2018.

> ENTERGY MISSISSIPPI, INC., ENTERGY CORPORATION, ENTERGY SERVICES, INC. AND ENTERGY POWER, INC., Defendants
>
> By /s/ Roy D. Campbell, III
>     Roy D. Campbell, III (MSB 5562)
>     J. William Manuel (MSB 9891)

Alicia N. Netterville (MSB 105055)
BRADLEY ARANT BOULT
CUMMINGS LLP
One Jackson Place
188 East Capitol Street, Suite 400
P.O. Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
rcampbell@bradley.com
wmanuel@bradley.com
anetterville@bradley.com

James L. Robertson (MSB 5612)
Charles E. Ross (MSB 5683)
Rebecca Hawkins (MSB 8786)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, MS  39205-0651
(601) 968-5534 – Telephone
(601) 944-7738 – Facsimile
jlr@wisecarter.com
cer@wisecarter.com
rwh@wisecarter.com

OF COUNSEL:

Sanford I. Weisburst, *Pro Hac Vice*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
sandyweisburst@quinnemanuel.com

Tianna H. Raby (MSB 100256)
Christopher R. Shaw (MSB 100393)
ENTERGY MISSISSIPPI, INC.
308 E. Pearl Street, Suite 700 (39201)
Mail Unit M-ELEC-4A
P.O. Box 1640
Jackson, MS  39215-1640
(601) 969-2656 – Telephone
(601) 969-2696 – Facsimile
traby@entergy.com
cshaw4@entergy.com

John A. Braymer, *Pro Hac Vice*
Associate General Counsel
ENTERGY SERVICES, INC.
639 Loyola Avenue, Suite 2600
New Orleans, LA 70133
jbrayme@entergy.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

This 8th day of June, 2018.

/s/ Roy D. Campbell, III
OF COUNSEL