**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
**NORTHERN DIVISION**

THE STATE OF MISSISSIPPI EX REL.    )
JIM HOOD, ATTORNEY GENERAL    )
FOR THE STATE OF MISSISSIPPI,    )
    )
Plaintiff-Counterclaim Defendant,    )
    )
v.    )    **No. 3:08-CV-780-CWR-LRA**
    )
ENTERGY MISSISSIPPI, INC., ENTERGY    )
CORPORATION, ENTERGY SERVICES, INC.,    )
AND ENTERGY POWER, INC.,    )
    )
Defendants-Counterclaim Plaintiffs.    )

### MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' MOTION UNDER RULE OF EVIDENCE 702 TO PROHIBIT THE TESTIMONY OF PLAINTIFF'S EXPERT CHARLES S. GRIFFEY

Roy D. Campbell, III (MSB 5562)
J. William Manuel (MSB 9891)
Alicia N. Netterville (MSB 105055)
BRADLEY ARANT BOULT
CUMMINGS LIP
One Jackson Place
188 East Capitol Street, Suite 400
P.O. Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
rcampbell@bradley.com
wmanuel@bradley.com
anetterville@bradley.com

Charles E. Ross (MSB 5683)
James L. Robertson (MSB 5612)
Rebecca Hawkins (MSB 8786)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, MS 39205-0651
(601) 968-5534 – Telephone
(601) 944-7738 – Facsimile
jlr@wisecarter.com
cer@wisecarter.com
rwh@wisecarter.com

Sanford I. Weisburst, *Pro Hac Vice*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
sandyweisburst@quinnemanuel.com

*Counsel for Defendants (continued on next page)*

Tianna H. Raby (MSB 100256)
Christopher R. Shaw (MSB 100393)
ENTERGY MISSISSIPPI, INC.
308 E. Pearl Street, Suite 700 (39201)
Mail Unit M-ELEC-4A
P.O. Box 1640
Jackson, MS  39215-1640
(601) 969-2656 – Telephone
(601) 969-2696 – Facsimile
traby@entergy.com
cshaw4@entergy.com

John A. Braymer, *Pro Hac Vice*
Associate General Counsel
ENTERGY SERVICES, INC.
639 Loyola Avenue, Suite 2600
New Orleans, LA  70133
jbrayme@entergy.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................................... ii

INTRODUCTION ............................................................................................................... 1

RULE 702 AND THE *DAUBERT* STANDARD ..................................................................... 3

ARGUMENT ....................................................................................................................... 4

    I.    MR. GRIFFEY'S OPINIONS ARE MATTERS OF LAW, NOT FACT, AND ARE THEREFORE INADMISSIBLE........................................................... 4

    II.    MR. GRIFFEY'S OPINIONS CONCERNING EMI'S FUEL FACTOR COSTS ARE SPECULATIVE AND INADMISSIBLE ....................................... 8

    III.    MR. GRIFFEY'S OPINIONS OF THE FUEL FACTOR COSTS ARE IRRELEVANT ................................................................................................. 11

    IV.    MR. GRIFFEY'S OPINIONS ARE FORECLOSED BY MISSISSIPPI'S FILED RATE DOCTRINE.................................................................................. 12

        A.    Mississippi's filed rate doctrine precludes the fact finder from considering Mr. Griffey's opinion that EMI included ineligible costs in its FAC filings...................................................................................... 12

        B.    Mississippi's filed rate doctrine precludes the fact finder from considering Mr. Griffey's opinion that EMI violated the regulatory compact ...................................................................................................... 14

    V.    MR. GRIFFEY'S OPINIONS ARE ALSO FORECLOSED BY THE FEDERAL FILED RATE DOCTRINE............................................................. 15

    VI.    MR. GRIFFEY IS UNQUALIFIED TO OPINE ON THE "REGULATORY COMPACT" IN MISSISSIPPI OR ON THE PROPRIETY OF EMI'S FUEL FACTOR COSTS ............................................ 17

CONCLUSION.................................................................................................................... 18

**Page(s)**

**Cases**

*AEP Tex.*, 473 F.3d at 585 ............................................................................................15

*Alldread v. City of Grenada*,
    988 F. 2d 1425 (5th Cir. 1993) ...........................................................................4

*Am. Bankers' Ins. Co. of Fla. v. Wells*,
    819 So. 2d 1196 (Miss. 2001) .............................................................................11

*Arizona v. United States*,
    567 U.S. 387 (2012)............................................................................................14

*Ark. La. Gas Co. v. Hall*,
    453 U.S. 571 (1981)............................................................................................15

*Askanase v. Fatjo*,
    130 F. 3d 657 (5th Cir. 1997) ..........................................................................4, 5

*Bammerlin v. Navistar Int'l Transp. Corp.*,
    30 F.3d 898 (7th Cir. 1994) ................................................................................8

*Daubert v. Merrell Dow Pharm., Inc.*,
    509 U.S. 579 (1993)....................................................................................1, 3, 9

*Entergy La., Inc. v. La. Pub. Serv. Comm'n*,
    539 U.S. 39 (2003)..............................................................................................15

*H.J. Inc. v. Nw. Bell Tel. Co.*,
    954 F.2d 485 (8th Cir. 1992) ............................................................................15

*Calif. ex rel. Lockyer v. Dynegy, Inc.*,
    375 F.3d 831 (9th Cir.), *as amended*, 387 F.3d 966 (9th Cir. 2004) ......................15

*Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*,
    341 U.S. 246 (1951)............................................................................................15

*Moore v. Ashland Chem. Inc.*,
    151 F.3d 269 (5th Cir. 1998) (en banc), *cert. denied*, 136 S. Ct. 1376 (2016).........................3

*N. Nat. Gas Co. v. Kan. Corp. Comm'n*,
    372 U.S. 84 (1963)..............................................................................................15

