# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

THE STATE OF MISSISSIPPI, EX REL.     )
JIM HOOD, ATTORNEY GENERAL     )
FOR THE STATE OF MISSISSIPPI,     )
    )
Plaintiff-Counterclaim Defendant,     )
    )
v.     )    **No. 3:08-CV-780-CWR-LRA**
    )
ENTERGY MISSISSIPPI, INC., ENTERGY     )
CORPORATION, ENTERGY SERVICES,     )
INC., AND ENTERGY POWER, INC.,     )
    )
Defendants-Counterclaim Plaintiffs.     )

## MEMORANDUM BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S JURY DEMAND

Roy D. Campbell, III (MSB 5562)
J. William Manuel (MSB 9891)
Alicia N. Netterville (MSB 105055)
BRADLEY ARANT BOULT
CUMMINGS LLP
One Jackson Place
188 East Capitol Street, Suite 400
P.O. Box 1789
Jackson, MS 39215-1789
(601) 948-8000 – Telephone
(601) 948-3000 – Facsimile
rcampbell@bradley.com
wmanuel@bradley.com
anetterville@bradley.com

John A. Braymer, Pro Hac Vice
Associate General Counsel
Entergy Services, Inc.
639 Loyola Avenue, Suite 2600
New Orleans, LA 70133
jbrayme@entergy.com

Charles E. Ross (MSB 5683)
James L. Robertson (MSB 5612)
Rebecca Hawkins (MSB 8786)
WISE CARTER CHILD & CARAWAY, P.A.
Post Office Box 651
Jackson, MS 39205-0651
(601) 968-5534 – Telephone
(601) 944-7738 – Facsimile
jlr@wisecarter.com
cer@wisecarter.com
rwh@wisecarter.com

Tianna H. Raby (MSB 100256)
Christopher R. Shaw (MSB 100393)
Entergy Mississippi, Inc.
308 E. Pearl Street, Suite 700 (39201)
Mail Unit M-ELEC-4A
P.O. Box 1640
Jackson, MS 39215-1640
(601) 969-2656 – Telephone
(601) 969-2696 – Facsimile
traby@entergy.com
cshaw4@entergy.com

*Counsel for Defendants*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ...........................................................................................................1

STATEMENT OF FACTS................................................................................................2

LEGAL STANDARD ......................................................................................................3

ARGUMENT .................................................................................................................3

I.      Plaintiff Waived Any Right To A Jury Trial .....................................................4

II.     The Seventh Amendment Does Not Grant A Jury Trial Right To The Government .........5

     A.     Common Law Practices Do Not Support Plaintiff's Jury Trial Demand ...............7

          1.     The Civil Jury In 18th-Century England Was A Device To Protect Individuals From Government Deprivations ................................................8

          2.     The Civil Jury In Early America Also Served To Protect Individuals From Governmental Deprivations ...................................................9

     B.     Historical Practice Confirms That The Seventh Amendment Was Not Intended As A Government Right .......................................................11

III.    Plaintiff Is Not Entitled To A Jury In Any Event............................................12

     A.     The First Amended Complaint Sounds In Equity ...............................13

     B.     The Claims Involve A Public, Not Private, Right .................................16

     C.     Due Process Requires These Complex Claims To Be Decided By A Judge, Not Jury ................................................................................18

IV.    At A Minimum, The Majority Of Claims Are Not Subject To A Jury Trial ...................21

CONCLUSION ...........................................................................................................22

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Austin v. Shalala,*
994 F.2d 1170 (5th Cir. 1993) ..................................................................... 6, 17

*Baker v. FirstCom Music,*
No. 16-cv-08931, 2018 WL 3216509 (C.D. Cal. June 27, 2018) .......................... 14

*Bloom v. Illinois,*
391 U.S. 194 (1968) ..................................................................................... 10

*Borst v. Chevron,*
36 F.3d 1308 (5th Cir. 1994) .............................................................. 12, 13, 15

*Broadnax Mills, Inc. v. Blue Cross and BlueShield of Virginia,*
876 F. Supp. 809 (E.D. Va. 1995) ..................................................................... 15

*Calamia v. Spivey,*
632 F.2d 1235 (5th Cir. 1980) ......................................................................... 13

*Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,*
494 U.S. 558 (1990) ............................................................................. 5, 13, 18

*Classical Silk, Inc. v. Dolan Group, Inc.,*
No. 14-cv-09224, 2016 WL 7638112 (C.D. Cal. Mar. 21, 2016) .......................... 22

*Cotton v. Witco Chem. Corp.,*
651 F.2d 274 (5th Cir. 1981) ........................................................................... 19

*Country (Social) Club of Savannah, Inc. v. Sutherland,*
411 F.2d 599 (5th Cir. 1969) ............................................................................. 4

*Damsky v. Zavatt,*
289 F.2d 46 (2d Cir. 1961) ................................................................................ 6

*Davis v. West,*
No. 07-cv-33986, 2012 WL 2871662 (S.D. Tex. July 10, 2012) .......................... 17

*Dimick v. Schiedt,*
293 U.S. 474 (1935) ........................................................................................ 3

*EEOC v. Brown & Root, Inc.,*
725 F.2d 348 (5th Cir. 1984) ........................................................................... 11

*EEOC v. Corry Jamestown Corp.,*
719 F.2d 1219 (3d Cir. 1983) .......................................................................... 11

*Elas v. Preston,*
No. 5:15-cv-28, 2016 WL 851763 (S.D. Miss. Mar. 1, 2016) ............................... 4

*Entergy Arkansas, Inc. v. Nebraska,*
358 F.3d 528 (8th Cir. 2003) ........................................................................... 21

ii

*Granfinanciera, S.A. v. Nordberg*,
  492 U.S. 33 (1989) .................................................................................13, 16

*Great-West Life & Annuity Ins. Co. v. Knudson*,
  534 U.S. 204 (2002) ........................................................................................14

*Green v. United States*,
  356 U.S. 165 (1958) ........................................................................................10

*Hood ex rel. State v. BASF Corp.*,
  No. 56863, 2006 WL 308378 (Miss. Ch. Jan. 17, 2006).................................16

*In re Clements*,
  881 F.2d 145 (5th Cir. 1989)...........................................................................22

*In re Davis*,
  No. 07-cv-33986, 2012 WL 2871662 (S.D. Tex. July 10, 2012)........................4

*In re Japan Elec. Prods. Antitrust Litig.*,
  631 F.2d 1069 (3d Cir. 1980) .........................................................................19

*Lehman v. Nakshian*,
  453 U.S. 156 ......................................................................................................3

*Louisville & Nashville R.R. Co. v. Hasty*,
  360 So. 2d 925 (Miss. 1978) .......................................................................4, 15

*Marlow LLC v. BellSouth Telecommc'ns, Inc.*,
  No. 2:10-cv-135, 2012 WL 5342518 (S.D. Miss. Oct. 29, 2012) ......................5

*McLean v. Green*,
  352 So. 2d 1312 (Miss. 1977) ...........................................................................4

