# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

| | | |
|---|---|---|
| THE STATE OF MISSISSIPPI, EX REL. JIM HOOD, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI, | ) ) ) ) | |
| Plaintiff-Counterclaim Defendant, | ) ) | |
| v. | ) ) | **No. 3:08-CV-780-CWR-LRA** |
| ENTERGY MISSISSIPPI, INC., ENTERGY CORPORATION, ENTERGY SERVICES, INC., AND ENTERGY POWER, INC., | ) ) ) ) | |
| Defendants-Counterclaim Plaintiffs. | ) | |

## DEFENDANTS' PRE-TRIAL MEMORANDUM

Roy D. Campbell, III (MSB 5562)
J. William Manuel (MSB 9891)
Alicia N. Netterville (MSB 105055)
BRADLEY ARANT BOULT
CUMMINGS LLP
One Jackson Place
188 East Capitol Street, Suite 400
P.O. Box 1789
Jackson, MS 39215-1789
Telephone: (601) 948-8000
Facsimile: (601) 948-3000
rcampbell@bradley.com
wmanuel@bradley.com
anetterville@bradley.com

Tianna H. Raby (MSB 100256)
Christopher R. Shaw (MSB 100393)
ENTERGY MISSISSIPPI, LLC
308 E. Pearl Street, Suite 700 (39201)
Mail Unit M-ELEC-4A
P.O. Box 1640
Jackson, MS 39215-1640
Telephone: (601)-969-2656
Facsimile: (601) 969-2696
traby@entergy.com
cshaw4@entergy.com

Kathleen M. Sullivan, *Pro Hac Vice*
Sanford I. Weisburst, *Pro Hac Vice*
QUINN EMANUEL URQUHART &
   SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
kathleensullivan@quinnemanuel.com
sandyweisburst@quinnemanuel.com

Mark Strain, *Pro Hac Vice*
Jay Breedveld, *Pro Hac Vice*
DUGGINS WREN MANN & ROMERO
600 Congress Avenue, Suite 1900
Austin, TX 78702
Telephone: (512) 744-9300
Facsimile: (512) 744-9399
mstrain@dwmrlaw.com
jbreedveld@dwmrlaw.com

*Counsel for Defendants (cont'd on inside cover)*

John A. Braymer, *Pro Hac Vice*
Associate General Counsel
ENTERGY SERVICES, LLC
639 Loyola Avenue, Suite 2600
New Orleans, LA 70133
jbrayme@entergy.com

Charles E. Ross (MSB 5683)
James L. Robertson (MSB 5612)
Rebecca Hawkins (MSB 8786)
WISE CARTER CHILD & CARAWAY, P.A.
P.O. Box 651
Jackson, MS 39205-0651
Telephone: (601) 968-5534
Facsimile:  (601) 944-7738
cer@wisecarter.com
jlr@wisecarter.com
rwh@wisecarter.com

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ................................................................................................................2

ARGUMENT .....................................................................................................................4

I.     The State's Case Is Federally Preempted By The Federal Power Act................................4

     A.     FERC Has Exclusive Jurisdiction To Review Challenges To Entergy Mississippi's And The Entergy System's Exercise Of Discretion Granted To Them By The Entergy System Agreement.........................................................4

     B.     The *Pike County* Exception To Federal Preemption Does Not Apply ...................7

II.     Alternatively, The Case Is Preempted By State Law And Is Within The Exclusive Jurisdiction Of The Mississippi Public Service Commission............................................10

III.     At A Minimum, The State May Not Pursue Damages On Behalf Of Entergy Mississippi Customers Other Than The State...................................................................16

CONCLUSION..................................................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AEP Gen. Co.*,
36 F.E.R.C. P61,226 (1986) ............................................................................. 3, 8

*AEP Tex. N. Co. v. Tex. Indus. Energy Consumers*,
473 F.3d 581 (5th Cir. 2006) ....................................................................... 3, 6, 8, 9

*Appalachian Power Co. v. Pub. Serv. Comm'n of W. Va.*,
812 F.2d 898 (4th Cir. 1987) ........................................................................... 3, 8

*Breiding v. Eversource Energy*,
No. 1:17-cv-12274, 2018 WL 4344996 (D. Mass. Sept. 11, 2018) ................................. 6, 7

*Cellular S., Inc. v. BellSouth Telecommunications, LLC*,
214 So.3d 208 (Miss. 2017) ............................................................................. 14

*Centennial Ins. Co. v. Ryder Truck Rental, Inc.*,
149 F.3d 378 (5th Cir. 1998) ............................................................................. 16

*Entergy Corp. v. Jenkins*,
469 S.W.3d 330 (Tex. App. 2015) ....................................................................... 6, 7

*Entergy La., Inc. v. La. Pub. Serv. Comm'n*,
539 U.S. 39 (2003) ............................................................................... passim

*Estate of Stamper v Edwards*,
607 So.2d 1141 (Miss. 1992) ............................................................................. 12

*Hughes Aircraft Co. v. United States ex rel. Schmuer*,
520 U.S. 939 (1997) ..................................................................................... 15

*Kennedy v. Jefferson Cnty. Hosp.*,
No. 5:13-cv-226, 2016 WL 4275790 (S.D. Miss. Aug. 12, 2016) ..................................... 8

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) ..................................................................................... 15

*Loumar, Inc. v. Smith*,
698 F.2d 759 (5th Cir. 1983) ............................................................................. 8

