# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**STATE OF MISSISSIPPI ex rel. Jim Hood,**            **PLAINTIFF**
**Attorney General**

**V.**            **CAUSE NO. 3:08-CV-780-CWR-LRA**

**ENTERGY MISSISSIPPI, INC., et al.**            **DEFENDANTS**

## <u>ORDER</u>

This Order addresses Entergy's renewed argument that the Attorney General of Mississippi cannot pursue monetary damages on behalf of Mississippi consumers injured by Entergy's allegedly fraudulent and anticompetitive conduct. *See* Docket No. 359.

Entergy's argument is grounded in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 801 (5th Cir. 2012), a case holding that individual consumers were real parties in interest to one of the Attorney General's earlier consumer protection lawsuits.

That is a curious choice of cases in which to anchor an argument. In *AU Optronics*, the Fifth Circuit took a particularly idiosyncratic view of consumer protection lawsuits brought by state Attorneys General. The decision was so unusual—containing reasoning rejected by every other Court of Appeals to consider the issue—that the United States Supreme Court unanimously reversed in its next Term. *See* 571 U.S. 161 (2014).[1] The Fifth Circuit had misread Congress's statutory instructions, "stretche[d] the meaning of 'plaintiff' beyond recognition," and created "an administrative nightmare that Congress could not possibly have intended." *Id.* at 169-72.

Entergy presses that the Fifth Circuit's decision in *AU Optronics* nevertheless got *some* things right. Here is what Entergy says:

---

[1] Judge Elrod concurred in the judgment only because the majority opinion was a "fair application" of circuit precedent. 701 F.3d at 803 (Elrod, J., concurring). She noted that "every court of appeals to address the issue" had rejected the court's approach. *Id.* at 805.

Specifically, the Court should rule that the State (through the Attorney General) has standing to seek recovery only for harm allegedly suffered by the State as a customer of EMI, not harm allegedly suffered by private individuals and businesses as customers of EMI. The Fifth Circuit so held in *Mississippi ex rel. Hood v. AU Optronics Corp.*, 701 F.3d 796, 800-01 (5th Cir. 2012), *rev'd on other grounds*, 571 U.S. 161 (2014).

The Fifth Circuit made no such holding. In *AU Optronics*, that court actually "assum[ed] *arguendo* that the State has *parens patriae* standing to bring the claims here (an issue that we do not decide)." 701 F.3d at 801. It is surprising that Entergy could so misread that decision.

Mississippi law also is not favorable to Entergy's position. The most complete articulation of state law comes from a state trial court considering another one of the Attorney General's consumer protection cases. It reasoned as follows:

The Defendant, BASF, contends that the Attorney General, in seeking to represent Mississippi consumers, seeks to assert "wholly unprecedented" authority in this action. In making this statement, the Defendant ignores the power of the Attorney General vested by the Mississippi Code and the common law. The Mississippi Antitrust Act states that the Attorney General may bring a suit for forfeiture and recovery of penalties in "the name of the state on the relation of the attorney general ..." Miss. Code § 75–21–7 (1972). The Mississippi Code also states that "the Attorney General ... shall have the powers of the Attorney General at common law ..." Miss. Code § 7–5–1 (1972). In *Alfred L. Snapp & Son, Inc., v. Puerto Rico, ex rel., Barez,* 458 U.S. 592 (1982), the United States Supreme Court explained that every state has the ability to represent the interests of all citizens in cases raising matters of sovereign interest. In *Snapp,* the Supreme Court held that *parens patriae* is "inherent in the supreme power of every State ... often necessary to be exercised in the interests of humanity, and for the prevention of injury to those who cannot protect themselves." See *Mormon Church v. United States,* 136 U.S. 1, 57 (1890). A State may maintain a *parens patriae* action if the State can articulate a quasi-sovereign interest apart from the interests of particular private parties. *Alfred L. Snapp,* at 607. A State has a quasi-sovereign interest in the economic conditions of its citizens. The indirect economic effects of the injury must be considered as well as "whether the State has alleged injury to a sufficiently substantial segment of its population." One indicator whether a State has standing to sue as *parens patriae* is "whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers." An express grant of *parens patriae* authority is not needed for an attorney general to bring an action on behalf of the state to recover *parens patriae* damages. *State of Louisiana, ex rel. Ieyoub v. Borden, Inc.,* 1995 WL 59548, *3 citing *State of Texas v. Scott & Fetzer Co.,* 709 F.2d 1024 (5th Cir.1983). . . .

> The fact that the State of Mississippi has already addressed illegal monopolies, like the Defendant's, through its Mississippi Antitrust Act and the Mississippi Consumer Protection Act is evidence that the State of Mississippi has a quasi-sovereign interest and standing as *parens patriae* for all of its citizens. This fact has been recognized by several courts. . . .

*Hood ex rel. State v. BASF Corp.*, No. 56863, 2006 WL 308378, at *3 (Miss. Ch. Jan. 17, 2006) (collecting cases); *see also AU Optronics*, 701 F.3d at 803 n.1 ("In its complaint, Mississippi identified a valid quasi-sovereign interest in preventing illegal antitrust conduct prohibited under MAA and MCPA.") (Elrod, J., concurring). This should be enough to lay the standing argument to rest.

Entergy's final point is that it should not be held liable for monetary damages to the Attorney General *and* to consumers who may have brought their own suit. On this point—which is fundamentally about damages, not standing—all agree. As the Fifth Circuit put it, "the state cannot recover for the injury to the consumers and still preserve the right of the consumers to recover, a right that the consumers clearly have under the statutes pursuant to which the suit is brought." *AU Optronics*, 701 F.3d at 801 (citation omitted).

The problem here is that there is no evidence that other consumers have asserted parallel claims against Entergy. The parties are in the best position to know that, in part because one would expect Entergy to know the universe of Mississippians it has compensated for fraudulent and anticompetitive conduct, and in part because the Mississippi Consumer Protection Act, as an example, allows private suits only if the plaintiff "first made a reasonable attempt to resolve any claim through an informal dispute settlement program approved *by the Attorney General*." Miss. Code Ann. § 75-24-15(2) (emphasis added). We do not know if any consumer filed such a claim in the past, and the statute of limitations likely prevents them from doing so in the future. We

will simply have to await evidence from the parties on whether there are any such claims and, if so, subtract them from any damages that may be awarded in this case.

As to this argument, therefore, the motion for judgment as a matter of law is denied.

**SO ORDERED**, this the 30th day of March, 2019.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE