**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION**

| | |
|---|---|
| THE STATE OF MISSISSIPPI EX REL. JIM HOOD, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI, | ) ) ) ) |
| Plaintiff-Counterclaim Defendant, | ) ) |
| v. | )  No. 3:08-CV-780-CWR-LRA ) |
| ENTERGY MISSISSIPPI, INC., ENTERGY CORPORATION, ENTERGY SERVICES, INC., AND ENTERGY POWER, INC., | ) ) ) ) |
| Defendants-Counterclaim Plaintiffs. | ) ) |

**DEFENDANTS' MEMORANDUM OF LAW IN
SUPPORT OF THE COURT'S FEDERAL SUBJECT MATTER JURISDICTION**

Defendants respectfully submit this memorandum in response to the Court's question "whether or not [the Court has] subject matter jurisdiction" to hear this case. Apr. 2, 2019 p.m. Tr. 91:1-2. For the reasons that follow, the answer to the Court's question is yes, the Court does have subject matter jurisdiction as a matter of law. That result also comports with the equities, because remanding to state court at this stage would only serve as a lengthy and costly detour in this already long-running case. In state court, Defendants would renew their arguments that the case either must or should proceed in a federal (FERC) tribunal, or alternatively a state (MPSC) tribunal, that has expertise in the areas of interstate energy sales, multi-state tariffs, and utility rate-making. It is more efficient for this Court *now* to direct the case to one of those expert tribunals, and accordingly Defendants explain herein four avenues available to this Court to do so.

## PROCEDURAL HISTORY

On December 2, 2008, Plaintiff filed this case in Mississippi state court. Doc. 1-3. On December 29, 2008, Defendants timely removed this case to this Court under 28 U.S.C. § 1441. Doc. 1. Defendants relied on two bases: (1) diversity jurisdiction under the Class Action Fairness Act ("CAFA"), and (2) federal question jurisdiction under 28 U.S.C. § 1331. *Id.* at 4-15. Plaintiff moved to remand to state court. Doc. 9. Judge Wingate denied remand, relying on CAFA. Doc. 37 at 31.

In January 2014, Plaintiff filed a re-urged motion for remand, in light of *Mississippi v. AU Optronics Corp.*, 571 U.S. 161 (2014), which undermined the CAFA basis. Doc. 60. Judge Wingate again denied remand, reasoning in a 13-page order that this Court has **federal question jurisdiction** even absent jurisdiction under CAFA. Doc. 68 (Ex. A). Judge Wingate relied on the "arising under" doctrine of *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005), which recognizes federal question jurisdiction where a district court must consider a

substantial issue of federal law in order to adjudicate plaintiffs' non-federal claims. Doc. 68 at 8-12. As Judge Wingate reasoned, Plaintiff's claims here require an analysis of the Entergy System Agreement ("ESA"), a tariff that was approved by FERC and thus had the force of federal law. *Id.* at 11-13. Judge Wingate certified his order for interlocutory appeal, Doc. 73, but the Fifth Circuit denied permission to appeal, Doc. 75.

## ARGUMENT

### I.   THIS COURT HAS FEDERAL QUESTION JURISDICTION

In his second order denying remand (Doc. 68), Judge Wingate correctly addressed the very question Your Honor has now posed to the parties: whether the Court has federal subject matter jurisdiction here even though *AU Optronics* overturned the CAFA basis in a case like this one. Judge Wingate found that, even absent CAFA jurisdiction, the Court has federal question jurisdiction under 28 U.S.C. § 1331—which provides that the federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States"—under the Supreme Court's reasoning in *Grable*. Doc. 68 at 8-13. *Grable* held that a federal court may exercise "arising under" jurisdiction, even if the plaintiff does not affirmatively invoke federal law, where the plaintiff's state-law claim necessarily implicates a disputed and substantial issue of federal law. 545 U.S. at 312-14. *Grable*'s holding rested on "the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues." *Id.* at 312.