*Nantahala Power & Light Co. v. Thornburg*,
    476 U.S. 953 (1986)............................................................................................15

*Owen v. Kerr-McGee Corp.*,
    698 F. 2d 236 (5th Cir. 1983) ............................................................................4

*Pipitone v. Biomatrix, Inc.*,
    288 F. 3d 239 (5th Cir. 2002) ............................................................................9

*Singleton v. Wells Fargo Bank, N.A.*,
    No. 2:12CV216-NBB-SAA, 2013 WL 5423917 (N.D. Miss. Sept. 26, 2013)......................13

*Smith v. Crystian*,
    91 F. App'x 952 (5th Cir. 2004) ........................................................................13

*Smith v. Tower Loan of Mississippi, Inc.*,
    216 F.R.D. 338, 359–60 (S.D. Miss. 2003) ..............................................................13

*Snap-Drape, Inc. v. C.I.R.*,
    98 F. 3d 194 (5th Cir. 1996) ............................................................................4

*Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*,
    476 U.S. 409 (1986)......................................................................................15

*Strong v. First Family Fin. Servs., Inc.*,
    202 F. Supp. 2d 536 (S.D. Miss. 2002)..................................................................13

*Taffet v. S. Co.*,
    967 F.2d 1483 (11th Cir. 1992) ........................................................................15

*Tex. Commercial Energy v. TXU Energy, Inc.*,
    413 F.3d 503 (5th Cir. 2005) ..........................................................................15

*United Gas Pipe Line Co. v. Willmut Gas & Oil Co.*,
    97 So. 2d 530 (Miss. 1957)..............................................................................12

*United States v. Griffith*,
    118 F.3d 318 (5th Cir. 1997) ............................................................................4

*United States v. Kuhrt*,
    788 F.3d 403 (5th Cir. 2015) ........................................................................3, 4

*United States v. Tucker*,
    345 F.3d 320 (5th Cir. 2003) ............................................................................3

*United States v. Wen Chyu Liu*,
    716 F.3d 159 (5th Cir. 2013)............................................................................17

*In re Vioxx Products Liab. Litig.*,
    No. MDL 1657, 2006 WL 6624015 (E.D. La. Feb. 3, 2006) (Fallon, J.).................................3

*Watkins v. Telsmith, Inc.*,
  121 F.3d 984 (5th Cir. 1997) ................................................................3

*Wilson v. Woods*,
  163 F.3d 935 (5th Cir. 1999) ................................................................4

**Statutes**

Miss. Code Ann. § 77-3-5 ...................................................................14

Miss. Code Ann. § 77-3-42(2)(a) ........................................................12

Miss. Code Ann. § 77-3-42(2)(b) ........................................................12

Miss. Code Ann. § 77-3-42(2)(c)(iii) ...................................................12

Miss. Code Ann. § 77-3-42(5) .............................................................12

Miss. Code Ann. § 77-3-45 .................................................................12

**Other Authorities**

Fed.R.Evid. 401 ..................................................................................9

Fed.R.Evid. 702 .............................................................................3, 17

Fed.R.Evid. 704 ..................................................................................4

29 Charles Alan Wright, Arthur R. Miller & Victor James Gold,
  Federal Practice and Procedure §  6265 (1st ed. 2014)....................17

# INTRODUCTION

In accordance with the *Daubert* standard, this Court should strike testimony, including opening and rebuttal expert reports, by Plaintiff's expert Charles S. Griffey. Mr. Griffey's proffered testimony consists of legal conclusions that merely parrot Plaintiff's legal theories and will not assist the finder of fact in resolving any factual disputes. Moreover, his conclusions are speculative, irrelevant and foreclosed by state and federal preemption. Finally, Mr. Griffey is unqualified to opine on either subject covered in his reports.

By way of background, Plaintiff's claims against Defendants[1] are based on the theory that the rates Entergy Mississippi, Inc. ("EMI") charged its customers between 1998 and 2008 were too high. These "excessive" rates, according to Plaintiff, were a product of EMI's generation of expensive energy from its own plants and from the Entergy System's[2] allocation to EMI of expensive energy from within the System, energy which could and should have been replaced with cheaper energy purchased from third-party Independent Power Producers ("IPPs"). Plaintiff also claims these excessive rates resulted from EMI's submission to the Mississippi Public Service Commission ("MPSC") of costs for recovery that were not authorized by law.

To establish his claim that IPP energy could and should have replaced EMI's and the System's generated power, Plaintiff intends to rely primarily on opinions from David DeRamus, an economist.[3] To further support his claim that IPP energy *should* have been purchased, and his

---

[1] Entergy Mississippi, Inc. ("EMI"), a utility that provides electricity to customers in Mississippi; Entergy Corporation, parent company of EMI; Entergy Services, Inc. ("ESI"), a service company for other Entergy entities; and Entergy Power, Inc. ("EPI"), a company that buys and sells wholesale power.

[2] The term "Entergy System" and "System" do not refer to Entergy Corporation but, instead, are intended to refer to the collective operation of the electric generation and bulk wholesale transmission systems of the Entergy Operating Companies ("EOCs") as a single, integrated electric system, together with the administrative services provided to support this function by Entergy Services, Inc.

[3] Defendants have filed a separate *Daubert* motion challenging the admissibility of Dr. DeRamus' opinions.

claim that the law prohibits recovery of certain costs submitted to (and approved by) the MPSC, Plaintiff seeks to rely on opinions from Charles Griffey, an out-of-state energy consultant.