*Middleton v. Life Ins. Co. of N. Am.*,
  No. 09-cv-3270, 2010 WL 582552 (S.D. Tex. Feb. 12, 2010).....................13, 15

*Miss. Pub. Serv. Comm'n v. Miss. Power Co.*,
  337 So. 2d 936 (Miss. 1976) ...........................................................................16

*Miss. Pub. Serv. Comm'n v. Miss. Valley Gas Co.*,
  327 So. 2d 296 (Miss. 1976) ...........................................................................16

*Pacific Mutual v. Haslip*,
  499 U.S. 1 (1991) ..............................................................................................8

*Powell v. Campbell*,
  912 So. 2d 978 (Miss. 2005) ...........................................................................16

*Reich v. Tiller Helicopter Servs., Inc.*,
  8 F.3d 1018 (5th Cir. 1993) .............................................................................13

*Res v. Peto*,
  148 Eng. Rep. (1826).........................................................................................7

*Rideau v. Parkem Indus. Serv., Inc.*,
  917 F.2d 892 (5th Cir. 1990) .............................................................................4

*Ross v. Bernhard*,
    396 U.S. 531 (1970) ................................................................13, 18

*Ruggiero v. Compania Peruana de Vapores "Inca Capac Yupanqui,"*
    639 F.2d 872 (2d Cir. 1981) ...................................................................6

*SEC v. Life Partners Holdings, Inc.*,
    854 F.3d 765 (5th Cir. 2017) ................................................................22

*Simler v. Conner*,
    372 U.S. 221 (1963) ...............................................................................3

*Standard Oil v. Arizona*
    738 F.2d 1021 (9th Cir. 1984) ..............................................................12

*Texas Taco Cabana L.P. v. Taco Cabana of N.M., Inc.*,
    No. 02-cv-1209, 2005 WL 356829 (W.D. Tex. Feb. 2, 2005) ...............22

*The King v. Cotton*,
    145 Eng.Rep. 729 (1751) ........................................................................7

*The King v. Humphrey*,
    148 Eng.Rep. 371 (1824) ........................................................................7

*The King v. Marsh*,
    145 Eng.Rep. 842 (1751) ........................................................................7

*Thomas v. Union Carbide Agricultural Products Co.*,
    473 U.S. 568 (1985) .............................................................................17

*Tull v. United States*,
    481 U.S. 412 (1987) ...........................................................................5, 6

*Union Nat'l Life Ins. Co. v. Crosby*,
    870 So. 2d 1175 (Miss. 2004) ..............................................................16

*United States v. Griffin*,
    14 F.2d 326 (W.D. Va. 1926) ..........................................................11, 12

*United States v. Hernandez*,
    525 Fed. App'x 274 (5th Cir. 2013) ......................................................14

*United States v. J.B. Williams Co.*,
    498 F.2d 414 (2d Cir. 1974) ...................................................................6

*United States v. McMahan*,
    556 F.2d 362 (5th Cir. 1977) ................................................................22

*United States v. Olds*,
    193 F.2d 377 (5th Cir. 1952) ................................................................14

## **Statutes**

Fed. R. Civ. Pro. 54(c) ...............................................................................15

L.U.Civ.R. 38(c) ..........................................................................................4

Miss. Code Ann. § 75-24-11 ........................................................14

Miss. Code Ann. § 75-24-9 .........................................................16

## **Other Authorities**

1 F. Pollock & F. Maitland, The History of English Law 138-140 (2d ed. 1898) ..................8, 12

5 J. Moore, Moore's Fed. Practice § 38.31 at 236 (2d ed. 1976) .................................12

9 C. Wright and A. Miller, Federal Practice and Procedure 2302 (2018) .....................19

*AG Statement on 2018 Legislative Session* (March 29, 2018) ....................20

Austin W. Scott, *Trial by Jury and the Reform of Civil Procedure*, 31 Harv. L. Rev. 669 (1918) ..................................................9

Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 Minn. L. Rev. 639 (1973) ..................................................9, 10

Gerald P. Norton, *EEOC's Right to a Jury Trial and Liquidated Damages in Actions Under the Age Discrimination in Employment Act: A Dissenting View*, 3 Lab. Law. 819 (1987) ..................................................11

Hon. Richard S. Arnold, *Trial By Jury: The Constitutional Right to a Jury of Twelve in Civil Trials*, 22 Hofstra L. Rev. 1 (1993) ..................................................10

James S. Campbell, *The Current Understanding of the Seventh Amendment Jury Trials In Modern Complex Litigation*, 66 Wash. U.L.Q. 63 (1988) .......................19

Jeff Amy, *Entergy 'did lie to Legislature,' AG Jim Hood says of utility's effort to kill lawsuit*, Clarion Ledger (June 25, 2018) ..................................................20

Morris S. Arnold, *A Historical Inquiry Into the Right to Trial by Jury in Complex Civil Litigation*, 128 U. Pa. L. Rev. 829 (1980) ..................................................19

Patrick Lynch, *The Case for Striking Jury Demands in Complex Antitrust Litigation*, 1 Rev. Lit. 3 (1980) ..................................................19

Stephan Landsman, *The Civil Jury in America*, 44 Hastings L.J 579 (1993) ...........8, 9

# INTRODUCTION

Plaintiff's jury demand should be stricken on multiple grounds.

*First*, because none of the statutes at issue confers the right to a jury trial, Plaintiff's sole resort is to the Seventh Amendment. But any constitutional right to a jury trial here has been waived, as Plaintiff knowingly and voluntarily filed his original complaint in Mississippi's Chancery Court, where there is no right to (or possibility of) a jury trial. Under well-established law, Plaintiff cannot complain that he has been deprived of a constitutional right that he chose not to pursue originally.

*Second*, waiver aside, a state plaintiff has no right to a jury trial under the Seventh Amendment. The Seventh Amendment was passed to protect individuals from government overreach in civil actions. It does not apply to government-initiated litigation.

*Third*, even if the State could be equated to a private plaintiff, there is still no jury trial right here because this case is not a typical *legal* action in which such a right attaches. In performing the traditional analysis of whether the right to a jury trial attaches, courts must decide (1) whether the claims and relief sought are legal or equitable in nature in view of 18th century common law, (2) whether the lawsuit involves a public right, and (3) whether the case is unduly complex, such that requiring the issues to be decided by a jury would deprive the defendant of due process rights. All three factors point squarely in favor of denying a jury trial and holding a bench trial here. Plaintiff seeks equitable relief that is comfortably within the purview of the district court to grant. Further, this case is a quintessential "public right" case because it stems from an extensive federal and state regulatory regime designed by legislative and administrative bodies, and so is not akin to a traditional breach of contract case between two private parties (the classic "private right" case). Finally, this case cries out for a bench trial given the awkwardness of having a self-interested jury

make extremely complex judgments as to the intricate and technical details of a multi-state energy system and its members.

For any of these three reasons, Plaintiff's jury demand should be stricken in its entirety. But in the alternative to striking the jury demand in its entirety, Defendants request, at a minimum, that the unquestionably equitable issues—including (1) all claims for equitable relief on any counts, (2) counts two (regulatory violations), three (restitution), four (unjust enrichment), and eight (accounting), and (3) the amount of any civil penalties—be adjudicated by the Court separate from any adjudication by a jury of any remaining issues.