*Millar v. Houghton*,
115 F.3d 348 (5th Cir. 1987) ............................................................................. 8

*Miss. Dep't of Corr. v. Roderick & Solange MacArthur Justice Ctr.*,
220 So.3d 929 (Miss. 2017) ............................................................................. 14

*Miss. ex rel. Hood v AU Optronics Corp.*,
    701 F.3d 796 (5th Cir. 2012) ................................................................ 3, 16, 17

*Miss. ex rel. Hood v. Bristol-Myers Squibb*,
    No. 1:12-CV-00179, 2013 WL 3280267 (S.D. Miss. June 27, 2013) ............................ 17

*Miss. Rural Water Ass'n v. Miss. Pub. Serv. Comm'n*,
    222 So.3d 288 (Miss. 2017) ................................................................ 11

*Saqui v. Pride Cent. Am., LLC*,
    595 F.3d 206 (5th Cir. 2010) ................................................................ 8

*Stone v. Indep. Linen Serv. Co.*,
    55 So.2d 165 (1951) ................................................................ 14

*The Door Shop, Inc. v. Alcorn County Elec. Power Ass'n*,
    261 So.3d 1099 (Miss. 2018) ................................................................ 15

*USPCI of Miss., Inc. v. State ex rel. McGowan*,
    688 So.2d 783 (Miss. 1997) ................................................................ 14

## STATUTES

16 U.S.C. § 824d .................................................................................. 2, 4

28 U.S.C. § 1332(d)(11)(B)(i) ................................................................ 17

Miss. Code Ann. § 77-1-43 .................................................................... 3, 11, 12

Miss. Code Ann. § 77-1-43(2) ................................................................ 11

Miss. Code Ann. § 77-3-5 ...................................................................... 11, 12, 15

S.B. § 2295 ........................................................................................ passim

## OTHER AUTHORITIES

*Jim Hood:  Entergy 'tricked' PSC in approving rates with misleading info*,
    CLARION LEDGER (Mar. 10, 2018) ................................................................ 17

## FEDERAL CASES

Fed. R. Civ. P. 12(c) ............................................................................ 2, 7, 10

Fed. R. Civ. P. 54(b) ............................................................................ 8

Defendants appreciate the Court's invitation to submit a pre-trial memorandum. Defendants will present their legal and factual positions for trial in their Proposed Findings of Fact and Conclusions of Law to be filed on March 27, 2019, and will not burden the Court by repeating all of those positions here.  Instead, Defendants respectfully file this pre-trial memorandum to highlight for the Court three legal issues that remain pending on Defendants' summary judgment motions and that Defendants believe would be prudent to address before trial.

A decision for Defendants on either of the first two issues (federal and state preemption) would dispose of this case in its entirety and obviate the need for the bench trial altogether. Defendants respectfully submit that both issues turn solely on clear legal principles and undisputed facts that enable the Court to resolve them before trial.  The federal preemption issue in particular turns on the U.S. Supreme Court's binding decision in *Entergy Louisiana, Inc. v. Louisiana Public Service Commission*, 539 U.S. 39, 49-50 (2003) ("*ELI*"), which Defendants respectfully submit warrants careful consideration before this Court stands in the shoes of the Federal Energy Regulatory Commission ("FERC") and decides whether Entergy Mississippi, Inc. ("EMI") and/or the Entergy System violated a FERC-approved federal tariff, the Entergy System Agreement ("ESA").   A decision for Defendants on the third issue (the Attorney General's lack of authority to seek damages on behalf of private individuals and businesses) would not eliminate the need for trial, but would greatly narrow the scope of damages and thus advance the prospect for settlement. And even if the Court is inclined to deny Defendants' motions for summary judgment, a decision before trial would further judicial economy.  Such a decision would, if based on the existence of a dispute of fact, allow the parties to address that dispute during trial and, if based on a ruling of law, allow the parties to avoid an extensive presentation of evidence on the issue during trial.

Defendants hope that selecting these three issues for special pre-trial focus will be of assistance to the Court. Defendants remain available to address these issues in oral argument before the Court at any time at the Court's convenience.[1]

## INTRODUCTION

This case is **federally preempted** under the Supremacy Clause of the U.S. Constitution, Art. VI, cl. 2. Under the filed-rate doctrine, FERC has exclusive jurisdiction over challenges to rates (including decisions that affect rates) charged under a federal tariff that is approved by FERC under the Federal Power Act, 16 U.S.C. § 824d. This is true even if the challenge is styled (as here) an action for consumer protection, antitrust, fraud, contract or the like. And this is true even where (as here) a FERC tariff delegates discretion over the challenged decisions to a regulated entity. The U.S. Supreme Court so held in *ELI*, 539 U.S. at 49-50, and *ELI* disposes of the federal preemption issue here. *See* Point I.A, *infra*.

Judge Wingate correctly appreciated these federal preemption principles in his Rule 12(c) order, but declined to find federal preemption nonetheless based solely on the so-called *Pike County* exception to the filed-rate doctrine, under which a state public service commission may review the prudence of a purchasing utility's choice between two wholesale sources of supply at FERC-approved prices. But the *Pike County* exception applies only to purchasing decisions by standalone utilities; it does **not** apply to purchasing decisions made by a utility that belongs **multi-utility, multi-state system** like the Entergy System. Both the Fourth Circuit and FERC itself have so held. *See Appalachian Power Co. v. Pub. Serv. Comm'n of W. Va.*, 812 F.2d 898, 903 (4th Cir.