Judge Wingate correctly applied *Grable* here. As Judge Wingate noted, under *Grable*, a state-law cause of action may arise under federal law when a plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law. Doc. 68 at 9. The substantial federal-law question here, Judge Wingate reasoned, is the interpretation of a FERC-approved tariff,

2

namely, the ESA. Judge Wingate quoted from a key provision of the ESA at issue in this dispute, Section 4.02, which authorizes EMI to purchase energy from third-party suppliers "for its own account." *Id*. at 11. Judge Wingate recognized that Section 4.02 was part and parcel of Plaintiff's own theory expressed in its own complaint:

> Specifically, Mississippi accuses EMI … of failing to "make a purchase of electricity from a non-affiliate for its … 'own account.' Entergy Agreement, Sec. 4.02. Despite this ability to do so, EMI deliberately decided not to pursue less expensive non-affiliate supplies of electricity and, instead, merely accepted transfers … of the expensive ESX [Entergy Pool] electricity."

*Id.* at 11 (quoting Pl.'s Compl. (Doc. 1-3) ¶ 38); *see also* Doc. 135 (Pl.'s Am. Compl.) ¶ 38 (same).

Judge Wingate then correctly concluded:

> Mississippi's challenge, then, requires an analysis of the Entergy Agreement. The Entergy Agreement is a FERC tariff, which applies with the force of federal law. In essence, Mississippi is suing EMI for its failure to vindicate its federal power to initiate the process of buying energy from a third-party supplier. Mississippi's cause of action, therefore, derives from federal law; this court simply cannot adjudicate Mississippi's claim without determining the precise nature of the discretion vested in EMI by federal law. Whether EMI had the discretion to purchase energy from third-party suppliers—and failed to do so—***within the meaning of the federal tariff*** is an ***essential element*** of Mississippi's claim.

*Id.* at 11-12 (emphases added; internal citation omitted).

Judge Wingate also properly applied the *Grable* factor asking whether adjudicating the claim in a federal forum would "disturb[ ] any congressionally approved balance" of federal and state power. 545 U.S. at 314. As Judge Wingate noted, the ESA "is a federal tariff impacting Texas, Arkansas, Louisiana, and Mississippi" and thus implicates an important "national interest" in the availability of a federal forum "to clarify the meaning of the laws promulgated by a federal administrative agency." Doc. 68 at 12 (citing *Grable*, 545 U.S. at 315).

Judge Wingate cited additional cases beyond *Grable* in support of his decision that a state-law claim that necessarily involves interpretation of a federal tariff "arises under" federal law. Doc. 68 at 12 (citing, *e.g.*, *Prairie Horizon Agri-Energy, LLC v. Tallgrass Interstate Gas*

3

*Transmission, LLC*, 2014 WL 7384767, at *2 (D. Kan. Dec. 29, 2014) (denying motion to remand because "a claim that involves the validity, construction, or effect of a filed FERC tariff invokes federal subject matter jurisdiction"); *In re W. States Wholesale Natural Gas Antitrust Litig.*, 346 F. Supp. 2d 1123, 1140 (D. Nev. 2004) (denying motion to remand because "federal courts have exclusive jurisdiction under the [Federal Power Act] regarding conduct in violation of ISO tariffs")).

The federal district court in *Jenkins v. Entergy Corp.*, No. G-03-746 (S.D. Tex. Jan. 29, 2004) (Kent, J.) (Ex. B), addressed the same issue—Is there federal question jurisdiction over state-law claims based on the theory that an Entergy Operating Company and/or the Entergy System should have made additional purchases from IPPs and relied less on its/their own generating units?—and came out the other way from Judge Wingate. This Court should follow Judge Wingate's analysis because it is the more sound application of *Grable*; Judge Kent's decision pre-dates *Grable*, and in any event is cursory and erroneous.

Judge Kent held that a federal issue did not form an "essential element" of the plaintiffs' claims in that dispute, relying on the three-part test outlined in *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 917 (5th Cir. 2001) (whether "(1) a federal right is an essential element of the state claim, (2) interpretation of the federal right is necessary to resolve the case, and (3) the question of federal law is substantial"). Ex. B at 3-5. In doing so, Judge Kent concluded that none of the alleged state common law or statutory causes of action "require[d] the violation of a federal tariff." *Id.* at 5.