Specifically, Plaintiff asked Mr. Griffey to evaluate "(1) whether [EMI] met its *obligation* to ensure that it provides the lowest reasonable cost of power to consumers under the traditional regulatory framework present in Mississippi during the period 1998-2013, and (2) whether EMI included any expenses in its fuel factor that were not eligible for inclusion during the period from 1993 to the present."[4] (Emphasis added.) Both questions are issues of law. Although Mr. Griffey acknowledges that he is not an attorney and claims that he is not drawing any legal conclusions,[5] Mr. Griffey in fact does just that, opining that (1) EMI failed to meet its legal "obligation" to provide the lowest reasonable cost of power, *i.e.*, it violated Mississippi's "regulatory compact", and (2) EMI illegally included ineligible costs in its fuel factor, or fuel adjustment clause ("FAC"), filings.[6] In his rebuttal report, Mr. Griffey doubles down on the deficiencies in his opening report, opining on issues of law to illustrate his claim that EMI breached the "regulatory compact" and speculating about whether certain costs should have been included in EMI's fuel factor.[7]

Beyond those relevance issues, Mr. Griffey is unqualified to evaluate either issue on which he is being paid to opine. He has no prior experience in fuel cases, and his knowledge of how rate-setting works in Mississippi is limited to what he has read relative to this controversy.

---

[4] Opening Expert Report of Charles S. Griffey ("Griffey Opening Report") at 3 (Exhibit A to Motion of Defendants under Rule of Evidence 702 to Prohibit the Testimony of Plaintiff's Expert Charles S. Griffey; hereafter, "Ex. _" denotes exhibits submitted as attachments to that motion).

[5] *Id*. at 3, n.2.

[6] *Id*. at 8-15, 16-19.

[7] Rebuttal Expert Report of Charles S. Griffey ("Griffey Rebuttal Report") (Ex. B) at 5. This rebuttal report is the subject of a pending motion to strike. *See* Doc. 232. The filing of this motion is not intended as an abandonment of the relief sought in that motion.

For all of those reasons, Mr. Griffey's testimony fails to satisfy the relevance requirement of Federal Rule of Evidence 702 and it should be excluded.

**RULE 702 AND THE *DAUBERT* STANDARD**

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

This court is charged as a "gatekeeper" to ensure that Mr. Griffey's proffered testimony is both reliable and relevant. *Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993)); *accord Moore v. Ashland Chem. Inc.*, 151 F.3d 269, 276-77 (5th Cir. 1998) (*en banc*).

The relevance prong requires the proponent to demonstrate that the expert testimony "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. In other words, "[t]he 'expert testimony proffered in the case [must be] sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" *United States v. Kuhrt*, 788 F.3d 403, 420 (5th Cir. 2015) (quoting *United States v. Tucker*, 345 F.3d 320, 327 (5th Cir. 2003)). Relevance is a threshold determination. It must be established "[b]efore the Court can embark on analysis of an expert's qualifications and the methodology used." *In re Vioxx Products Liab. Litig.*, No. MDL 1657, 2006 WL 6624015, at *5 (E.D. La. Feb. 3, 2006) (Fallon, J.).

Even if the proffered testimony is relevant, the expert must be qualified to give it based on his knowledge, skill, experience, training, or education. The proponent of expert testimony must establish the expert's qualifications by a preponderance of the evidence. *United States v. Griffith*, 118 F.3d 318, 322 (5th Cir. 1997). "A district court should refuse to allow expert witness to testify if it finds that the witness is not qualified to testify in a particular field or on a given subject." *Wilson v. Woods*, 163 F.3d 935, 937 (5th Cir. 1999).

As the proponent of Mr. Griffey's testimony, Plaintiff bears the burden of demonstrating that his testimony satisfies these requirements. *Kuhrt*, 788 F.3d at 420 (citing *Moore*, 151 F.3d at 276).

## ARGUMENT

### I. MR. GRIFFEY'S OPINIONS ARE MATTERS OF LAW, NOT FACT, AND ARE THEREFORE INADMISSIBLE

A direct corollary to the relevance inquiry is that expert testimony on legal matters is not admissible. Despite Rule 704's apparent license of opinions on "ultimate issues," the Fifth Circuit has "repeatedly held that this rule does not allow an expert to render conclusions of law." *Snap-Drape, Inc. v. C.I.R.*, 98 F. 3d 194, 198 (5th Cir. 1996) (affirming Tax Court's exclusion of accountants' opinions that payments were deductible, finding that opinions were legal conclusions, mere advocacy and of no assistance in making findings of fact) (citing *Alldread v. City of Grenada*, 988 F. 2d 1425, 1436-37 (5th Cir. 1993), and *Owen v. Kerr-McGee Corp.*, 698 F. 2d 236, 240 (5th Cir. 1983)). As the Fifth Circuit observed in *Kerr-McGee Corp.*, "Rule 704, however, does not open the door to all opinions. … [A]llowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Id.* at 240.

The Fifth Circuit applied these principles in *Askanase v. Fatjo*, 130 F.3d 657 (5th Cir. 1997). In that case, a party's proposed expert stated in a report that he intended to "give his opinion

on 'whether [appellant's] officers and directors fulfilled their fiduciary duties to the Company, its creditors, and shareholders. If not, how and to what extent did [they] breach their fiduciary duties.'" *Id.* at 673. In finding that the trial court did not err in excluding the expert's testimony, the Fifth Circuit held: "Such testimony is a legal opinion and inadmissible. Whether the officers and directors breached their fiduciary duties is an issue for the trier of fact to decide. It is not for [the expert] to tell the trier of fact what to decide." *Id.*