## STATEMENT OF FACTS

On December 2, 2008, the Attorney General for the State of Mississippi filed a Complaint in the Chancery Court of Hinds County, Mississippi, alleging that Defendants "charge[d] excessive rates to its retail customers in Mississippi" because the electricity rates that Defendants paid at the wholesale level pursuant to the Entergy System Agreement and in turn charged at the retail level pursuant to Mississippi Public Service Commission ("MPSC") authorization, were higher than they would have been if Defendants had made different choices in purchasing energy. (Doc. 1 ¶¶ 5- 6.) Based on this allegation, the original complaint asserted claims for (1) violation of the Mississippi Consumer Protection Act, (2) violation of the statutes and regulations of the Mississippi Public Service Commission, (3) restitution, (4) unjust enrichment, (5) violation of the Mississippi Antitrust Act, (6) fraud, (7) breach of an obligation of good faith and fair dealing, and (8) an accounting. (Doc. 1-3 ¶¶ 106-133.) Plaintiff's original complaint sought equitable relief, including a declaratory judgment, a permanent injunction, disgorgement of profits, damages and/or restitution, civil penalties, and an accounting. (Doc. 1-3 at 36-37.)

Defendants removed the case to federal court. (Doc. 1) Plaintiff subsequently requested a jury trial on all claims. (Doc. 43.) Defendants did not respond to Plaintiff's motion, and during

the ensuing four-plus years no order was entered addressing the issue. During the May 4, 2017 case management conference, the Court indicated that the case would be set for a jury trial and Defendants registered their objection. On June 5, 2017, the Court entered a case management order allowing Defendants to file a "Motion to strike claim for jury trial" among their summary judgment and other pretrial motions. (Doc. 130 ¶ 5.) Plaintiff amended his complaint on June 9, 2017, but did not add any new causes of action or requests for relief. (*See* Doc. 135.) Defendants now move to strike Plaintiff's claim for a jury trial in whole and alternatively in part.

## LEGAL STANDARD

"[F]ederal law governs in determining the right to a jury trial in the federal courts." *Simler v. Conner*, 372 U.S. 221, 221 (1963) (per curiam). Under federal law, there is no general right to a jury trial in a civil case. The right must derive from a statute or from the Seventh Amendment to the U.S. Constitution. *See Lehman v. Nakshian*, 453 U.S. 156, 165 n.13. In this case, none of the statutes at issue provides for a jury trial. Any right that the Plaintiff has to demand a jury trial must therefore derive from the Seventh Amendment, as Plaintiff acknowledged in his jury demand. (Doc. 43.)

By its terms, the Seventh Amendment protects a civil litigant's "right of trial by jury" only "[i]n suits at common law." U.S. Const. Amend. VII. Thus "[i]n order to ascertain the scope and meaning of the Seventh Amendment, resort must be had to the appropriate rules of the common law established at the time of the adoption of that constitutional provision in 1791." *Dimick v. Schiedt*, 293 U.S. 474, 476 (1935).

## ARGUMENT

Plaintiff's claim for a jury trial depends on whether his right to a jury trial has been waived, whether these types of litigants would have had a right to a jury trial in 1791, and

whether the claim is for a private right of action that sounds in law and is within the practical competence of a jury. All of these considerations weigh against finding a jury right here.

## I.     Plaintiff Waived Any Right To A Jury Trial

Plaintiff is not entitled to a jury trial because he waived any such right by filing his action in Mississippi Chancery Court. Even where the Seventh Amendment applies, "the right to a jury trial can be waived." *Rideau v. Parkem Indus. Serv., Inc.*, 917 F.2d 892, 896 (5th Cir. 1990) (citing *Country (Social) Club of Savannah, Inc. v. Sutherland*, 411 F.2d 599, 600 (5th Cir. 1969)). Further, waiver can occur through a party's conduct, including by bringing claims in a forum that does not permit a jury trial. *See In re Davis*, No. 07-cv-33986, 2012 WL 2871662, at *5 (S.D. Tex. July 10, 2012) (litigants who file claims in bankruptcy court "waive their right to a jury trial").

That is the situation here. Under Mississippi law, "[in] chancery court, with some few statutory exceptions, the right to jury is purely within the discretion of the chancellor, and if one is empaneled, its findings are totally advisory." *Louisville & Nashville R.R. Co. v. Hasty*, 360 So. 2d 925, 927 (Miss. 1978) (quoting *McLean v. Green*, 352 So. 2d 1312, 1314 (Miss. 1977)). By electing to bring his claims in chancery court, Plaintiff waived any right to a jury trial.

This Court's Local Rule 38(c) confirms as much, providing that "[a] civil action removed to federal district court from a chancery court of the State of Mississippi will be designated for non-jury trial." L.U.Civ.R. 38(c). While this Court has declined to find Local Rule 38(c) dispositive where a <u>*defendant*</u> seeks a jury trial after removal (*see, e.g.*, *Elas v. Preston*, No. 5:15-cv-28, 2016 WL 851763, at *1 (S.D. Miss. Mar. 1, 2016)), the situation is different where, as here, the <u>*plaintiff*</u> seeks a jury trial after removal, as it was plaintiff who elected the non-jury forum in the first instance. In such a case, a plaintiff has not only expressly consented to, but affirmatively

chosen, a forum where no jury trial is available.  Plaintiff should not be able to change his mind and instead seek a jury trial.[1]

## II.      The Seventh Amendment Does Not Grant A Jury Trial Right To The Government

Plaintiff's waiver aside, his jury demand should also be stricken because the Seventh Amendment does not grant states the constitutional right to a jury trial in civil actions against private defendants.

In elaborating the historical test in the context of civil suits between private litigants, the Supreme Court has articulated a two-part inquiry.  First, the court should compare the present case "to 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity."  *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990). If the action was unknown in 18th-century England, the court must determine how an analogous suit would have been treated in that era.  *Id.* at 565-66.  Second, the court should "examine the remedy sought and determine whether it is legal or equitable in nature."  *Id.* at 565.

The Supreme Court has applied this test to civil suits in which the plaintiff is a governmental entity and the defendant, a private citizen, demands a jury trial.  *See Tull v. United States*, 481 U.S. 412 (1987).  *Tull* involved "an action instituted by the Federal Government seeking civil penalties and injunctive relief under the Clean Water Act."  *Id.* at 414.  Applying the historical test, the Supreme Court framed the inquiry as whether "the action[]" brought by the government is "analogous" to a suit at common law.  *Id.* at 417.  The Court found that "[a]ctions by the Government to recover civil penalties under statutory provisions [ ] historically have been

---

[1]  While at least one court has allowed a plaintiff who initially filed in chancery court later to seek a jury trial, that case did not even mention Local Rule 38(c), much less address the effect of the Rule  *See Marlow LLC v. BellSouth Telecommc'ns, Inc.*, No. 2:10-cv-135, 2012 WL 5342518, at *1-2 (S.D. Miss. Oct. 29, 2012).

viewed as one type of action in debt requiring trial by jury." *Id.* at 418-19. After determining that the relief sought was also legal in nature, the Court held that the defendant had "a constitutional right to a jury to determine his liability on the legal claims." *Id.* at 425.