---

[1]   To be clear, by highlighting three issues in this pre-trial memorandum, Defendants are not waiving additional issues that were presented in their previously filed summary judgment briefs. Defendants reserve their right to advance those issues and others in their forthcoming Proposed Findings of Fact and Conclusions of Law and during and after trial.

1987), *cited approvingly by AEP Tex. N. Co. v. Tex. Indus. Energy Consumers*, 473 F.3d 581, 586 n.20 (5th Cir. 2006); *see also AEP Gen. Co.*, 36 F.E.R.C. P61,226 (1986).  FERC has exclusive jurisdiction over decisions in an interstate system like the Entergy System for good reason; only FERC has the interstate perspective that allows it to balance harms and benefits to utilities and consumers across state lines.  *See* Point I.B, *infra*.

If this Court does not accept Defendants' position on federal preemption, Defendants respectfully submit that this Court should hold that *state-law* preemption applies, again as a matter of law.  Whatever ambiguity may have existed before July 1, 2018, large majorities of the Mississippi House and Senate (followed by the Governor) have now made clear that the Attorney General may institute proceedings in court only "at the request of the commission after notice and hearing."  S.B. 2295 § 19 (codified at Miss. Code Ann. § 77-1-43) (Doc. 262-1 at 21-22).  No such request has been made; the Attorney General therefore must bring his complaint in the first instance to the Mississippi Public Service Commission ("MPSC").  *See* Point II, *infra*.

If this Court is not inclined to accept either of Defendants' preemption arguments before trial, Defendants respectfully submit that this Court at a minimum should make a separate legal ruling before trial that would narrow the case and possibly facilitate a settlement:  The Court should rule, under *Miss. ex rel. Hood v AU Optronics Corp.*, 701 F.3d 796, 800-01 (5th Cir. 2012), *rev'd on other grounds*, 571 U.S. 161 (2014), that the State has *standing* to seek recovery only for alleged harms the State itself suffered as a customer of EMI, not for alleged harms that private individuals and businesses suffered as customers of EMI.  *See* Point III, *infra*.

<u>**ARGUMENT**</u>

I.     **The State's Case Is Federally Preempted By The Federal Power Act**

A.     **FERC Has Exclusive Jurisdiction To Review Challenges To Entergy Mississippi's And The Entergy System's Exercise Of Discretion Granted To Them By The Entergy System Agreement**

The State here challenges the exercise of discretion by Entergy System management and EMI under a federal tariff, the ESA, that FERC approved pursuant to its authority under the Federal Power Act, 16 U.S.C. § 824d.   The ESA governed dealings among the Entergy Operating Companies in the multi-state Entergy System during the time period at issue.   Sections 4.02 and 3.01 of the ESA expressly granted EMI and the Entergy System the discretion to make purchasing and generation decisions like those the State challenges here.   These provisions of the ESA render the challenge here federally preempted.

Specifically, ESA Section 4.02 provides that "[t]he [Entergy Operating] Companies, with the consent of or under conditions specified by the Operating Committee, may agree to a contract by one or more of them, *for the purchase of capacity and/or energy from outside sources* for the account of a Company or Companies."   ESA § 4.02 (Doc. 262-1 at 11) (emphasis added); *see also* ESA § 4.03 (Doc. 262-1 at 11) ("Services, through the System Operations Center, may purchase energy under economic dispatch or emergency conditions ...."").   And Section 3.01 provides that "[t]he purpose of this Agreement is to provide the contractual basis for the continued planning, construction, and *operation of the electric generation, transmission and other facilities* of the Companies in such a manner as to achieve economies consistent with the highest practicable reliability of service, subject to financial considerations, reasonable utilization of natural resources and minimization of the effect on the environment."   ESA § 3.01 (Doc. 262-1 at 7) (emphasis added); *see also* ESA § 30.02 (Doc. 262-1 at 14) (similar).

4

These provisions of the ESA place the State's challenge here on all fours with one the U.S. Supreme Court rejected as federally preempted in *ELI*, 539 U.S. 39, a decision involving the very same ESA at issue in this case. *ELI* held that the federal filed-rate doctrine preempted an order of the Louisiana Public Service Commission ("LPSC") purporting to find the Entergy Operating Committee's exercise of discretion over classification of generation facilities imprudent. *Id.* at 49-50. Specifically, the Court held that the ESA "leaves the classification of ERS [Extended Reserve Shutdown] units to the discretion of the [Entergy System] operating committee," *id.* at 49, preempting the LPSC from second-guessing the Operating Committee's classification decisions. Moreover, the Court noted that the decision to classify certain generators as available would have an interstate effect:  it would "increas[e] ELI's [Entergy Louisiana's] cost equalization payments" to the other Entergy Operating Companies located outside Louisiana. *Id.* at 44.

*ELI* made clear that federal preemption bars the States from second-guessing a utility system's exercise of its delegated discretion under a FERC-approved tariff just as much as it bars States from second-guessing the rate-related decisions of FERC itself. As the Court stated, "It matters not whether FERC has spoken to the precise classification of ERS units, but only whether the FERC tariff dictates how and by whom that classification should be made." *Id.* at 50. Here, as in *ELI*, the ESA clearly provides for "how and by whom" purchasing and generation decisions should be made, as well as how the resulting costs are to be allocated among the Entergy Operating Companies. Accordingly, just as in *ELI*, where the LPSC's "second-guessing of the classification of ERS units is pre-empted" when performed in the LPSC's own proceeding rather than in a FERC proceeding, *id.*, the State of Mississippi is precluded in the instant case, as a matter of law, from arguing in this Court rather than before FERC that the Defendants should have purchased "less

costly third-party power [that] was available for EMI and/or Entergy to purchase during the damages period." Doc. 262-18 at ¶ 5; *see also, e.g.*, Doc. 135 at ¶¶ 38, 44, 53.