This Court should not follow Judge Kent's approach. *First*, Judge Kent's decision (and the *Howery* test on which it relies) pre-dates the Supreme Court's controlling decisions in *Grable* and *Gunn v. Minton*, 568 U.S. 251 (2013). Those decisions require only that the federal issue be

4

"necessarily raised" and "substantial," *e.g.*, *Gunn*, 568 U.S. at 258 (citing *Grable*, 545 U.S. at 313-14), not an "***essential*** element" of the plaintiff's claim, *Howery*, 243 F.3d at 917 (emphasis added).

*Second*, and in any event, the federal issue ***was*** essential to the plaintiffs' state-law claims in *Jenkins*, just as they are essential to Plaintiff's claims here. Judge Kent acknowledged that plaintiffs could "spend days during [d]efendants' case and [p]laintiffs' rebuttal examining and analyzing the [ESA]," but concluded that such consideration would be only in furtherance of defendants' affirmative defenses, and not as part of an "essential element" of plaintiffs' claims. Ex. B at 5. That prediction was incorrect. In fact, as the opinion issued by the Texas Court of Appeals in *Jenkins* following remand shows, that court ultimately was forced to grapple with substantive issues involving the ESA as part of the **state-law claims plaintiffs asserted**, and not merely as part of defendants' affirmative defenses.

Specifically, in evaluating "the precise duty [that] Jenkins claims was violated—the duty to acquire energy at the least cost," the Texas Court of Appeals relied on no fewer than nine provisions of the very same ESA that is at issue here. *Entergy Corp. v. Jenkins*, 469 S.W.3d 330, 341 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). The court noted that defendants' duty "is expressly set out in ESA Schedule MSS-3 section 30.02," and quoted the relevant section. *Id.* The court likewise relied on and/or quoted passages from ESA sections 4.02, 4.03, 4.08, 6.01, 6.02, 30.08, 30.09, and 30.10 in analyzing the contours of plaintiffs' state-law claims—not defendants' affirmative defenses—to conclude that plaintiffs' claims fell within the auspices of FERC's jurisdiction. *Id.* at 341-42. Again, as in this case, the claims in *Jenkins* required first analyzing actions of an Entergy Operating Company or the Entergy System under the ESA, a FERC-approved tariff with the force of federal law. As the Texas appellate court stated:

> Although Jenkins does not allege breach of the FERC-approved ESA as a cause of action, **he challenges Entergy's purchasing decisions**—whether to use allegedly

5

> available third-party electricity or system-generated electricity—***which Entergy undertook pursuant to the ESA***.  Determining whether Entergy permissibly exercised its discretion in making its purchasing decisions thus ***necessarily*** requires consideration of the ESA, a FERC-approved tariff.

*Id.* at 343 (emphases added).

Accordingly, Judge Kent erred in concluding that the ESA did not comprise an "essential element" of *Jenkins'* claims, and any argument that the ESA fails to comprise an "essential element" of Plaintiff's claims here is equally misplaced.  This Court should instead find guidance in Judge Wingate's order, which properly applied *Grable* to conclude that Plaintiff's claims implicate a "substantial question of federal law" and therefore should not be remanded to state court.

## II. THIS COURT SHOULD DISMISS THE CASE BECAUSE IT IS PREEMPTED BY FEDERAL LAW

If Your Honor is inclined to reconsider Judge Wingate's decision (Doc. 68) on subject matter jurisdiction, Your Honor should also reconsider Judge Wingate's decision (Doc. 86) on federal preemption.  As discussed in Defendants' pretrial memorandum (Doc. 359 at 4-10) and Defendants' Proposed Findings of Fact and Conclusions of Law ("FFCL") ¶¶ 130-49, the filed-rate doctrine prohibits states from second-guessing, in any forum other than FERC, a utility system's discretion where a FERC-approved tariff like the ESA dictates "how and by whom" decisions should be made.  *Entergy La., Inc. v. La. Pub. Serv. Comm'n*, 539 U.S. 39, 47-50 (2003). And the so-called *Pike County* exception to the filed-rate doctrine, on which Judge Wingate relied, does not apply in the context of a multi-state, multi-utility system like the Entergy System.  *See, e.g.*, *Appalachian Power Co. v. Pub. Serv. Comm'n of W. Va.*, 812 F.2d 898, 904 (4th Cir. 1987); *AEP Gen. Co.*, 36 F.E.R.C. P61,226, 61,550 (1986).