Mr. Griffey's opinions fall squarely within the *Askanase* holding: (1) EMI failed to meet its obligation to provide the lowest reasonable cost of power, *i.e.*, it violated its legal duty imposed by Mississippi's "regulatory compact"; and (2) EMI included costs in its FAC filings that were not eligible costs under the MPSC's regulations. Nowhere is Mr. Griffey's focus on EMI's legal duty more apparent than in the title of his report: "Report on the Obligations of a Utility to Provide the Lowest Reasonable Cost of Power." The first two sections of his report (following his Introduction) maintain that focus on legal duty: "II. A Utility's Obligation to Provide the Lowest Reasonable Cost of Power"; and "III. Utility Obligations in Mississippi."[8] Throughout those sections Mr. Griffey discusses his interpretations of duties imposed on utilities generally in purchasing fuel and power and in recovering those costs, including the standards that he believes are applicable, and he even provides his opinions on what those duties and standards are in Mississippi.[9]  He also gives his view on the interplay between federal and state law, suggesting that an order of the MPSC means that the Entergy System's compliance with its obligation to provide the "lowest reasonable cost of energy" under § 30.02 of the Entergy System Agreement ("ESA"), a FERC-approved tariff, is insufficient to satisfy EMI's duty under Mississippi law to

---

[8] Ex. A at 4-7.

[9] *Id.*

provide the lowest reasonable cost of energy.[10] Yet, when asked about that in his deposition, Plaintiff's counsel (and Mr. Griffey) objected on the grounds that the question called for a legal conclusion. *Infra* at 8. And despite his earlier disclaimer that he is not an attorney and is not making any legal conclusions, he buttresses these opinions with numerous *citations of law*, including at least one decision of the Supreme Court of Mississippi, three sections of the Mississippi Code, and several excerpts from (and interpretations of) orders of the MPSC, which cite judicial decisions from Texas and Louisiana.

In the next section of his report, entitled "IV. Determination of Whether EMI's Procurement of Power is Consistent with the Regulatory Compact," Mr. Griffey engages in an analysis of whether EMI's practices in purchasing (or not) non-affiliate power from IPPs met his version of the applicable standard imposed on electric utilities in Mississippi.[11] Mr. Griffey concludes that EMI's practices fell below his version of that standard, and that EMI must suffer legal consequences as a result: "Such failures violate the regulatory compact holding that a utility must provide the lowest reasonable cost of power, and EMI should be held to account."[12] Following his discussion of certain audit reports by EMI (which MSPC reviewed but did not find objectionable), Mr. Griffey further characterized EMI's conduct relative to what he perceived to be the applicable standard, again concluding that EMI breached its legal duty:

> Based on the Liberty Consulting and Boston Pacific audits and my own review, Entergy's savings requirements for third party purchases appear to have been arbitrarily set, are unreasonable, and therefore violate the regulatory compact and requirements that a utility acquire the lowest reasonable cost of energy. [13]

---

[10] Ex. A at 6-7.

[11] *Id.* at 8-15.

[12] *Id.* at 11.

[13] *Id.* at 13.

Lest there be any doubt about the effect of EMI's perceived misconduct, Mr. Griffey concludes this section of his report by instructing the fact finder that EMI breached its legal obligation: "… EMI should not be relieved of a duty to ensure it was providing customers with the lowest reasonable cost of power. … [T]he cost savings requirements set by Entergy were arbitrary and unjustified. Therefore, Entergy and EMI's actions did not comport with the regulatory compact…."[14]

Mr. Griffey devotes the final, substantive section of his report, "VI. Items to be Excluded from the Fuel Factor," to a discussion of the costs EMI included in its fuel adjustment clause filings with the MPSC.[15] Replete with uncertainty over whether those costs were recoverable,[16] that entire discussion is premised on his review and interpretation of Mississippi's "rules and procedures . . . codified over time," four of which "were provided to me."[17] "[U]nder Mississippi rules", Mr. Griffey believes some costs "may" have been improper.[18] And with $SO_2$ allowances, Mr. Griffey invokes an order from another state's (Louisiana's) public service commission--under whose rules those allowances were not permitted--and argues "[t]he same regulatory argument should apply in Mississippi as well."[19] In his rebuttal report, when Mr. Griffey again discusses the propriety of costs included in EMI's fuel factor, he relies for support on an opinion from the Mississippi Attorney General.[20]

---

[14] *Id.* at 15.

[15] *Id.* at 16-19.

[16] That Mr. Griffey's opinions about the recovery of those costs are too speculative to be admissible is discussed *infra* at 8-10.

[17] *Id.* at 16.

[18] *Id.* at 17.

[19] *Id.*

[20] Ex. B at 24.

Significantly, when asked in his deposition about those issues – the regulatory compact and the MPSC's rules on fuel cost recovery – Plaintiff's counsel objected, repeatedly, on the grounds that the questions called for "a legal conclusion."[21]

Mr. Griffey's repeated interpretations of the MPSC's regulations and their interplay with the ESA, a FERC-regulated federal tariff, are impermissible opinions of law which will be of no benefit to the finder of fact. *See Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900 (7th Cir. 1994) ("The meaning of federal regulations is not a question of fact, to be resolved by the jury after a battle of experts. It is a question of law, to be resolved by the court."). Those opinions, along with his ultimate conclusions of fault and of the need for atonement (which are clearly based upon his legal opinions), should be excluded.[22] Unremarkably, when asked in his deposition about that interplay between the MPSC's regulations and the requirements of the ESA, Plaintiff's counsel objected on the grounds that it was "clearly a legal question, way beyond the scope of his expertise" (and that prompted Mr. Griffey to agree).[23]

## II. MR. GRIFFEY'S OPINIONS CONCERNING EMI'S FUEL FACTOR COSTS ARE SPECULATIVE AND INADMISSIBLE

Mr. Griffey devotes two and one-half pages of his opening report to a discussion of certain costs EMI included in its fuel factor filings that he believes "may" not have been proper.[24]

As he explains at the outset of his discussion of those costs, "Based on my review of those filings, it *appears* that EMI *may* have included items in its fuel factor that should have been

---

[21] Deposition of Charles S. Griffey (Ex. E) at 271:10-19, 272:1-25, 273:15-20.