*Tull* involved a defendant's demand for a jury trial, as do the overwhelming majority of decisions addressing the Seventh Amendment in this context. *See, e.g.*, *Austin v. Shalala*, 994 F.2d 1170, 1174-78 (5th Cir. 1993); *United States v. J.B. Williams Co.*, 498 F.2d 414, 421-30 (2d Cir. 1974); *Damsky v. Zavatt*, 289 F.2d 46, 48-53 (2d Cir. 1961). But neither the Supreme Court nor the Fifth Circuit has ever addressed the issue of whether the government itself has a right to demand a jury trial in civil cases. To be sure, the historical test as applied by the courts ordinarily looks simply to the nature of the issues and relief sought in determining whether a jury trial should occur. However, this is only because, in the ordinary case, both parties are private litigants and examples of similar cases from the common law era are readily at hand. When the identity of one of the parties would have had an effect on the proper classification of the suit at common law, however, courts have departed from the traditional inquiry into the nature of the issues and relief sought. Thus, for instance, courts have developed a special rule for the application of the Seventh Amendment in suits against foreign governments, examining how the identity of the defendant as a foreign sovereign would have affected the common law analysis. *See, e.g.*, *Ruggiero v. Compania Peruana de Vapores "Inca Capac Yupanqui,"* 639 F.2d 872, 878-81 (2d Cir. 1981). In this case, therefore, the fact that Plaintiff, on behalf of the State of Mississippi, purports to sue in the State's capacity as *parens patriae* must be taken into account. Applying the historical test in light of the identity of Plaintiff here, the issue is whether a right analogous to that claimed by the State would have existed at common law.

**A.      Common Law Practices Do Not Support Plaintiff's Jury Trial Demand**

The closest common law analogy to this lawsuit would be one in which the Crown (the sovereign in 18th century England) sued a private company in a civil matter.  There is no indication, however, that the Crown had the right to demand a jury trial ever, let alone when it sought penalties or damages from a corporation.  None of the old English legal commentaries addresses this issue.  Although there are opinions from the time in actions at law brought by the Crown, they do not mention which party demanded a jury trial or discuss whether the Crown had a right to do so.  *See, e.g.*, *The King v. Cotton*, 145 Eng.Rep. 729 (1751); *The King v. Marsh*, 145 Eng.Rep. 842 (1751); *The King v. Humphrey*, 148 Eng.Rep. 371 (1824); *Res v. Peto*, 148 Eng. Rep. (1826).  It is therefore unclear whether these cases were brought in the law courts as a matter of royal right or rather as a matter of custom, knowing that the defendant had a right to demand a jury trial and would invariably do so.

The traditional sources to which the Supreme Court of the United States has looked in deciding claims under the Seventh Amendment—common law English cases from around 1791 and historical treatises—thus do not answer the question of whether the State has a Seventh Amendment right in this case.  Therefore, an examination of the purposes of the civil jury trial right in the common law era must be undertaken.  That purpose belies the State's demand for a jury trial here or in any similar case.  Indeed, the right to a jury in civil cases was understood in 18th-century England as protection afforded the individual against government deprivations.  The Framers likewise understood the Seventh Amendment in these terms.  The notion that the government itself could demand a jury trial in a civil case would therefore have been entirely foreign to them.  Because the Seventh Amendment simply "preserves" the right to a jury trial that existed in 1791, Plaintiff's demand for a jury trial should be stricken.

1.       **The Civil Jury In 18th-Century England Was A Device To Protect Individuals From Government Deprivations**

The civil jury in England had its origins in the inquisitorial practices of the early Norman kings.  *See* 1 F. Pollock & F. Maitland, The History of English Law 138-140 (2d ed. 1898).  An officer of the Crown would summon a group of people and require them "to give upon oath a true answer to some question."  *Id.* at 138.  The question need not even necessarily have arisen in the course of litigation.  *Id.* at 139.  The early Norman kings initially used the jury "to help them secure an administrative hold on the lands they had seized by force of arms."  Stephan Landsman, *The Civil Jury in America*, 44  Hastings L.J 579, 582 (1993).  The jury thus functioned as a royal commission of inquiry, more like a witness than a jury as they are understood today.

The jury's evolution from a royal prerogative to the modern factfinder began with the Magna Carta in 1215.  Chapter 39 of the Magna Carta provided that "No Freeman shall be taken, or imprisoned, or be disseised of his Freehold, or Liberties, or free Customs, or be outlawed, or exiled . . . but by lawful Judgment of his Peers, or by the Law of the Land."  *See Pacific Mutual v. Haslip*, 499 U.S. 1, 28 (1991) (Scalia, J., concurring in the judgment).  As this language demonstrates, even by 1215 the jury trial had become a right afforded individuals to protect them from deprivations by the Crown, rather than a privilege of the Crown itself.

The civil jury gained further importance as a safeguard of individual rights in the 17th century.  At that time, "the Stuart kings increasingly sought to intrude upon" the role of the civil jury.  Landsman, *supra*, at 589.  Citizens serving on juries responded with "a rising tide of resistance," returning verdicts against the Crown in several publicized cases.  *Id.* at 590-91.  The role of the jury in protecting individual rights against governmental oppression solidified in the next century.  One notorious incident involved a damages action brought by an outspoken critic of the king.  Following his acquittal on criminal charges of seditious libel, he brought a civil action

against public officials that resulted in a substantial punitive damage award by the jury. *Id.* at 591. In upholding the award, the Lord Chief Justice remarked that "[d]amages are designed not only as satisfaction to the injured person, but likewise . . . as a proof of the detestation of the jury to the action itself." *Id.* (citation omitted).

By the 17th Century, therefore, the jury's role as a protector of the individual against government had replaced whatever purpose it had originally served. The jury had assumed its function "as a bulwark of liberty, [and] as a means of preventing oppression by the Crown." Austin W. Scott, *Trial by Jury and the Reform of Civil Procedure*, 31 Harv. L. Rev. 669, 676 (1918).