Defendants respectfully submit that the Court may find instructive *Entergy Corp. v. Jenkins*, 469 S.W.3d 330, 345 (Tex. App. 2015), which applied *ELI* to find federal preemption in circumstances identical to those here. There, the Texas Court of Appeals considered a theory identical to Plaintiff's—that the Entergy System and/or the individual Entergy Operating Company in Texas should have purchased more third-party power instead of running its legacy units. *See id.* at 339; *see also Jenkins*, Findings Of Fact And Conclusions Of Law On Pltfs.' Mtn. To Certify ¶ 122 (Tex. Dist. Ct. Apr. 30, 2012) (Doc. 262-14 at 48) ("Dr. DeRamus specifically testified that individual operating companies [such as Entergy Texas, Inc.] have an option to purchase lower cost power from third-parties subject to the agreement of the operating committee."). The court found that the suit was preempted by the filed-rate doctrine, explaining: "Although Jenkins does not allege breach of the FERC-approved ESA as a cause of action, he challenges Entergy's purchasing decisions—whether to use allegedly available third-party electricity or system-generated electricity—which Entergy undertook pursuant to the ESA. Determining whether Entergy permissibly exercised its discretion in making its purchasing decisions thus necessarily requires consideration of the ESA, a FERC-approved tariff." *Id.* at 343. *Jenkins* proceeded to hold, citing the Fifth Circuit's decision in *AEP Tex.*, 473 F.3d at 585, that "FERC, not the state, is the appropriate arbiter of any disputes involving a tariff's interpretation." 469 S.W.3d at 343.

*Breiding v. Eversource Energy*, 344 F. Supp.3d 433 (D. Mass. 2018), *appeal pending*, No. 18-1995 (1st Cir.), is similarly instructive. There, electricity customers sued companies with electric utility and natural gas distribution subsidiaries. *Id.* at 438-43. They brought federal and state claims "assert[ing] that defendants restricted New England's supply of natural gas, a key

6

component in the generation of over half the electricity in New England and, as a result, caused New Englanders to pay nearly $3.6 billion dollars more for retail electricity." *Id.* at 437. Defendants allegedly restricted gas supply by purchasing transmission rights (thus reserving pipeline space), and then neither using the rights nor releasing them. *Id.* at 443. The court dismissed the suit as preempted under the federal filed-rate doctrine, reasoning that, "to award monetary relief to retail electricity consumers, the Court would be required to determine the difference between wholesale electricity rates during the class period and hypothetical rates that would have been charged but for Defendants' purported anticompetitive conduct. This is exactly the analysis the filed rate doctrine prohibits." *Id.* at 447; *see also id.* at 446 ("[T]he Court cannot determine Defendants' liability … without first deciding the reasonableness of wholesale electricity rates approved by FERC ….").

Importantly, holding the State's case federally preempted here, as did the courts in *ELI*, *Jenkins*, and *Breiding*, would not leave complainants in general or the State here without a remedy. FERC has adjudicated complaints concerning conduct that is the same as or similar to the conduct the State challenges here. *See, e.g.*, *Entergy Servs., Inc.*, 128 F.E.R.C. P63,015, 66,116 (2009) (claim that Entergy System adopted rules for running its owned units that "decreas[ed] the potential savings from off-system purchases"), *aff'd in part, rev'd in part*, 137 F.E.R.C. P61,029 (2011); *Entergy Servs., Inc.*, 124 F.E.R.C. P63,026, 63,339 (2008) (claim that Entergy System "fail[e]d to purchase lower cost energy allegedly available on the wholesale market"). The State has demonstrated no reason why it cannot take its complaint to FERC rather than proceeding in this Court.

### B.    The *Pike County* Exception To Federal Preemption Does Not Apply

Judge Wingate did not gainsay any of the above settled federal preemption principles in his Rule 12(c) decision, but concluded that the so-called *Pike County* exception to federal

7

preemption applied to permit the State's challenge. *See* Doc. 86 at 24-30. While Defendants appreciate the delicacy of departing from a predecessor judge's ruling, this Court is plainly empowered, following the Fifth Circuit's order that the case be reassigned, to correct any legal error that Judge Wingate may have made, rather than leaving an error in place to be reversed by the Fifth Circuit on appeal. *See, e.g.*, *Loumar, Inc. v. Smith*, 698 F.2d 759, 763 (5th Cir. 1983); *Kennedy v. Jefferson Cnty. Hosp.*, No. 5:13-cv-226, 2016 WL 4275790, at *1 (S.D. Miss. Aug. 12, 2016) (Under Rule 54(b), "the Court 'may reconsider and reverse its rulings any time before entering final judgment' … [and] renewed motions regarding interlocutory orders may be granted 'even in the absence of new evidence or an intervening change in or clarification of substantive law'" (quoting *Millar v. Houghton*, 115 F.3d 348, 350 (5th Cir. 1997), and *Saqui v. Pride Cent. Am., LLC*, 595 F.3d 206, 210-11 (5th Cir. 2010)) (internal citations and brackets omitted)).