Notably, the Texas Court of Appeals' decision in *Jenkins*—which Judge Wingate did not address in Doc. 86—addressed the identical theory presented in this case and held that the theory

6

(and the state-law claims based on that theory) are within FERC's exclusive jurisdiction. *See supra*, at 6 (quoting *Jenkins*, 469 S.W.3d at 342-43).[1]

### III. THIS COURT SHOULD DEFER TO FERC UNDER THE DOCTRINE OF PRIMARY JURISDICTION

Even if this Court does not find that Plaintiff's claims are preempted by federal law, this Court should defer to FERC under the doctrine of primary jurisdiction "for an initial decision on questions of fact or law within the peculiar competence of the agency." *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 810 F.3d 299, 309 (5th Cir. 2016).

Deferring to FERC under the doctrine of primary jurisdiction is warranted here because FERC has substantial expertise regarding interstate energy sales and the ESA, and FERC oversight of the ESA promotes fair treatment and uniformity in resolving challenges with multi-state impacts, as compared to having a Mississippi state court or this Court adjudicate the claims, with the possibility of its decision conflicting with the decisions of other states' courts or agencies.

If this Court were to rely on this doctrine, this Court would stay rather than dismiss the instant case, pending FERC's determination. *See, e.g.*, *Wagner & Brown v. ANR Pipeline Co.*, 837 F.2d 199, 206 (5th Cir. 1988) ("To ensure that Wagner & Brown's rights will not be unreasonably delayed or lost, we direct that the district court modify its judgment by vacating its order of dismissal and substituting an order staying proceedings before it for a period of 180 days to afford FERC an opportunity to rule on ANR's complaint.").

---

[1] Tellingly, aside from *Jenkins* (which the Texas appellate court held was within FERC's exclusive jurisdiction), every one of Dr. DeRamus's proceedings concerning Entergy, since 2004, was before a regulatory agency, ***not*** a court. April 2, 2019 a.m. Tr. 52:5-9.

## IV. THE COURT SHOULD DISMISS OR STAY THE CASE IN ORDER TO DEFER TO MPSC JURISDICTION UNDER MISSISSIPPI STATE LAW

Even if the Court does not find the case preempted by federal law or subject to a primary jurisdiction referral to FERC, the Court should dismiss or stay this case in deference to the MPSC's jurisdiction under Mississippi state law. *See* Doc. 359 at 10-15; FFCL ¶¶ 150-167.

Plaintiff, rather than inquiring of the MPSC concerning its availability for a conference with the Court and parties on these issues,[2] made an unsolicited attempt to reargue whether the case is preempted by Mississippi state law (and hence within the MPSC's jurisdiction). Apr. 2, 2019 p.m. Tr. 73:1-83:22. Plaintiff's new arguments are unpersuasive.

*First*, Plaintiff incorrectly asserted that this Court's recent order (Doc. 366) rejected Defendants' MPSC jurisdiction argument. This Court did *not* resolve the argument, and instead described it as one that would require the Court to make an "*Erie* gues[s]," *id.* at 1, which this Court was reluctant to make before trial, *id.* at 2.

*Second*, Plaintiff continues to ignore Defendants' argument that, even under pre-SB 2295 law, Plaintiff's lawsuit is within the MPSC's exclusive jurisdiction. *See* FFCL ¶¶ 151-56.