[22] Defendants acknowledge that, in response to Mr. Griffey's (and other of Plaintiff's experts') opinions, one or more of Defendants' experts have opined on legal issues. In the event the Court disallows Mr. Griffey's (and Plaintiff's other experts') legal opinions, then Defendants will withdraw voluntarily any portions of their experts' reports that address legal issues.

[23] Ex. E at 205:12-24.

[24] Ex. A at 18-19.

excluded under Mississippi rules."[25] (Emphases added.). He then illustrates that uncertain opinion with specific, inconclusive examples. The first of those is depreciation, about which he concludes, "and it is *unclear* if these entries meet the limited exception to that general inclusion."[26] Next are a decommissioning expense and related taxes, which "appear" to be excludable.[27] Those are followed by labor costs and another depreciation expense which, as before, "appear" to be excludable.[28] Last are $SO_2$ allowances.[29] Acknowledging at the outset of his discussion of these fuel factor costs that their eligibility in Mississippi was "delineated in [the MPSC's] rules and procedures over time[,]" he nevertheless invokes an order of the Louisiana PSC that rejected $SO_2$ allowances under its rules, summarily concluding that "[t]he same regulatory argument *should* apply in Mississippi as well."[30] (Emphasis added.). He then wraps up all that uncertainty with what appears to be a reversal of position and an endorsement of the eligibility of at least some of those costs: "While recovery of some of those costs may be appropriate, and may even be required to the extent the costs were billed under a FERC regulated tariff, there is nothing that limits how a state may apportion that cost recovery between base rates and the fuel factor." [31] (This concession, that these costs may be recovered in "base rates", is discussed *infra* at 11.)

To meet the relevancy prong of *Daubert,* expert testimony must be helpful to the fact-finder, *i.e.*, the expert's opinion must rise to something more than mere speculation. *See Pipitone*

---

[25] *Id*. at 17.

[26] *Id*.

[27] *Id*.

[28] *Id*.

[29] These are also discussed *supra* at 7, in the context of Mr. Griffey's inadmissible opinions on matters of law.

[30] *Id.*

[31] *Id*. at 18.

*v. Biomatrix, Inc.*, 288 F.3d 239, 245 (5th Cir. 2002) (physician's inability to state that it was "more likely than not" that an alleged cause of infection was in fact the cause was equivocal, irrelevant and inadmissible); *see also* Fed.R.Evid. 401 ("Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.")  Mr. Griffey's opinions about the fuel factor costs are not stated in terms of probabilities, nor do those opinions suggest that he has any degree of confidence in what his report discusses. Even before his concession that some of those costs may indeed be proper, the most he can say is that some costs "appear" to be, or "may" be, excludable.

Underscoring his uncertainty, and the unhelpfulness of his opinions, Mr. Griffey points out that although Horne's 2008-09 fuel audit of EMI recommended exclusion of certain costs, "Public Utilities Staff disagreed with many of Horne's exclusions, noting that the costs were affiliate costs under tariffs governed by FERC[,]" and the MPSC declined to take any action relative to Horne's recommendations.[32]  Mr. Griffey expresses no opinion relative to the eligibility of those costs, but the implication of the MPSC's decision to take no action is clear.

In his rebuttal report, Mr. Griffey invokes the same speculation about the propriety of EMI's fuel factor costs that he used in his opening report:  "Thus, I continue to believe, as I stated in my November 3rd 2017 report, . . . it *appears* that EMI *may* have included items in its fuel factor that should have been excluded under Mississippi rules."[33] (Emphasis added.).

---

[32] *Id.*

[33] Ex. B at 25.

It is no wonder that Mr. Griffey concludes that he "cannot form an opinion" relative to the overall amount of items excludable from EMI's fuel factor costs.[34] Those portions of his opening and rebuttal reports are entirely irrelevant and inadmissible.

## III.    MR. GRIFFEY'S OPINIONS OF THE FUEL FACTOR COSTS ARE IRRELEVANT

As noted in the preceding discussion, when Mr. Griffey concedes that many of EMI's fuel factor costs may indeed be recoverable he observes: "While recovery of some of those costs may be appropriate, and may even be required to the extent the costs were billed under a FERC regulated tariff, there is nothing that limits how a state may apportion that cost recovery between base rates and the fuel factor."[35] Although Mr. Griffey's point is somewhat obscure, Defendants' expert Robert M. Hawkins interprets what Mr. Griffey likely meant to say.  Mr. Hawkins was EMI's Manager of Regulatory Affairs and is now retired following a forty-year career. In explaining that Mr. Griffey's fuel factor costs were all properly included in EMI's filings, Mr. Hawkins points out that, even if Mr. Griffey were correct as to fuel factor treatment, that would be irrelevant because denial of fuel factor treatment would allow the costs to be recovered through EMI's Base Rates: "If the costs cited below by Mr. Griffey had not been included in EMI's fuel adjustment rider schedule(s) then such costs would have been included in Base Rates."[36]

Accordingly, putting aside that Mr. Griffey's opinions are speculative and inconclusive, whether EMI's costs were eligible for recovery in fuel factor filings is wholly irrelevant; it is undisputed that, if not, they were otherwise recoverable in Base Rates.[37]

---

[34] Ex. A at 18-19.

[35] *Id*. at 18.

[36] Expert Report of Robert M. Hawkins (Ex. C) ("Hawkins' Report) at 32.

[37] Although the inclusion of costs in base rates as compared to recovery in a fuel clause may subject EMI to additional delay between when costs were incurred and when they are collected (referred to as "regulatory

## IV. MR. GRIFFEY'S OPINIONS ARE FORECLOSED BY MISSISSIPPI'S FILED RATE DOCTRINE

The substance of all of Mr. Griffey's opinions also runs afoul of Mississippi's filed rate doctrine, which precludes attacks in court on rates filed with or regulated by governmental agencies.