### 2. The Civil Jury In Early America Also Served To Protect Individuals From Governmental Deprivations

Given the English experience with governmental interference in the administration of justice, the early settlers "were preoccupied with safeguarding the jury right, relying upon the jury to restrain government." Landsman, *supra*, at 593. Americans' commitment to jury trial as a individual protection is illustrated by the controversies surrounding the expansion of admiralty jurisdiction in the early 1700s. In this period, colonial governors appointed by the king sought to curtail the right to jury trial by expanding the jurisdiction of admiralty courts, where no jury was available. *See id.* at 593-94; Charles W. Wolfram, *The Constitutional History of the Seventh Amendment*, 57 Minn. L. Rev. 639, 654 & n.47 (1973). This expansion featured prominently in formal colonial complaints in the 1760s and 1770s. Landsman, *supra*, at 595. Indeed, in the Declaration of the Causes and Necessity of Taking Up Arms, the colonists expressly objected to the king's "extending the jurisdiction of courts of admiralty and vice-admiralty beyond their ancient limits [and] . . . depriving . . . [the colonies] of the accustomed and inestimable privilege of trial by jury, in cases affecting both life and property." *Id.* at 596. This deprivation was one of the motivating forces behind the Declaration of Independence itself. *See Green v. United States*,

356 U.S. 165, 209 (1958) (Black, J., dissenting), *overruled by Bloom v. Illinois*, 391 U.S. 194, 198-99 (1968).

In light of these colonial episodes, it is no surprise that the Framers viewed the civil jury trial as a bulwark against the deprivations undertaken by the centralized government (and not as a protection afforded to the centralized government). Indeed, the absence of such a constitutional provision generated much controversy among the anti-Federalists and in the state legislatures during ratification. Wolfram, *supra*, at 661-725. The ratification of the Constitution was in fact secured in large part by a promise to the anti-Federalists that their concerns regarding individual rights—chief among which was the right to a jury trial—would be promptly addressed. *See Green*, 356 U.S. at 209-210; Wolfram, *supra*, at 725. Thus, "[t]he debates surrounding the Constitution's adoption demonstrated the strong belief of the American populace that the role of the civil jury was vital to the protection of individual liberty." Hon. Richard S. Arnold, *Trial By Jury: The Constitutional Right to a Jury of Twelve in Civil Trials*, 22 Hofstra L. Rev. 1, 17 (1993).

Because "the antifederalist arguments concerning civil jury trial . . . ultimately prevailed . . . [,] their arguments should be given due weight in determining the purpose behind the [S]eventh [A]mendment." Wolfram, *supra*, at 672-73. The anti-Federalists championed the civil jury for five reasons—"the protection of debtor defendants; the frustration of unwise legislation; the overturning of the practices of courts of vice-admiralty; the vindication of the interests of private citizens in litigation with the government; and the protection of litigants against overbearing and oppressive judges." *Id.* at 670-71. Each of these reasons shows the civil jury's purpose to have been protecting individuals against the government. The Seventh Amendment was designed to enshrine this protection and its protections did not extend to the government as a plaintiff in a case where the private party defendant did not seek a jury trial.

## B. Historical Practice Confirms That The Seventh Amendment Was Not Intended As A Government Right

From 17th-century England through the framing of the Bill of Rights, the right to a civil jury trial was viewed as protecting the individual from governmental power. The notion that the government itself could demand a jury when suing as a civil plaintiff would have been wholly foreign to the Framers. It is implausible to believe, therefore, that the Seventh Amendment protects such a right. No doubt this is the reason why there is not a single case in the period after the adoption of the Seventh Amendment in which the government demanded a jury trial. Indeed, the first instance of such a demand did not occur until 130 years later, in 1926. And even then, the court found it to be a "perversion of the purpose and intent of the Seventh Amendment to contend that it gives the government a right to a jury trial in any case." *United States v. Griffin*, 14 F.2d 326, 326-27 (W.D. Va. 1926). It is perhaps for this reason that, as late as the 1980s, the U.S. Department of Justice acknowledged that a "substantial argument can be made that the Seventh Amendment does not apply to litigation brought by the government." *Brief of the United States as Amicus Curiae* at 8, 9 in *EEOC v. Brown & Root, Inc.*, 725 F.2d 348 (5th Cir. 1984) (quoted in Gerald P. Norton, *EEOC's Right to a Jury Trial and Liquidated Damages in Actions Under the Age Discrimination in Employment Act: A Dissenting View*, 3 Lab. Law. 819, 843 n.130 (1987)).

While two circuits (*not* the Fifth Circuit) have held that the government has a Seventh Amendment jury right in civil cases with private parties under certain circumstances, those courts did not engage with the historical analysis above. In *EEOC v. Corry Jamestown Corp.*, for example, the Third Circuit found the EEOC had a constitutional right to demand a jury trial in an Age Discrimination in Employment Act case. 719 F.2d 1219, 1224 (3d Cir. 1983). In so holding, the Third Circuit principally relied on two treatises and a district court case. But the first treatise does not address the issue at hand. *See id.* (citing 5 J. Moore, Moore's Fed. Practice § 38.31 at

236 (2d ed. 1976)).  And curiously, the case the Third Circuit cited is the very one that found it a "perversion of the purpose and intent of the Seventh Amendment to contend that it gives the government a right to a jury trial."  *Id.* (quoting *Griffin*, 14 F.2d at 326-27).  The second treatise cited by the Third Circuit stands for the unremarkable proposition that juries originated in England with the inquisitorial practices of the early Norman kings.  *See id.* (quoting Pollock & Maitland, *supra*, at 140).  In light of the radically different function that juries had come to serve by 1791 (*see* Part II.A.1, *supra*)—the proper frame of reference in applying the Seventh Amendment—this citation by the Third Circuit is entirely beside the point.

The Ninth Circuit's historical analysis in *Standard Oil v. Arizona* is equally superficial, adding four old English cases, not one of which mentions which party requested a jury trial or discusses whether the Crown in fact had such a right.  738 F.2d 1021 (9th Cir. 1984).

Thus, the only cases to hold that the government has a right to demand a jury trial in a civil case are out-of-circuit, unpersuasive, and lacking in precedential support.  There is no reason for this Court to follow them.  Instead, this Court should give effect to the purpose of the Seventh Amendment as understood at common law in 1791 and by the Framers.  Under that understanding, the Seventh Amendment has no application where, as here, the government itself demands that its civil suit be tried before a jury.  Plaintiff's jury demand should be stricken for this reason alone.

## III.    Plaintiff Is Not Entitled To A Jury In Any Event

Plaintiff's jury demand should be stricken for the additional reason that he is not entitled to a jury trial even under the traditional analysis that applies to private litigants.  Under the same framework discussed in Section II above, because the right to a jury trial attaches only to claims for which a jury trial was available at the time the Seventh Amendment was passed, the Court must first decide whether the Plaintiff's claims and relief sought are legal or equitable in nature.  *See Borst v. Chevron*, 36 F.3d 1308, 1323-24 (5th Cir. 1994).  In addition, even if a claim qualifies as

legal, the Seventh Amendment does not entitle a party to a jury trial on a legal claim that asserts a public right. *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 44 n.4 (1989). Finally, the Court must consider the "practical abilities and limitations of juries" to decide the claims at issue. *Ross v. Bernhard*, 396 U.S. 531, 538 n.10 (1970). All three requirements must be met to establish entitlement to a jury claim; none is met here.