Here the application of the *Pike County* exception to this case was legal error. That exception applies only to a decision a ***single*** purchasing utility makes among FERC-approved rates, ***not*** to a purchasing decision made by a utility that (as here) belongs to an ***integrated multi-state system*** where purchasing decisions have effects across state lines, much less a purchasing decision by that utility that is subject to a requirement that the system operating committee grant its consent. As the Fourth Circuit explicitly found, "unlike the wholesale agreement at issue in *Pike County*, the TEA [a system agreement similar to the ESA] has no distinct 'buyer' and 'seller' of energy," and thus a challenge to its purchasing decision is uniquely within FERC's and not any one state's jurisdiction. *Appalachian Power Co.*, 812 F.2d at 904, *cited approvingly by AEP Tex.*, 473 F.3d at 586 n.20.

FERC itself has similarly rejected the application of the *Pike County* exception to multi-utility, multi-state systems. *See AEP Gen. Co.*, 36 F.E.R.C. P61,226, 61,550 (1986). There, FERC

recognized that a State might have residual, non-preempted authority to question the prudence of a utility's decision to enter a power exchange agreement "in light of the availability of alternative power supplies," but clarified that this was so only "[u]nder narrow, **non-pool** circumstances." *Id*. (emphasis added).  In contrast, FERC stated, "where, as here, the transaction involves affiliated, jurisdictional utilities, which are **members of an integrated, interstate holding company agreement**, … they are clearly matters most appropriate resolved by this Commission [FERC] as part of its overriding authority to evaluate and implement all applicable wholesale rate schedules." *Id*. (emphasis added).  And as noted *supra*, at 6, the plaintiffs in *Jenkins* advanced the predicate for the State's mistaken invocation of the *Pike County* exception here:  that Entergy Texas, Inc. ("ETI"), which like EMI was a member of the multi-state Entergy System, could have sought and obtained the Entergy Operating Committee's consent for ETI to make purchases from independent suppliers for ETI's own account.

An additional legal error in applying the *Pike County* exception is that every decision that has applied the exception has held that the case may proceed before a state public service commission, never before a court.  *See* Doc. 263 at 27; Doc. 310 at 7 n.10.  Thus, even if *Pike County* applied (it does not), this case would be subject to state-law preemption and subject to exclusive jurisdiction of the Mississippi Public Service Commission for the reasons set forth in Point II, *infra*.

 As a final and independently sufficient reason to depart from Judge Wingate's *Pike County* ruling, the undisputed evidence developed during discovery confirms why FERC has exclusive jurisdiction and the *Pike County* exception does not apply.  As FERC itself noted in its *AEP* decision, matters that cause interstate effects are best regulated by FERC, which has an interstate perspective that no one State's laws or elected officials or regulators can provide.  In *AEP* and *ELI*,

the challenged decisions stood to affect the costs paid by out-of-state utilities, and FERC is best positioned to weigh such multi-state effects.  Similarly here, there is now undisputed evidence from the State's own experts—evidence that was not in the record before Judge Wingate at the Rule 12(c) stage—that Plaintiff's theory, if adopted, would cause out-of-state harms.  Specifically, the additional purchases the State's experts say EMI should have made under ESA Section 4.02 would have resulted in cost increases to Entergy Operating Companies in other States.  *E.g.*, Doc. 262-1 at 55-57 (excerpts from Mr. Copeland's workpapers showing that, in 2006, Entergy Louisiana's and Entergy Gulf States' costs would go up by $28 million and $36 million, respectively); Doc. 310-1 at 123:12-14 (Dr. DeRamus' deposition testimony that he "can envision certain scenarios in which there is a change in terms of the actual costs borne [by the various Entergy Operating Companies]").  This undisputed evidence, unavailable to Judge Wingate, supports this Court's entry of judgment as a matter of law that the case before the Court is federally preempted.

## II.   Alternatively, The Case Is Preempted By State Law And Is Within The Exclusive Jurisdiction Of The Mississippi Public Service Commission

If the Court does not hold the case preempted by federal law, it should nonetheless enter judgment for Defendants under state preemption.

As Attorney General Hood described the State's case, "this is just a simple case of where they've overcharged the ratepayers."  Tr. of Sept. 26, 2018 H'rg at 7:20-21; *see also, e.g.*, Doc. 135 at ¶¶ 7-8 (complaining about "inflated power bills" and "inflation of invoices"); Doc. 262-13 at 36:19-24 (State's Rule 30(b)(6) witness's deposition testimony that Defendants' alleged misconduct led to "EMI's prices" being "too high").  But any claims that a utility has overcharged its customers, to the extent they are not federally preempted, must be presented to the MPSC in the first instance.  Whatever ambiguity in the law may have existed when Judge Wingate decided

this issue, it has now been clarified by the Mississippi Legislature.  By overwhelming majorities (90-26 in the House, 48-2 in the Senate, *see* http://billstatus.ls.state.ms.us/2018/pdf/history/SB/SB2295.xml), the Legislature has enacted S.B. 2295, a provision precluding the Attorney General's suit.  That provision must be consulted to clarify the meaning of pre-enactment law, and in any event applies directly to any action (such as this one) that was pending on the date of enactment.