*Third*, Plaintiff has no response to the principle that, regardless of any retroactivity determination, "post-event legislation" may be considered "to clarify the pre-enactment content of the law." *Estate of Stamper v. Edwards*, 607 So. 2d 1141, 1149 (Miss. 1992). *Stamper* held that the new statute was **not** retroactive: "Francis and Marcus Williams … argue the rule took effect from enactment and applies in all trials thereafter, without regard to whether the operative events

---

[2] Speaking to a reporter, MPSC Chairman Brandon Presley stated that the MPSC would address this matter "immediately" if asked to do so. *See* Jeff Amy, *Judge could hand $2B power rate fight to utility regulator*, https://apnews.com/ecd59c60ebd045829e80cb193e723d65 (Apr. 3, 2019) ("'If that's sent back to the commission, I would ask us immediately to go into special session for the full commission to hear it or to appoint a hearing officer,' Public Service Commission Chairman Brandon Presley, a Democrat representing the state's northern district, said Tuesday.").

subject to litigation arose before enactment. If we were concerned with a mere rule of evidence, Francis and Marcus would be correct, but the statute is more than that." *Id.* at 1148-49 (internal citation omitted). But the Mississippi Supreme Court nonetheless went on to hold that the new rule could be considered "to clarify the pre-enactment content of the law." *Id.* at 1149. So, here, even if *The Door Shop, Inc. v. Alcorn Cty. Elec. Power Ass'n*, 261 So.3d 1099, 1102 n.3 (Miss. 2018), held—rather than merely suggested in dicta—that SB 2295 "does not operate retroactively," that would not preclude operation of the *Stamper* principle that new legislation, even if not retroactive, may be used as an interpretive tool to construe pre-enactment law.³

*Third*, Plaintiff unpersuasively parses new § 77-1-43 to raise supposedly intractable problems were this Court to stay the instant case for a limited of period time while the MPSC passes upon whether Plaintiff should be allowed to continue to pursue the case. The simple answer is that, if this Court uses SB 2295 merely to inform interpretation of the content of pre-enactment law, the technical requirements of new § 77-1-43 (such as that the Attorney General's suit be instituted "in the name of the commission") would not strictly apply.⁴ Instead, this Court would use new § 77-1-43's approach of MPSC-as-gatekeeper to interpret old § 77-1-43 as placing the MPSC in a gatekeeper role before the Attorney General can pursue the action described in *old* § 77-1-43—"an action for violation of the law, or for the violation of any lawful rule, regulation, or order of the commission … in any court of competent jurisdiction"—which has none of the technical requirements that Plaintiff suggested are problematic in new § 77-1-43.

---

³ SB 2295 explicitly states that its purpose is, *inter alia*, to "TO AMEND REENACTED SECTION 77-1-43, MISSISSIPPI CODE OF 1972, **TO CLARIFY** THE METHOD OF ENFORCEMENT OF CERTAIN LAWS, RULES, REGULATIONS, ORDERS, DECISIONS AND DETERMINATIONS OF THE COMMISSION." Doc. 262-4 at 1 (emphasis added).

⁴ Even if this requirement did apply, it could easily be handled by the State amending its complaint.

*Finally*, even if it were necessary to decide whether SB 2295 (and new § 77-1-43) retroactively applies to this case, the *holdings* of the Mississippi Supreme Court take precedence over the dicta in *Door Shop*. *See Centennial Ins. Co. v. Ryder Truck Rental, Inc.,* 149 F.3d 378, 382, 385 (5th Cir. 1998). Those holdings are that, "[wh]en the Legislature chooses to amend or modify any law related to a pending action, this Court applies the Legislature's most recent pronouncement." *Miss. Dep't of Corr. v. Roderick & Solange MacArthur Justice Ctr.*, 220 So.3d 929, 933 (Miss. 2017) ("*MDOC*"); *see also, e.g.*, *USPCI of Miss., Inc. v. Mississippi*, 688 So.2d 783, 787 (Miss. 1997). This case was indisputably pending on July 1, 2018, when SB 2295 became effective. Just as in *MDOC* a new exemption under the Public Records Act applied to a pending lawsuit concerning a request for information, so too here SB 2295 (and new § 77-1-43) apply to this case that was pending when SB 2295 was enacted.