Under established Mississippi law and clarified most recently by S.B. 2295, the filed rate doctrine provides that any rate accepted by the "governing regulatory agency is *per se* reasonable and unassailable in judicial proceedings" (except on appeal of the agency's order). *Am. Bankers' Ins. Co. of Fla. v. Wells*, 819 So. 2d 1196, 1203–04 (Miss. 2001) (internal quotation marks omitted); *see also id.* at 1204 ("A civil juror, who likely has little, if any, expertise in the area . . . should not be permitted to reject and thereupon impose liability based on the rates . . . expressly approved by the [agency]."). The doctrine applies "whether [the rate is] fixed or merely accepted by the Commission". *United Gas Pipe Line Co. v. Willmut Gas & Oil Co.*, 97 So. 2d 530, 535 (Miss. 1957).

### A. Mississippi's filed rate doctrine precludes the fact finder from considering Mr. Griffey's opinion that EMI included ineligible costs in its FAC filings

The filed rate doctrine applies both to base rates and the FAC, which is authorized by the MPSC. As discussed in Defendants' Memorandum Brief in Support of Defendants' Motion for

---

lag"), such a result would not necessarily have benefited EMI's customers and potentially could have increased rates beyond what they were. EMI's base rates are reset annually under a formula rate plan ("FRP") that measures EMI's actual rate of return against a MPSC-approved benchmark return. The FRP allows EMI to increase rates when its earned return is a specified amount below that benchmark. Ex. C at 13. Had fuel costs been included in base rates instead of a fuel clause and pushed EMI's earned return far enough below the benchmark to generate a rate action, customer rates might actually have been higher. However, Plaintiff has failed to quantify this effect or the extent to which base rate recovery of the challenged fuel costs would have harmed, or benefitted, EMI's customers.

Summary Judgment Based on State or Federal Preemption ("Defs' Preemption MSJ Memo.")

(Doc. 263):

> … FAC proceedings are specifically covered by state statutes and MPSC regulations used by the MPSC in exercising its original jurisdiction. *See* Miss. Code Ann. §§ 77-3-42(2)(b), 77-3-45. The law further requires the MPSC to conduct audits at least once a year of "all fuel purchases for which fuel clauses or riders have been placed" to "totally verify fuel costs . . . and all purchased energy." *Id.* § 77-3-42(2)(a). These audits must include, *inter alia,* "an assessment of a utility's practices for economical purchase and use of fuel and electric energy." *Id.* § 77-3-42(2)(c)(iii); *see also id.* § 77-3-42(5). If the MPSC, after its review, "has reasonable cause to believe that inefficient or uneconomical procurement or use of fuel or purchased energy has resulted in unreasonable or unjust charges or costs to the consumers, then the commission shall initiate a procedure for hearing . . . for the purpose of determining whether or not any of the costs or charges included in the fuel adjustment charges to the consumers were unreasonable or unjust." *Id.* § 77-3-42(5). If, after the hearing, the MPSC determines that a fuel or energy purchase was improper, it "shall order that such costs or charges be refunded," either by a direct refund or a credit to the consumer's account. *Id.* In short, FAC proceedings, and any resulting adjustment in rates, are within the MPSC's original jurisdiction.[38]

Moreover, the MPSC has (1) required and granted explicit approval for all changes to EMI's FAC charges, (2) employed outside auditors to review the energy procurement processes of EMI and other utilities, and (3) upon presentation of those audit reports, the MPSC has entered orders accepting EMI's FAC filings while at times ordering EMI to change prospectively certain procurement processes.[39] Accordingly, admitting Mr. Griffey's testimony regarding the propriety of EMI's FAC filings would impermissibly permit the finder of fact to review MPSC decisions and effectively engage in retroactive rate-making, in contravention of the filed rate doctrine.

---

[38] Doc. 263 at 31 (of 55).

[39] *See* Declaration of Robert M. Hawkins, Addendum 1 (MPSC 2008 Order requiring that, henceforth, all FAC filings have MPSC approval) & Addendum 2 (MPSC Orders accepting or approving EMI's FAC filings from 1979 through 2017) (Ex. D).

**B.      Mississippi's filed rate doctrine precludes the fact finder from considering Mr. Griffey's opinion that EMI violated the regulatory compact**

Mississippi's filed rate doctrine also applies to Mr. Griffey's opinion that EMI violated the regulatory compact by failing to meet its obligation to provide the lowest reasonable cost of power. This is for all intents and purposes a challenge to the reasonableness of the rates EMI charged during the period at issue. Courts, including this Court, have applied the filed rate doctrine to a broad variety of claims that do not directly challenge rates, but are, in substance, challenges to the reasonableness or propriety of rates subject to regulatory approval. *See, e.g.*, *Smith v. Tower Loan of Mississippi, Inc.*, 216 F.R.D. 338, 359–60 (S.D. Miss. 2003) (rejecting claims challenging the "rates and terms" of governmentally-approved insurance contracts under the filed rate doctrine), *aff'd sub nom. Smith v. Crystian*, 91 F. App'x 952 (5th Cir. 2004); *Strong v. First Family Fin. Servs., Inc.*, 202 F. Supp. 2d 536, 545 (S.D. Miss. 2002) (rejecting claims that defendants "failed to procure insurance at a 'fair and reasonable' price" and failed to disclose that insurance premiums were "grossly overpriced" under the filed rate doctrine); *Singleton v. Wells Fargo Bank, N.A.*, No. 2:12CV216-NBB-SAA, 2013 WL 5423917, at *2–3 (N.D. Miss. Sept. 26, 2013) (finding filed-rate doctrine applied to claim challenging, *inter alia*, the manner in which insurance rates were attained and the manipulation of the force-placed insurance process).