### A.     The First Amended Complaint Sounds In Equity

As the Fifth Circuit has explained, "[t]o determine whether a particular action will resolve legal rights [that must be submitted to a jury], [a court must] examine both the nature of the issues involved and the remedy sought." *Chauffeurs, Teamsters, and Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 565 (1990). As noted above, "'[t]his analysis consists of two inquiries: (1) a comparison of the present statutory action to 18th-century actions in courts of England before the merger of the courts of law and equity; and (2) an examination of the relief sought to determine whether it is legal or equitable in nature'—with the latter inquiry bearing the most weight." *Middleton v. Life Ins. Co. of N. Am.*, No. 09-cv-3270, 2010 WL 582552, at *8 (S.D. Tex. Feb. 12, 2010) (quoting *Borst v. Chevron Corp.*, 36 F.3d 1308 (5th Cir. 1994)). Further, a "Plaintiff['s] request[] for monetary recovery . . . , traditionally the form of relief offered in courts of law do[es] not mandate a conclusion that [its] action is legal in nature." *Borst*, 36 F.3d at 1324 (citing *Calamia v. Spivey*, 632 F.2d 1235, 1236-37 (5th Cir. 1980) ("The mere fact that the appellant would receive a monetary award if he prevailed does not compel the conclusion that he is entitled to a jury trial.")). Rather, the Court must examine "the *overall* relief sought" to determine whether it is equitable or legal. *Middleton*, 2010 WL 582552, at *8 (emphasis in original).

Here, the relief sought is entirely equitable in nature. *See Local No. 391*, 110 S. Ct. at 1348 (disgorgement is equitable); *Reich v. Tiller Helicopter Servs., Inc.*, 8 F.3d 1018 (5th Cir. 1993)

(injunctions are equitable); *Baker v. FirstCom Music*, No. 16-cv-08931, 2018 WL 3216509, at *6 (C.D. Cal. June 27, 2018) (declaratory relief and unjust enrichment are equitable).

While Plaintiff's First Amended Complaint indicates that he is seeking "damages and/or restitution caused by the acts complained of herein," (Doc. 135 at Prayer for Relief ¶ C), Plaintiff's expert's report makes clear that the "damages" Plaintiff is seeking—a return of the alleged overcharges that Entergy customers paid to Entergy—are in fact restitutionary in nature. The ordinary meaning of "restitution" is to restore someone to the position they would occupy had the allegedly wrongful act not occurred. *See United States v. Hernandez*, 525 Fed. App'x 274, 275-76 (5th Cir. 2013) (unpublished). Indeed, Section 75-24-11, on which the Attorney General relies in suing on behalf of Mississippi Consumers (*see* Amended Complaint, ¶ 114), specifically calls the relief "restitution." A claim for restitution sounds in equity "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002). Following this definition, courts have held that claims that a company overcharged citizens in excess of allowable rates is equitable in nature and that recovery of those excess payments constitutes a restitutionary remedy. *See, e.g.*, *United States v. Olds*, 193 F.2d 377, 378-81 (5th Cir. 1952).

That is precisely the relief sought here. The First Amended Complaint charges that "Mississippians are having to pay . . . inflated power bills." (Doc. 135 at ¶ 7.) Through this lawsuit, Plaintiff is seeking to have Entergy return "the excess costs that its retail customers were forced to pay as a result of EMI's conduct at issue." (Doc. 262-18 [DeRamus Rpt.] at ¶ 6; *see also* Miss. Code Ann. § 75-24-11. ("Court may make additional orders or judgments, including restitution . . . to restore any person in interest monies . . . which may have been acquired by means

14

of any practice prohibited by this Chapter . . . .").)  Because this relief is equitable in nature, and because Plaintiff is not seeking any additional "damages" of any kind, this case should be decided without a jury under the standard law-versus-equity analysis.  That Plaintiff's expert uses the word "damages" rather than "restitution" is of no moment.  *See Middleton*, 2010 WL 582552, at *6-7 (requested relief was restitutionary despite plaintiff's claims to the contrary).

Nor can Plaintiff's ancillary requests for attorneys' fees or other compensation support a jury trial right.  An "inquiry into the *overall* relief sought [by Plaintiff] reveals that any damages-type remedy [it seeks] is thoroughly and inexorably intertwined with wholly equitable forms of relief."  *Broadnax Mills, Inc. v. Blue Cross and BlueShield of Virginia*, 876 F. Supp. 809, 817 (E.D. Va. 1995).  Where, as here, the plaintiff's prayer for relief "is restitutionary in nature or is intertwined with claims for injunctive relief, the action is equitable rather than legal in nature."  *Borst*, 36 F.3d at 1324 (citing *Terry*, 494 U.S. at 570-71).[2]

The fact that Plaintiff is seeking only equitable relief is further substantiated by the fact, discussed in Section I above, that Plaintiff initiated this action in Mississippi Chancery Court.  The chancery court primarily has jurisdiction over equitable claims; as such, except in limited circumstances not present here, there is no procedure for or right to a jury trial.  *Louisville & Nashville R.R. Co.*, 360 So. 2d at 927.  Yet even given this jurisdictional limitation to equitable claims, the Mississippi Chancery Court routinely decides cases involving violations of the Consumer Protection Act, antitrust statutes, unjust enrichment, penalties, restitution, fraud, breaches of the covenant of good faith and fair dealing, and, before the adoption of the discovery rules, requests for accountings—thus demonstrating that such cases can be equitable in nature

---

[2]  Further, the Federal Rules expressly state that requests for attorneys fees are to be heard by a court or special master.  *See* Fed. R. Civ. Pro. 54(c).  Thus, no right to a jury trial attaches.

depending on the relief sought. *See, e.g.*, *Hood ex rel. State v. BASF Corp.*, No. 56863, 2006 WL 308378, at *11 (Miss. Ch. Jan. 17, 2006) (in case in chancery court, noting statutory damages for Miss. antitrust violation but that punitive damages also possible); *Powell v. Campbell*, 912 So. 2d 978, 982 (Miss. 2005) ("The theory of restitution is founded on the unjust enrichment of one at the expense of another."); *Union Nat'l Life Ins. Co. v. Crosby*, 870 So. 2d 1175, 1179 (Miss. 2004) (describing equitable causes of action).  Indeed, under the Mississippi Consumer Protection Act, the Attorney General was *required* to file his claims in the chancery court, which demonstrates that those claims are purely equitable in nature as well.  *See* Miss. Code Ann. § 75-24-9;[3] *see also* Doc. 298 at 15-17 (State brief acknowledging that his claims sound primarily in equity, which is the province of the chancery court).  Similarly, claims for violations of orders of the MPSC are generally appealed from the MPSC to the chancery court.  *See, e.g.*, *Miss. Pub. Serv. Comm'n v. Miss. Power Co.*, 337 So. 2d 936, 938 (Miss. 1976) (procedural history includes utility company's appeal to Chancery Court); *Miss. Pub. Serv. Comm'n v. Miss. Valley Gas Co.*, 327 So. 2d 296, 297 (Miss. 1976) (same).  Thus, by filing his claim initially in the chancery court, Plaintiff has conceded what the case law confirms:  This case is equitable in nature, and no jury trial is required.