When Judge Wingate decided the state preemption issue in late 2016, two Mississippi provisions were in tension.  On the one hand, Miss. Code Ann. Section 77-3-5 provided that "the [MPSC] shall have exclusive original jurisdiction over the intrastate business and property of public utilities," which encompasses the rates a utility charges and any practices or methods or formulas that go into determining those rates, *see, e.g.*, *Miss. Rural Water Ass'n v. Miss. Pub. Serv. Comm'n*, 222 So.3d 288, 292-94 (Miss. 2017).  On the other hand, Section 77-1-43(2) provided that "[a]ny action for violation of the law, or for violation of any lawful rule, regulation or order of the commission may be instituted by the commission or by the Attorney General in any court of competent jurisdiction."  Judge Wingate found the latter to override the former.  Doc. 86 at 32.

In enacting S.B. 2295 by overwhelming majorities, the Mississippi Legislature has clarified this ambiguity.  Specifically, in reenacting various provisions of Chapter 77 that were to "sunset," the Legislature amended Section 77-1-43(2) to clarify that the Attorney General has no special authority that overrides Section 77-3-5's explicit grant of exclusive original jurisdiction to the MPSC.  The new statute's purpose is to "AMEND … 77-1-43 TO CLARIFY" its meaning. S.B. 2295, Preamble (Doc. 262-4 at 1).  The amended Section 77-1-43 does so by deleting the language "may be instituted … by the Attorney General in any court of competent jurisdiction," and providing instead that only "at the request of the commission by order after notice and hearing"

11

may "the Attorney General" institute … proceedings in court." S.B. 2295, § 19 (Doc. 262-4 at 16-17) (codified at Miss. Code Ann. § 77-1-43).   S.B. 2295 also "AMEND[S] … 77-3-5 TO CLARIFY" its meaning.   S.B. 2295, Preamble (Doc. 262-4 at 1).   Specifically, amended Section 77-3-5 provides that the MPSC's "exclusive original jurisdiction over the intrastate business and property of public utilities" extends to challenges to "rates," including "the accuracy or reliability information submitted to [MPSC] … in support of … [rates], regardless of the legal theory upon which such challenge is made."   S.B. 2295, § 24 (Doc. 262-4 at 20-21) (codified at Miss. Code Ann. § 77-3-5).

Whether or not S.B. 2295 is retroactive in the sense that it directly applies to the instant case, it is at minimum "post-event legislation" that may be considered "to clarify the pre-enactment content of the law." *Estate of Stamper v Edwards*, 607 So.2d 1141, 1149 (Miss. 1992).   In *Stamper*, a Mississippi statute set forth a presumption concerning treatment of a "deposit" made by two co-depositors upon the death of one of them; in 1987, the Mississippi Supreme Court interpreted the word "deposit" in the statute *not* to encompass a certificate of deposit; and in 1988, the Mississippi Legislature amended the statute "to Clarify" that the word "deposit" does encompass a certificate of deposit, thus effectively "overrul[ing]" the 1987 Mississippi Supreme Court decision.   *See id.* at 1148-49 (describing this chronology).   At issue in *Stamper* was whether the amended statute was relevant to a certificate of deposit created before the amendment.   The Mississippi Supreme Court held that it was relevant because "post-event legislation [can] clarify the pre-enactment content of the law." *Id.* at 1149.   So too here, the pre-enactment content of the law was ambiguous, Judge Wingate resolved the ambiguity in one way, and the Mississippi Supreme Court subsequently resolved it in the opposite way.   Just as in *Stamper*, this Court should not "blind [its] vision to what has occurred." *Id.*

12

If the Court does not find it sufficient to rely under *Stamper* on S.B. 2295 as an interpretive tool concerning pre-enactment law, the Court should find under Mississippi law that S.B. 2295 has direct application to a pending action such as this one.  The Mississippi Legislature does not always explicitly or consistently make clear its intent; sometimes it explicitly says legislation is prospective, sometimes it explicitly says legislation is retroactive, and sometimes it is silent.  For example:

| | |
|---|---|
| Explicitly prospective | "This act shall take effect and be in force from and after January 1, 2003, and shall apply to *all causes of action filed on or after that date*."<br><br>2002 Miss. Laws 3rd Ex. Sess. Ch. 4, § 16 (H.B. 19) (emphasis added) |
| Explicitly retroactive | "This act shall take effect and be in force from and after July 1, 1993. *Procedural provisions of this act including subsections (1)(a), (b), (c) and (d) of Section 2 shall apply to all pending actions in which judgment has not been entered on the effective date of the act and all actions filed on or after the effective date of the act.* All other provisions shall apply to all actions filed on or after July 1, 1994."<br><br>1993 Miss. Laws Ch. 302, § 5 (H.B. 1270) (emphasis added) |
| Silent | "This act shall take effect and be in force from and after July 1, 2018."<br><br>2018 Miss. Laws Ch. 402, § 25 (S.B. 2295) |