## V.  THE COURT SHOULD ALTERNATIVELY SEND THE CASE TO THE MPSC UNDER THE STATE DOCTRINE OF PRIMARY JURISDICTION

Even if the case is not within the exclusive jurisdiction of the MPSC, this Court still has discretion to stay the case and refer part or all of it to the MPSC under the state doctrine of primary jurisdiction so as to allow the MPSC to address, in the first instance, the complex ratemaking issues presented. *See Ill. Cent. R.R. Co. v. M. T. Reed Constr. Co.*, 51 So. 2d 573, 575 (Miss. 1951) (*per curiam*); Doc. 263 at 20 n.22; *cf. Singing River Mall Co. v. Mark Fields, Inc.*, 599 So. 2d 938, 942 (Miss. 1992) ("[O]nly the Mississippi Public Service Commission may initially decide a matter relating to the regulation of intrastate public utility activity.").

## **CONCLUSION**

The Court should hold that federal question jurisdiction exists over this action, and then should dismiss or stay the case on the grounds set forth in Points II-V, *supra*.

RESPECTFULLY SUBMITTED, this 3rd day of April, 2019.

                                        ENTERGY MISSISSIPPI, INC.,
                                      ENTERGY CORPORATION, ENTERGY
                                      SERVICES, INC. AND ENTERGY
                                      POWER, INC., Defendants

                                      By /s/ Roy D. Campbell, III
                                          Roy D. Campbell, III (MSB 5562)
                                          J. William Manuel (MSB 9891)
                                          Alicia N. Netterville (MSB 105055)

                                          BRADLEY ARANT BOULT
                                          CUMMINGS LLP
                                          One Jackson Place
                                          188 East Capitol Street, Suite 400
                                          P.O. Box 1789
                                          Jackson, MS 39215-1789
                                          Telephone:  (601) 948-8000
                                          Facsimile:  (601) 948-3000
                                          rcampbell@bradley.com
                                          wmanuel@bradley.com
                                          anetterville@bradley.com

                                          Charles E. Ross (MSB 5683)
                                          James L. Robertson (MSB 5612)
                                          Rebecca Hawkins (MSB 8786)
                                          WISE CARTER CHILD & CARAWAY, P.A.
                                          Post Office Box 651
                                          Jackson, MS  39205-0651
                                          Telephone:  (601) 968-5534
                                          Facsimile:  (601) 944-7738
                                          jlr@wisecarter.com
                                          cer@wisecarter.com
                                          rwh@wisecarter.com

OF COUNSEL:

Kathleen M. Sullivan, *Pro Hac Vice*
Sanford I. Weisburst, *Pro Hac Vice*
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
sandyweisburst@quinnemanuel.com

Mark Strain, *Pro Hac Vice*
Jay Breedveld, *Pro Hac Vice*
Duggins Wren Mann & Romero
600 Congress Avenue, Suite 1900
Austin, TX 78702
Telephone: (512) 744-9300
Facsimile: (512) 744-9399
jbreedveld@dwmrlaw.com
mstrain@dwmrlaw.com

Tianna H. Raby (MSB 100256)
Christopher R. Shaw (MSB 100393)
Entergy Mississippi, Inc.
308 E. Pearl Street, Suite 700 (39201)
Mail Unit M-ELEC-4A
P.O. Box 1640
Jackson, MS 39215-1640
Telephone: (601) 969-2656
Facsimile: (601) 969-2696
traby@entergy.com
cshaw4@entergy.com

John A. Braymer, *Pro Hac Vice*
Associate General Counsel
Entergy Services, Inc.
639 Loyola Avenue, Suite 2600
New Orleans, LA 70133
jbrayme@entergy.com

## **CERTIFICATE OF SERVICE**

I do hereby certify that I have this day electronically filed Defendants' Memorandum of Law in Support of the Court's Federal Subject Matter Jurisdiction with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

This 3rd day of April, 2019.

/s/ Roy D. Campbell, III
Roy D. Campbell, III