The same holds true here. Mr. Griffey posits that EMI violated the "regulatory compact" because EMI allegedly could have saved money by purchasing more energy from IPPs, as opposed to relying on Entergy-owned generating units.[40]  The cost of energy is factored into EMI's rates through the fuel factor.  Hence, Mr. Griffey is merely critiquing the reasonableness of EMI's rates,

---

[40] Ex. A at 8-15; Ex. E at 278:22-25, 279:1-4..

which are subject to the exclusive regulatory jurisdiction of the MPSC. *See* Miss. Code Ann. § 77-3-5.

Similarly, when Mr. Griffey attempts to buttress Dr. DeRamus's damages methodology, he is attempting to support Dr. DeRamus's thinly disguised attack on EMI's filed rates.[41] Mr. Griffey's lengthy discussions of the audit findings of Liberty Consulting and Boston Pacific, including his criticism of EMI's use of decrements in power purchase decisions, further illustrate the policy reasons for applying the filed rate doctrine here.[42] The MPSC reviewed those audit findings and took no adverse action.[43] The Court should not permit the fact finder to revisit these findings and come to a different conclusion than the MPSC.

## V.   MR. GRIFFEY'S OPINIONS ARE ALSO FORECLOSED BY THE FEDERAL FILED RATE DOCTRINE

All of Mr. Griffey's opinions concern rates set or discretionary decisions made pursuant to the ESA, a tariff approved by the FERC. As such, his opinions are preempted by federal law. In their brief in support of Defendants' preemption motion for summary judgment, Defendants explained:

> "The Supremacy Clause provides a clear rule that . . . Congress has the power to preempt state law." *Arizona v. United States*, 567 U.S. 387, 399, 351 (2012). The principal preemption doctrine in the area of interstate wholesale energy is the filed-rate doctrine, which provides "that interstate power rates filed with FERC or fixed by FERC must be given binding effect," and therefore such rates preempt state regulation. *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 962 (1986); *see also Entergy La., Inc. v. La. Pub. Serv. Comm'n*, 539 U.S. 39 (2003) ("*ELI*"); *MP&L*, 487 U.S. at 354.

> The filed-rate doctrine preempts claims asserting that a filed rate or tariff is not "just and reasonable" or that a utility violated its rate or tariff, when such claims are filed in a forum other than FERC. *See Ark. La. Gas Co. v. Hall*, 453 U.S. 571,

---

[41] Ex. A at 15-16.

[42] Ex. A at 9-15; Ex. B at 11-18.

[43] *See* Ex. C at 32-36; see also Ex. D, ¶ 4 and Addendum 2.

578 (1981) (state preempted from creating a "retroactive rate increase"); *AEP Tex.*, 473 F.3d at 585 ("[I]t is within FERC's jurisdiction, not the states', to make a final determination as to whether the tariff has been violated."). The doctrine focuses on the claim's substance, not its label, and thus has been held to preempt claims styled as breach of contract, *Ark. La.*, 453 U.S. at 579-80, constructive fraud, *Montana-Dakota Utils. Co. v. Nw. Pub. Serv. Co.*, 341 U.S. 246, 251-252 (1951), fraud, bribery, or conspiracy relating to regulatory proceedings, *H.J. Inc. v. Nw. Bell Tel. Co.*, 954 F.2d 485, 486 (8th Cir. 1992); *Taffet v. S. Co.*, 967 F.2d 1483, 1485 (11th Cir. 1992), unfair competition, *Calif. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 852 (9th Cir.), *as amended*, 387 F.3d 966 (9th Cir. 2004), and antitrust, *Square D Co. v. Niagara Frontier Tariff Bureau, Inc.*, 476 U.S. 409, 417 (1986); *Tex. Commercial Energy v. TXU Energy, Inc.*, 413 F.3d 503, 507-09 (5th Cir. 2005).

The filed-rate doctrine "is not limited to 'rates' *per se*: 'our inquiry is not at an end because the orders do not deal in terms of prices or volumes of purchases.'" *Nantahala*, 476 U.S. at 966-67 (quoting *N. Nat. Gas Co. v. Kan. Corp. Comm'n*, 372 U.S. 84, 90-91 (1963)). Thus, in *ELI*, the Supreme Court, relying on *Nantahala* and *MP&L*, held that a non-price provision in the ESA is a "filed rate." 539 U.S. at 47-50. Specifically, the Court considered a provision that delegated discretion to the Entergy Operating Committee to determine which generators should be counted as available, which in turn affected cost equalization payments among the EOCs. *Id.* at 44-45. The Court held that the filed-rate doctrine preempted a state public service commission's order that had found the Operating Committee's exercise of discretion imprudent. *Id.* at 49-50.

Doc. 263 at 32-33 (of 55).

Mr. Griffey's opinion that EMI included costs in its FAC filings in violation of Mississippi law is trumped by the federal filed rate doctrine.[44] So too is Mr. Griffey's opinion that EMI violated its regulatory compact with Mississippi. The ESA required that the System be operated "to obtain the lowest reasonable cost of energy" for all the operating companies ("EOCs"). *See* ESA at § 30.02. That directive, designed to benefit the System collectively, necessarily trumps any single state's regulatory compact.

Mr. Griffey's specific critique that EMI should have purchased more energy from IPPs disregards that sourcing determinations were entrusted to the Operating Committee and System

---

[44] *See* Ex. A at 16-19.