### B.       The Claims Involve A Public, Not Private, Right

Plaintiff's jury demand should also be stricken because his claims involve a public, not private, right.  As the Supreme Court has explained, "[t]he Seventh Amendment protects a litigant's right to a jury trial only if a cause of action is legal in nature and it involves a matter of 'private right.'"  *Granfinanciera*, 492 U.S. at 44 n.4.  Thus, "the Seventh Amendment guarantee

---

[3]  While the Mississippi Consumer Protection Act allows a plaintiff to file in either chancery or county court, the jurisdictional limit of the county courts is $200,000. *See* Miss. Stat. Ann. § 9-9-21.  Thus, given the amount in controversy, chancery court was the only available forum for Plaintiff's consumer protection claims.

does not entitle a party to a jury trial on a claim that asserts a public right." *Davis v. West*, No. 07-cv-33986, 2012 WL 2871662, at *4 (S.D. Tex. July 10, 2012), *aff'd*, 538 Fed. App'x 440 (5th Cir. 2013). Under *Thomas v. Union Carbide Agricultural Products Co.*, a public right is one that is closely integrated into a public regulatory scheme. 473 U.S. 568, 593 (1985). In such cases, disputes may be resolved by a non-Article III tribunal, such as an administrative agency, or by a bench trial, without violating the Seventh Amendment. *Id.*

While courts have described the precise contours of the "public right" doctrine as "somewhat nebulous," the rule applies "at a minimum, [to] suits . . . aris[ing] between the Government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments." *Austin v. Shalala*, 994 F.2d 1170, 1177 (5th Cir. 1993) (internal quotation marks omitted). Beyond that, it applies to cases "where Congress has created a 'seemingly private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution with limited involvement by the Article III judiciary." *Id.* (internal quotation marks omitted).

The case at hand is a classic "public rights" case. This is not a private lawsuit between two private individuals, but rather a lawsuit brought by a sovereign government against heavily-regulated entities regarding the propriety of decisions they made under federal and state regulatory regimes. In fact, the Attorney General characterizes this action as follows in his Amended Complaint:

> This action is brought by the Attorney General on behalf of the State of Mississippi in a statutory, equitable and/or common law capacity: (a) in his sovereign capacity, as representative of, and/or as *parens patriae* on behalf of, or for the benefit of, natural persons under state law; (b) as common law *parens patriae* in his sovereign capacity on behalf of the State's general economy; and (c) in his proprietary and/or sovereign capacity, which may include state departments, bureaus, agencies, political subdivisions, and other instrumentalities as purchasers of electricity from EMI.

(Doc. 135 at ¶ 9.) As such, finding a constitutional right to a jury trial in these circumstances would severely impair the legislative and regulatory scheme because such a holding would mean that every dispute over the rates charged would be required to be submitted to a jury, rather than decided by the agency—the precise opposite of what the statutory regime contemplates. (*See* Doc. 263 at 16-17, 21-22.) Because this case involves a paradigmatic public right, no jury trial attaches regardless of whether the causes of action sound in law or equity. *See Chauffeurs*, 494 U.S. at 575 (historical nature of claim and relief sought is "irrelevant" to the public right analysis). The jury demand should thus be stricken.

### C. Due Process Requires These Complex Claims To Be Decided By A Judge, Not Jury

Finally, this Court should strike Plaintiff's jury demand because the highly technical claims and defenses at issue are extremely complex, and so should be decided by the Court rather than a jury under both Seventh Amendment and due process principles. As discussed in Defendants' motion for summary judgment on preemption, Congress and the Mississippi legislature have lawfully entrusted the issues raised by the First Amended Complaint to the regulatory oversight of FERC and the MPSC. (Doc. 263.) Even if, however, the preemption analysis in that motion is set aside, because this lawsuit raises precisely the complex, technical questions that have been deemed the purview of expert adjudication, presenting such issues to a jury may violate a defendant's due process rights and thereby require that the jury demand be stricken.

As the Supreme Court explained in *Ross v. Bernhard*, one factor that the Court must consider in deciding whether an issue is "legal" in nature and thus entitled to a jury is "the practical abilities and limitations of juries." 396 U.S. 531, 538 n.10 (1970); *see also id.* at 545 n.5 (Stewart, J., dissenting) ("Particularly where the issues in the case are complex . . . much can be said for allowing the court discretion to try the case itself."); *see also In re Japan Elec. Prods. Antitrust*

*Litig.*, 631 F.2d 1069, 1084 (3d Cir. 1980).  The reasons for this "complexity exception" are three-fold.  *See generally* 9 C. Wright and A. Miller, Federal Practice and Procedure 2302, at 7-8 (2018).  First, the exception is consistent with the Seventh Amendment because it was recognized at common law at the time the Seventh Amendment was adopted.  *See, e.g.*, Morris S. Arnold, *A Historical Inquiry Into the Right to Trial by Jury in Complex Civil Litigation*, 128 U. Pa. L. Rev. 829 (1980).  Second, complex and highly technical cases are best entrusted to the experienced fact-finding capacity of a trial judge given the practical limitations on jurors' knowledge, experience and ability.  *See* Patrick Lynch, *The Case for Striking Jury Demands in Complex Antitrust Litigation*, 1 Rev. Lit. 3 (1980).  Third, submitting issues to a jury that exceed its capacity for rational and sound decision making constitutes a denial of due process rights.  *See* James S. Campbell, *The Current Understanding of the Seventh Amendment Jury Trials In Modern Complex Litigation*, 66 Wash. U.L.Q. 63 (1988).

While the Fifth Circuit has thus far declined to decide the issue, *see Cotton v. Witco Chem. Corp.*, 651 F.2d 274, 276 (5th Cir. 1981), the Third Circuit has expressly recognized that "due process precludes trial by jury when a jury is unable to perform this task with a reasonable understanding of the evidence and the legal rules," *In re Japan Elec. Prods. Antitrust Litig.*, 631 F.2d 1069, 1084 (3d Cir. 1980).  The Court explained:

> [T]he principles that define the procedural requirements of due process would seem to impose some limitations on the range of cases that may be submitted to a jury.  The primary value promoted by due process in factfinding procedures is "to minimize the risk of erroneous decisions."  A jury that cannot understand the evidence and the legal rules to be applied provides no reliable safeguard against erroneous decisions.

*Id.* (citations omitted).  This reasoning applies with resounding force here.  This case requires the factfinder to understand the intricate interworking of a complex interstate agreement (the Entergy System Agreement) in an extremely technical setting of energy demands and reliability needs,

overlaid by an equally complex regulatory framework at the federal and state levels. Over 1000 pages of expert reports have been submitted. And Defendants have submitted over 1500 pages of documents and exhibits in their motions for summary judgment alone—all of which will have to be submitted, evaluated and understood to decide the complex issues in this case. (*See* Doc. 262, 266.) Indeed, even Plaintiff admits that "the accounts between and among EMI and the other Defendants" forming the basis of his claims "are complex, intricate" and "complicated [in] character." (Doc. 299 at 16-17.)