It is therefore necessary to consult Mississippi Supreme Court case law on what default rule to apply in the case of a statute that, like S.B. 2295, is silent on the cases to which it applies. The relevant default rule here is the "pending-action canon":  new legislation that amends a statute

at issue in an action, applies to any action pending on the date of the enactment of the new legislation.  In *Miss. Dep't of Corr. v. Roderick & Solange MacArthur Justice Ctr.*, 220 So.3d 929, (Miss. 2017) ("*MDOC*"), for example, a requester of information under the Mississippi Public Records Act brought an action against the target (the Mississippi Department of Corrections) to enforce the request.  While the action was pending (indeed while an appeal in the action was pending), the Legislature amended the Act to exempt the sort of information requested.  The amending legislation, like S.B. 2295, was silent on retroactivity or prospectivity, saying only: "This act shall take effect and be in force from and after its passage."  2017 Miss. Laws Ch. 406 (H.B. 638), § 2.  The Mississippi Supreme Court held that the amendment applied to the pending action such that the requested information was exempt from any disclosure requirement, explaining:  "When the Legislature chooses to amend or modify any law related to a pending action, this Court applies the Legislature's most recent pronouncement."  220 So.3d at 933.  *See also, e.g.*, *Cellular S., Inc. v. BellSouth Telecommunications, LLC*, 214 So.3d 208, 213 (Miss. 2017) (applying to pending action an amendment *deleting* a Public Records Act exemption); *USPCI of Miss., Inc. v. State ex rel. McGowan*, 688 So.2d 783, 787 (Miss. 1997) (applying to pending action an amendment removing Governor's Office from the scope of the Administrative Procedures Law to pending case); *Stone v. Indep. Linen Serv. Co.*, 55 So.2d 165, 168-69 (1951) (applying to pending action an amendment exempting use of goods purchased out of state from taxation).

Similarly here, S.B. 2295 is silent on the retroactivity or prospectivity of its amendments, stating only:  "This act shall take effect and be in force from and after July 1, 2018."  S.B. 2295, § 25 (Doc. 262-4 at 22).  This action was pending on that date.  Accordingly, under the pending-action canon, the amendments apply directly to this action.  Indeed, even under the more restrictive

14

view of the pending-action canon adopted by Justice Dickinson in his *MDOC* concurrence, S.B. 2295 applies to this action.   Justice Dickinson, relying on U.S. Supreme Court precedent, relied on a distinction between an amendment that regulates "primary conduct" and one (like a procedural rule) that regulates "secondary conduct," and argued that an amendment that regulates secondary conduct should apply to an action that is pending on the date of enactment.   220 So.3d at 940 & n.18 (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 273 (1994) (Scalia, J., concurring)).   And the U.S. Supreme Court has made clear that an amendment that "affect[s] only *where* a suit may be brought, not *whether* it may be brought at all" concerns secondary conduct and hence applies to a pending action.   *Hughes Aircraft Co. v. United States ex rel. Schmuer*, 520 U.S. 939, 951 (1997) (emphasis in original).   That is the case here.   S.B. 2295 clarifies that the Attorney General must bring a challenge to an electric utility's rates and ratemaking practices before the MPSC rather than in court.   Accordingly, S.B. 2295 applies to this pending action.

*The Door Shop, Inc. v. Alcorn County Electric Power Association*, 261 So.3d 1099, 1102 n.3 (Miss. 2018), is not to the contrary.   *First*, *The Door Shop* did not address the *Stamper* principle that a new amendment, even if not ***directly*** applicable to a pending action, can be used to clarify the meaning of a pre-enactment law.   *Second*, to the extent *The Door Shop* addressed the "retroactivity" of S.B. 2295 and suggested that it "does not operate retroactively," *id.*, the suggestion is pure dictum because S.B. 2295 amended Section 77-3-5's first paragraph, which applies to *utilities* like EMI, and did not amend Section 77-3-5(b), which applies to *electric power associations*.   Because the entity in *The Door Shop* was an electric power association, S.B. 2295, even if retroactive, could not apply.   (Not surprisingly, the briefs in *The Door Shop* did not mention S.B. 2295.)   Relatedly, *The Door Shop*'s dictum did not address the Mississippi Supreme Court's *holdings* in cases like *MDOC*.   As between *MDOC*'s holding and *The Door Shop*'s dictum, the

former binds this Court.  *See Centennial Ins. Co. v. Ryder Truck Rental, Inc.*, 149 F.3d 378, 382, 385 (5th Cir. 1998).

## III.   At A Minimum, The State May Not Pursue Damages On Behalf Of Entergy Mississippi Customers Other Than The State

Even if this Court is not inclined to accept either of Defendants' dispositive federal and state preemption arguments before trial, this Court should make a separate legal ruling that would narrow the scope of the State's case and thus facilitate a settlement before trial.  Specifically, the Court should rule that the State (through the Attorney General) has standing to seek recovery only for harm allegedly suffered by the State as a customer of EMI, not harm allegedly suffered by private individuals and businesses as customers of EMI.

The Fifth Circuit so held in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 800-01 (5th Cir. 2012), *rev'd on other grounds*, 571 U.S. 161 (2014).  That case involved relevantly similar circumstances—alleged inflation of the prices of LCD screens, as opposed to electricity.  The Fifth Circuit held there that the "MCPA [Mississippi Consumer Protection Act] … does not authorize public collection of private damages.  Similarly, the MAA [Mississippi Antitrust Act] allows the State to sue for injunctive relief and civil penalties, but not for restitution for injuries suffered by parties other than the State."  701 F.3d at 800-01 (internal citations omitted).  And as to common law claims, the Fifth Circuit expressed serious doubt that "the State ha[s] *carte blanche* to recover for others' injuries under common law *parens patriae* authority."  *Id.* at 802.