Operator and were required to comply with ESA provisions, including §§ 4.02 and 30.02, concerning purchases of energy from IPPs and operation of EMI's own generating units. Importantly, Mr. Griffey seems to concede this point and tries to avoid its supremacy clause ramifications by claiming EMI could make "own account" purchases.[45] But, as explained in Defendants' brief in support of their preemption motion for summary judgment (Doc. 263 at 41-46 (of 55)), even if EMI had unfettered discretion (vis-à-vis the System Operator and System Operating Committee) to make such purchases, EMI's exercise of that discretion has inevitable multi-state consequences and therefore the prudence of the exercise must be judged by FERC rather than by a regulator or jury sitting in a single state.

## VI.    MR. GRIFFEY IS UNQUALIFIED TO OPINE ON THE "REGULATORY COMPACT" IN MISSISSIPPI OR ON THE PROPRIETY OF EMI'S FUEL FACTOR COSTS

Mr. Griffey seeks to testify as an expert on Mississippi's regulatory compact and the failures of not only EMI to abide by, but the MPSC to enforce, the MPSC's regulations on recoverable fuel costs. Mr. Griffey is unqualified to give opinions on those matters.

Each state's public service commission has its own rules and regulations governing utilities' operations and cost recoveries. Those of the MPSC are unique to Mississippi, and they have changed many times.[46] The vast majority of Mr. Griffey's consulting experience has been in Texas, and on a more limited basis in Louisiana.[47] Prior to this matter his only experience in Mississippi was as an expert for a party in the Mississippi Power/Kemper County matter in which he opined on a wholly unrelated issue.[48] Mr. Griffey has no experience in fuel cases of this

---

[45] Ex. A at 9.

[46] Ex. D at 7-32.

[47] Ex. A at CSG-1, pp. 4-8.

[48] Ex. E at 23:3-25, 24:1-3.

nature.[49]  He has never been involved in a fuel case anywhere.[50]  He admits that whatever experience he gained in Texas is not transferable to Mississippi.[51]  His base of knowledge about Mississippi public utility rate setting comes from what he has read.[52]

Rule 702 requires "specialized knowledge."  Mr. Griffey has none relative to Mississippi's regulatory compact, rate-setting or fuel cost recovery.  He has never been involved in a fuel case of any nature.  Regardless of its source, "the witness's . . . specialized knowledge," must be "sufficiently related to the issues and evidence before the trier of fact that the witness's proposed testimony will help the trier of fact."  *United States v. Wen Chyu Liu*, 716 F.3d 159, 167 (5th Cir. 2013).  "Even where a witness has special knowledge or experience, qualification to testify as an expert also requires that the area of the witness's competence matches the subject matter of the witness's testimony."  29 Charles Alan Wright, Arthur R. Miller, & Victor James Gold, Federal Practice and Procedure § 6265 (1st ed. 2014).

Mr. Griffey should be found to be unqualified to give testimony in this matter.

## CONCLUSION

Mr. Griffey's purported testimony seeks to buttress Plaintiffs' legal theories, rather than assist the fact finder in resolving actual factual disputes.  For that reason, and because his opinions are speculative and irrelevant, Mr. Griffey's opinions do not satisfy Rule 702 and are thus inadmissible.  Furthermore, admitting Mr. Griffey's opinions effectively allows the fact finder to second-guess regulatory decisions of both FERC and the MPSC.  This kind of retroactive rate-making through judicial proceedings violates both state and federal law.  Finally, Mr. Griffey is

---

[49] *Id*. at 274:10-11.

[50] *Id*. at 274:12-18.

[51] *Id*. at 173:5-6.

[52] *Id*. at 173:7-19.

not qualified to testify as an expert on the subjects identified in his report.  Defendants request that the Court enter an order excluding Mr. Griffey's opinions in his opening and rebuttal reports and granting such other relief as the Court may deem advisable.

RESPECTFULLY SUBMITTED, this the 20th day of June, 2018.

ENTERGY MISSISSIPPI, INC., ENTERGY CORPORATION, ENTERGY SERVICES, INC. AND ENTERGY POWER, INC., Defendants

By /s/ Roy D. Campbell, III
    Roy D. Campbell, III (MSB 5562)
    J. William Manuel (MSB 9891)
    Alicia N. Netterville (MSB 105055)

    BRADLEY ARANT BOULT
    CUMMINGS LLP
    One Jackson Place
    188 East Capitol Street, Suite 400
    P.O. Box 1789
    Jackson, MS 39215-1789
    Telephone: (601) 948-8000
    Facsimile: (601) 948-3000
    rcampbell@bradley.com
    wmanuel@bradley.com
    anetterville@bradley.com

    James L. Robertson (MSB 5612)
    Charles E. Ross (MSB 5683)
    Rebecca Hawkins (MSB 8786)
    WISE CARTER CHILD & CARAWAY, P.A.
    Post Office Box 651
    Jackson, MS  39205-0651
    (601) 968-5534 – Telephone
    (601) 944-7738 – Facsimile
    jlr@wisecarter.com
    cer@wisecarter.com
    rwh@wisecarter.com

OF COUNSEL:

Sanford I. Weisburst, *Pro Hac Vice*
QUINN EMANUEL URQUHART &
SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
sandyweisburst@quinnemanuel.com

Tianna H. Raby, MSB #100256
Christopher R. Shaw, MSB #100393
ENTERGY MISSISSIPPI, INC.
308 E. Pearl Street, Suite 700 (39201)
Mail Unit M-ELEC-4A
P.O. Box 1640
Jackson, MS  39215-1640
(601) 969-2656 – Telephone
(601) 969-2696 – Facsimile
traby@entergy.com
cshaw4@entergy.com

John A. Braymer, *Pro Hac Vice*
Associate General Counsel
ENTERGY SERVICES, INC.
639 Loyola Avenue, Suite 2600
New Orleans, LA  70133
jbrayme@entergy.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

This 20th day of June, 2018.

/s/ Roy D. Campbell, III
OF COUNSEL