Further, due process concerns apply with special strength here given the posture of the case. While the entire lawsuit requires an in-depth understanding of complicated regulatory arrangements, it is Defendants' defenses, with their complicated regulatory, technical and statistical underpinnings, that will be particularly difficult for a jury to understand. Thus, the complicated nature of the proceedings is almost certain to prejudice Defendants. This is especially so both because any juror drawn from EMI's service area may have general antipathy toward EMI for having to pay any amount at all for electricity service, and because Plaintiff has taken steps through the local media that seriously risk inflaming the jury pool. *See, e.g.*, Jeff Amy, *Entergy 'did lie to Legislature,' AG Jim Hood says of utility's effort to kill lawsuit*, Clarion Ledger (June 25, 2018), *available at* https://www.clarionledger.com/story/news/politics/2018/06/25/entergy-says-new-law-kills-lawsuit-bought-attorney-general-jim-hood/728176002/; *AG Statement on 2018 Legislative Session* (March 29, 2018) ("In another example of huge corporations writing our laws, the Senate leadership allowed utility giant Entergy to slip an amendment into a bill that will make it more difficult for my office to take them to court for cheating the utility rate payers of Mississippi"), *available at* http://www.ago.state.ms.us/releases/ag-statement-on-2018-legislative-session/. Finally, the fact that a verdict in favor of Plaintiff would endorse a purchasing/operational

approach by EMI that would likely to come at the expense of citizens who buy and use energy in other states in the Entergy System also weighs heavily in favor of having a judge, rather than a jury, decide the case since it involves a matter of state comity. (*See* Doc. 263 at 30-35.)

*Entergy Arkansas, Inc. v. Nebraska* is instructive. 358 F.3d 528 (8th Cir. 2003). There, the Court was asked to decide whether the State of Nebraska had the right to a jury trial in a suit brought against it by a multi-state energy commission. The Court found it did not, reasoning that "[a] search for a precise common law analogy to our case would seek a multistate dispute in which a jury composed of citizens and taxpayers of one of the states was asked to decide issues in which the juror had a direct interest. There is no indication that the Framers had such a sense of the common law." *Id.* at 544. To the contrary, the Court cited Alexander Hamilton's statement that "no man ought to be a judge in his own cause in respect to which he has the least interest or bias." *Id.* at 544 n.10. Thus, whether framed as a Seventh Amendment issue (because the Framers did not intend the Seventh Amendment to allow a jury from one state to decide matters with repercussions for another) or a Due Process issue (given the risks of bias and inconsistent judgments), the conclusion is the same: A case should not go to a jury where, as here, the issues are not only complex, but would require a jury to ignore the fact that they will personally benefit from a finding of liability, to the detriment of citizens of another state.

## IV.    At A Minimum, The Majority Of Claims Are Not Subject To A Jury Trial

At a minimum, this Court should strike Plaintiff's jury demand as to (1) his claims for equitable relief on all counts, (2) his second, third, fourth and eighth causes of action that are all unquestionably equitable in nature, and (3) the amount of any civil penalties to be assessed, and reserve those issues for the Court to decide. Typically, when a single lawsuit includes both legal and equitable claims, a court will hold a "bifurcated trial which would permit the trial of the legal issue[s to the jury] . . . and then a subsequent equitable proceeding" before the judge. *United States*

*v. McMahan*, 556 F.2d 362, 365 (5th Cir. 1977); *Classical Silk, Inc. v. Dolan Group, Inc.*, No. 14-cv-09224, 2016 WL 7638112, at \*5 (C.D. Cal. Mar. 21, 2016) ("[C]ourts routinely bifurcate the legal and equitable issues at trial where the issues are divisible and evidence submitted in support of the equitable issues would be unfairly prejudicial . . . ."). Thus, any request for equitable relief (i.e., disgorgement, restitution, declaratory and injunctive relief) should be decided by the Court regardless of the claim to which it applies. *See, e.g.*, *Texas Taco Cabana L.P. v. Taco Cabana of N.M., Inc.*, No. 02-cv-1209, 2005 WL 356829, at \*9-10 (W.D. Tex. Feb. 2, 2005) (holding "trial should be bifurcated between equitable and legal claims" and ordering claims for "declaratory judgment and injunctive relief" to be "tried to the bench" and lost profit claims to jury); *see also In re Clements*, 881 F.2d 145, 154 n.21 (5th Cir. 1989) (approving "bifurcation . . . of legal and equitable claims, though they would often relate to the very same operative facts").

In addition, because there can be no serious dispute that Plaintiff's claims for violations of the MPSC statutes and regulations (count two), restitution (third count), unjust enrichment (count four) and accounting (count eight) all sound in equity (*see* Part II.A., *supra*), those claims should similarly be decided by the Court regardless of whether the legal issues related to Plaintiff's antitrust, consumer protection, fraud and good faith and fair dealing claims are tried to the jury as well. Finally, because there is "no Seventh Amendment right to a jury trial at the remedies stage" for civil penalties, the question of the amount of any civil penalties should also be reserved for the Court to decide. *SEC v. Life Partners Holdings, Inc.*, 854 F.3d 765, 782 (5th Cir. 2017). Such a ruling will reserve for the Court the appropriate issues that are within its equitable discretion and may potentially streamline the jury trial presentation of the facts and evidence specific to the legal issues (if any) that the jury may decide.

## **CONCLUSION**

The Court should strike Plaintiff's jury demand in whole or, alternatively, in part.

RESPECTFULLY SUBMITTED, this 16th day of July, 2018.

ENTERGY MISSISSIPPI, INC.,
ENTERGY CORPORATION, ENTERGY
SERVICES, INC. AND ENTERGY
POWER, INC., Defendants

By /s/ Roy D. Campbell, III
    Roy D. Campbell, III (MSB 5562)
    J. William Manuel (MSB 9891)
    Alicia N. Netterville (MSB 105055)

    BRADLEY ARANT BOULT
    CUMMINGS LLP
    One Jackson Place
    188 East Capitol Street, Suite 400
    P.O. Box 1789
    Jackson, MS 39215-1789
    Telephone: (601) 948-8000
    Facsimile: (601) 948-3000
    rcampbell@bradley.com
    wmanuel@bradley.com
    anetterville@bradley.com

    James L. Robertson (MSB 5612)
    Charles E. Ross (MSB 5683)
    Rebecca Hawkins (MSB 8786)
    WISE CARTER CHILD & CARAWAY, P.A.
    Post Office Box 651
    Jackson, MS 39205-0651
    (601) 968-5534 – Telephone
    (601) 944-7738 – Facsimile
    jlr@wisecarter.com
    cer@wisecarter.com
    rwh@wisecarter.com

OF COUNSEL:

Sanford I. Weisburst, *Pro Hac Vice*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
sandyweisburst@quinnemanuel.com

Tianna H. Raby, MSB #100256
Christopher R. Shaw, MSB #100393
Entergy Mississippi, Inc.
308 E. Pearl Street, Suite 700 (39201)
Mail Unit M-ELEC-4A
P.O. Box 1640
Jackson, MS  39215-1640
(601) 969-2656 – Telephone
(601) 969-2696 – Facsimile
traby@entergy.com
cshaw4@entergy.com

John A. Braymer, *Pro Hac Vice*
Associate General Counsel
Entergy Services, Inc.
639 Loyola Avenue, Suite 2600
New Orleans, LA  70133
jbrayme@entergy.com

## CERTIFICATE OF SERVICE

I do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

This 16th day of July, 2018.

/s/ Roy D. Campbell, III
OF COUNSEL