Further, as to all of the State's asserted founts of authority (the MCPA, MAA, and common law) in *AU Optronics*, the Fifth Circuit reasoned:

> Mississippi law clearly prohibits double recovery for the same harm to respective class members.  Thus, the state cannot recover for the injury to the consumers and still preserve the right of the consumers to recover a right that the consumers clearly have under the statutes pursuant to which the suit is brought.  In short, we have

16

been directed to no statutory or common law that permits the State to extinguish the right and remedy the consumer has for his injury.

*Id.* at 801 (internal citations omitted); *see also Miss. ex rel. Hood v. Bristol-Myers Squibb*, No. 1:12-CV-00179, 2013 WL 3280267, at *7 (S.D. Miss. June 27, 2013) (following *AU Optronics*' holding that the MCPA "does not authorize public collection of private damages" in context of attempted claim by the State concerning allegedly misleading marketing that caused private individuals and businesses to purchase the prescription drug Plavix® rather than aspirin).

The Supreme Court's reversal of the Fifth Circuit's decision in *AU Optronics* did not disturb these holdings, as it concerned only interpretation of "persons" in the Class Action Fairness Act, 28 U.S.C. § 1332(d)(11)(B)(i), *see* 571 U.S. at 169, and did not discuss or call into doubt the Fifth Circuit's interpretations of the State's lack of authority *under Mississippi law* to recover harm allegedly suffered by private individuals/businesses as opposed to by the State itself.

Here, as in *AU Optronics* and *Bristol-Myers Squibb*, the State is improperly attempting to sue for harm allegedly suffered by private individuals and businesses. *See, e.g.*, Doc. 135 at ¶ 8 (seeking "damages to which Mississippians are entitled"); *id.* at ¶ 116 ("EMI and the other Defendants hold monies and assets received and usurped *from Mississippi residents* and the State of Mississippi ….") (emphasis added); *Jim Hood:  Entergy 'tricked' PSC in approving rates with misleading info*, CLARION LEDGER (Mar. 10, 2018) ("I represent the interests of the citizens by asking     a     court     to     return     their     money     …."), https://www.clarionledger.com/story/opinion/columnists/2018/03/10/jim-hood-entergy-tricked-psc-approving-rates-misleading-info/411305002/.  Accordingly, this Court should rule as a matter of law under *AU Optronics* that the State lacks standing to do so.

To the extent the State seeks to recover for harm allegedly suffered by the State itself as a consumer of EMI electricity at state offices and otherwise, *see, e.g.*, Doc. 135 at ¶ 17.F ("[T]he

Attorney General may bring suit to protect the State's direct interest as a customer of Entergy."), the State does have standing, subject to Defendants' other arguments (including federal and state preemption).

## **CONCLUSION**

Defendants respectfully urge the Court to rule before trial that the State's case is preempted by federal or state law or, at a minimum, that the State may seek to recover only alleged harm to the State as a customer of EMI, not to private individuals and businesses as customers of EMI. RESPECTFULLY SUBMITTED, this 11th day of March, 2019.

ENTERGY MISSISSIPPI, INC.,
ENTERGY CORPORATION, ENTERGY
SERVICES, INC. AND ENTERGY
POWER, INC., Defendants

By /s/ Roy D. Campbell, III
    Roy D. Campbell, III (MSB 5562)
    J. William Manuel (MSB 9891)
    Alicia N. Netterville (MSB 105055)
    BRADLEY ARANT BOULT
    CUMMINGS LLP
    One Jackson Place
    188 East Capitol Street, Suite 400
    P.O. Box 1789
    Jackson, MS 39215-1789
    Telephone: (601) 948-8000
    Facsimile: (601) 948-3000
    rcampbell@bradley.com
    wmanuel@bradley.com
    anetterville@bradley.com

    Charles E. Ross (MSB 5683)
    James L. Robertson (MSB 5612)
    Rebecca Hawkins (MSB 8786)
    WISE CARTER CHILD & CARAWAY, P.A.
    P.O. Box 651
    Jackson, MS  39205-0651
    Telephone: (601) 968-5534
    Facsimile: (601) 944-7738

jlr@wisecarter.com
cer@wisecarter.com
rwh@wisecarter.com

Tianna H. Raby (MSB 100256)
Christopher R. Shaw (MSB 100393)
ENTERGY MISSISSIPPI, LLC
308 E. Pearl Street, Suite 700 (39201)
Mail Unit M-ELEC-4A
P.O. Box 1640
Jackson, MS  39215-1640
Telephone: (601) 969-2656
Facsimile: (601) 969-2696
traby@entergy.com
cshaw4@entergy.com

OF COUNSEL:

Kathleen M. Sullivan, *Pro Hac Vice*
Sanford I. Weisburst, *Pro Hac Vice*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone:  (212) 849-7000
Facsimile:  (212) 849-7100
sandyweisburst@quinnemanuel.com

Mark Strain, *Pro Hac Vice*
Jay Breedveld, *Pro Hac Vice*
DUGGINS WREN MANN & ROMERO
600 Congress Avenue, Suite 1900
Austin, TX 78702
Telephone: (512) 744-9300
Facsimile: (512) 744-9399
mstrain@dwmrlaw.com
jbreedveld@dwmrlaw.com

John A. Braymer, *Pro Hac Vice*
Associate General Counsel
ENTERGY SERVICES, LLC
639 Loyola Avenue, Suite 2600
New Orleans, LA  70133
jbrayme@entergy.com

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this day electronically filed the foregoing with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

This 11th day of March, 2019.

/s/ Roy D. Campbell, III
OF COUNSEL