IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

| | |
|---|---|
| THE STATE OF MISSISSIPPI, EX REL. JIM HOOD, ATTORNEY GENERAL FOR THE STATE OF MISSISSIPPI, | |
| Plaintiff-Counterclaim Defendant, | |
| v. | No. 3:08-CV-780-CWR-LRA |
| ENTERGY MISSISSIPPI, INC., ENTERGY CORPORATION, ENTERGY SERVICES, INC., AND ENTERGY POWER, INC., | |
| Defendants-Counterclaim Plaintiffs | |

**PLAINTIFF'S MEMORANDUM BRIEF
IN CONSIDERATION OF THIS COURT'S SUBJECT MATTER JURISDICTION**

Now Comes Plaintiff, Attorney General Jim Hood, by and through undersigned counsel and on behalf of the State of Mississippi, who hereby submits the following Memorandum Brief in Consideration of This Court's Subject Matter Jurisdiction with respect to the above captioned matter, and in accordance with this Court's order of April 2, 2019.

**I.     CLARIFICATION OF THE EXISTING SCOPE OF SUBJECT MATTER JURISDICTION**

From the outset of this case, Defendants have consistently argued that jurisdiction lies in only one place: *wherever they aren't.* When the complaint was in chancery court, Entergy insisted that this matter fell within the *exclusive* jurisdiction of the Federal Energy Regulatory Commission ("FERC") **and** the *exclusive* jurisdiction of the Mississippi Public Service Commission ("MPSC"), while simultaneously declaring that it "epitomizes the lawsuits that Congress placed within the removal jurisdiction of federal district courts" under **both** 28 U.S.C.

1

§ 1331 **and** 1332.[1] All of these arguments have been previously addressed by this Court in a thoughtful, well-reasoned opinion by Judge Wingate denying Defendants' Motion for Judgment on the Pleadings.[2]

As the pleadings show, the State contested removal, filing two Motions to Remand in an attempt to keep the case in state court. An appeal to the Fifth Circuit regarding the propriety of this Court's assertion of federal question jurisdiction was denied. Although Plaintiff would have preferred that the matter remain before the chancery court, Judge Wingate's decision was undeniably correct: The crux of this case is the State's allegation that section 4.02 of the Entergy System Agreement permitted Entergy Mississippi to make "own-account" purchases, and that their failure to exercise this privilege in a manner consistent with their duty to provide power to Mississippi ratepayers at the lowest reasonable cost resulted in damages estimated at hundreds of millions, if not billions of dollars.[3] Contested Issue of Law No. 9 puts interpretation of Sec. 4.02 of the Entergy System Agreement directly at issue. The parties are diametrically opposed regarding this interpretation.

## II.     JUDGE WINGATE'S PRIOR RULING

The Court's original reasoning in asserting federal question jurisdiction remains persuasive. Judge Wingate held that, "EMI does not have unfettered discretion in the costs it passes on to Mississippi consumers; rather, the utility's discretion necessarily is curtailed by the

---

[1] *Defendants' Initial Opposition to Motion for Remand* (Doc. 23, p.1).
[2] *Rulings on Motions Via Telephone* . (Doc. 86, pp.24, 31-33) ("[FERC] has explicitly stated that it lacks exclusive jurisdiction over disputes involving a choice among FERC sanctioned rates." …. "[T]his court finds Mississippi's claims are not subject to the exclusive jurisdiction of FERC." .… "[T]his court finds Mississippi states a claim for relief that is not within the MPSC's exclusive jurisdiction."
[3] This question appears in the Pretrial order filed April: "Pursuant to the Entergy System Agreement, was EMI permitted, with the consent of or under conditions specified by the Entergy Operating Committee, and acting individually or in combination with one or more EOCs, to enter a Power Purchase Agreement ("PPA") with a non-affiliated third party for its/their "own account" (i.e., "Own Account Purchases" (also called "Individual Company Purchases"))?"

2

provisions of the FERC-sanctioned Agreement and the Agreement's associated Service Schedules. That FERC-sanction Agreement, however, permitted EMI the discretion to purchase energy from third-party suppliers." [Doc. 68, at 11]. He continued, "Mississippi's complaint challenges EMI's failure to use its discretion to purchase the allegedly cheaper energy from third-party suppliers. Specifically, Mississippi accuses EMI and the other EOCs of failing to "make a purchase of electricity from a non-affiliate for its/their 'own account.' Entergy Agreement, Sec. 402. Despite this ability to do so, EMI deliberately decided not to pursue less expensive non-affiliate supplies of electricity, and, instead, merely accepted transfers . . . of the expensive ESX electricity." Mississippi's Complaint at ¶ 38." *Id*. Judge Wingate concluded, "Mississippi's challenge, then, requires an analysis of the Entergy Agreement. The Entergy Agreement is a FERC tariff, which applies with the force of federal law. *See Carter v. Am. Tel. & Tel. Co.*, 365 F.2d 486, 496 (5th Cir. 1966)." *Id*. He further concluded, "Mississippi's cause of action, therefore, derives from federal law; this court simply cannot adjudicate Mississippi's claim without determining the precise nature of the discretion vested in EMI by federal law. Whether EMI had the discretion to purchase energy from third-party suppliers—and failed to do so—within the meaning of the federal tariff is an essential element of Mississippi's claim. Moreover, this court is persuaded that an important national interest exists in the availability of a federal forum to clarify the meaning of the laws promulgated by a federal administrative agency." *Id*., at 11-12. These findings are not erroneous.

### III.   *JENKINS* DOES NOT APPLY

The *Jenkins* decision relied on the United States Supreme Court decision in *Entergy Louisiana, Inc. v. Louisiana Public Serv. Comm'n,* 539 U.S. 39 (2003) ("ELI"). *Entergy Corporation v. Jenkins*, 469 S.W.3d 330, 340-41 (2015). The court in ELI was faced with a

situation where the state regulator – the LPSC – found that the price ELI paid for a service under the Entergy System Agreement other than Entergy System Exchange power was excessive. In other words, ELI involved Service Schedule MSS-1 of the Entergy System Agreement (i.e., a different rate than MSS-3 – the rate for Entergy System Exchange power at issue here). Under MSS-1, the Entergy Operating Companies made or received payments to or from each other depending on the amount of generating capacity they owned relative to the other companies that could be used as reserves for the system – called "reserve capacity equalization". The LPSC in ELI attacked a component of the MSS-1 rate – the inclusion of costs in that rate related to "Extended Reserve Shutdown" (i.e., mothballed) units. The United States Supreme Court found, unsurprisingly, that, since the LPSC attempted to rule upon the reasonableness of the MSS-1 rate, *per se*, it infringed on FERC's jurisdiction.

Further, *Jenkins* revolved around instantaneous dispatch decisions, whereas here, the Attorney General focuses on EMI's refusal to displace output of its Legacy Units with purchased electricity from third parties. *Jenkins* found FERC had exclusive jurisdiction and dismissed the plaintiffs' claims. As discussed below, FERC does not have jurisdiction.

As stated numerous times, the Attorney General does not question, much less attack, the MSS-3 price for power under the Entergy System Agreement. The Complaint is very clear about this. Instead, the Attorney General attacks EMI's over-reliance on the Entergy System Exchange power to meet the needs of its retail customers. During the relevant time periods, EMI continuously had choices of whether to (a) generate power for its retail customers using its own generating units, (b) rely upon the Entergy System Exchange for power for its retail customers, or (c) purchase power from non-affiliated, off-system suppliers to meet the needs of its retail customers. It is this purchasing decision paradigm that EMI completely and irresponsibly

4

surrendered to its parent company and affiliates. nstead of diligently seeking out cheaper sources of power supply, EMI was content to generate far too much power from its antiquated and inefficient units and to accept gobs of expensive Entergy System Exchange power to make up the difference between the output of its own units and its retail customers' needs. Those decisions were EMI's alone.

Finally, a decision in the *Jenkins* matter not focused upon by Defendants is the initial decision rejecting Defendants' claims that the state public utility commission ("PUCT") and/or FERC had exclusive subject matter jurisdiction. In *Jenkins v. Entergy Corp.*, 187 S.W.3d 785 (2006), the Texas state appellate court rejected Defendants claims that the PUCT and/or FERC had subject matter jurisdiction. Defendants in that case (including Entergy Corp., Entergy Services, Inc. and Entergy Power, Inc. - three of the Defendants in the instant case) sought *certiorari* to the U.S. Supreme Court.[4] The Supreme Court denied *certiorari*. There appears to have been no appeal of the subsequent *Jenkins* decision (469 S.W.3d 330 (2015)).

## IV. ARGUMENTS REGARDING FEDERAL AND STATE PREEMPTION HAVE BEEN ADDRESSED

The Federal Power Act preserves to the states the authority to challenge a utility's purchasing decisions among various supplies of power. The lynchpin of federal preemption under the Federal Power Act is whether the asserted claim attacks the reasonableness of the rate or service approved by FERC. However, if the claim does not attack either the reasonableness of the rate or service, it may proceed under state law in areas such as state antitrust laws and unfair practices statutes. In fact, it has been held, "To 'arise under' a federal law, a right or immunity must be an 'essential element' of the complaint.

---

[4] 552 U.S. 1224.

5

In addition, the Federal Power Act preserves to the states the authority to challenge a utility's purchasing decisions among various supplies of power. The lynchpin of federal preemption under the Federal Power Act is whether the asserted claim attacks the reasonableness of the rate or service approved by FERC. However, if the claim does not attack either the reasonableness of the rate or service, it may proceed under state law in areas such as state antitrust laws and unfair practices statutes. In fact, it has been held, "To 'arise under' a federal law, a right or immunity must be an 'essential element' of the complaint. The mere fact that a federal statute is mentioned in a complaint does not mean that a plaintiff's cause of action 'arises under' federal law." Likewise, "where Defendant argue[d] that [the Attorney General's] claims arise under federal law because they 'cannot be judged without consideration of the ... tariffs [filed with the Federal Energy Regulatory Commission ('FERC')],'" the claims were not federal in nature and the case not removable, because "[Plaintiff] seeks to use ... state statute[s], namely California's Unfair Competition Law [and the California Commodity Law], as ... vehicle[s] to hold Defendant[ ] liable for [market manipulation and gaming strategies]," and that "[w]hether Plaintiff's alleged activities underlying these state claims also violated the FPA or a federal tariff is irrelevant since Plaintiff, as master of its complaint, chose to allege that Defendant engaged in conduct that was unlawful under state law, instead of alleging violations of federal law."

Here, however, Judge Wingate found that interpretation of the Entergy System Agreement is an "essential element of Mississippi's claim" and that important national issues were presented by the Attorney General's Complaint. [Order, Doc. 68, at 11-12]. Consequently, Judge Wingate found federal question jurisdiction present. That ruling was not legally deficient.

The Complaint alleges EMI should have searched out alternative supplies of power that were available at cheaper FERC-approved rates than the MSS-3 Entergy System Exchange rate

in order to displace or reduce EMI's need for the Exchange power. The State's claims, therefore, touch upon the Entergy System Agreement with respect to EMI's over-reliance on the MSS-3 Pool or Exchange purchases. But, the fact that the State's claims touch upon the ESA and wholesale power market is not determinative of whether such claims fall under FERC's exclusive jurisdiction. As the U.S. Supreme Court recently held, the wholesale and retail electricity markets, subject to federal (wholesale) and state (retail) regulation, cannot be "hermetically sealed" from one another.[5] Thus, the fact that Plaintiff claims EMI should have accessed third-party power supplies in the wholesale market should not be confused with an attack on wholesale rates or transactions.

Under the "Pike County exception" (*Pike County Light & Power Company v. Pennsylvania Public Utility Commission*, 465 A.2d 735 (Pa. 1983)) to the "Narrangasset Doctrine" (*Narragansett Electric Company v. Burke*, 119 R.I. 559, 381 A.2d 1358 (1977), *cert. denied*, 435 U.S. 972, 98 S.Ct. 1614, 56 L.Ed.2d 63 (1978)), it is solely within the purview of the states to decide whether an electric utility acted lawfully in choosing among various energy supply options, when each such option is priced at FERC-approved rates. The United States Supreme Court has expressly recognized, with approval, the *Pike County* exception. *See Nantahala Power & Light Company v. Thornburg*, 476 U.S. 953, 972, 106 S.Ct. 2349, 90 L.Ed.2d 943 (1986) (recognizing that *Pike County* created an exception to preemption under the Federal Power Act and stating, "Without deciding the issue, we may assume that a particular quantity of power procured by a utility from a particular source could be deemed unreasonably excessive [by the state] if lower cost power is available elsewhere, even though the higher cost power actually purchased is obtained at a FERC-approved, and therefore reasonable, price.")

---

[5] *FERC v. Electric Power Supply Association*, 136 S.Ct. 760, 776 (2016).

(Emphasis in original). *See also Kentucky West Virginia Gas Co., v. Pennsylvania Public Utility Commission*, 837 F.2d 600, 609 (3rd Cir.); *cert. denied*, 488 U.S. 941, 109 S.Ct. 365, 102 L.Ed.2d 355 (1988) (holding that, although *Nantahala* precludes state review of the reasonableness of a wholesale rate on file with FERC, that in no way undermines the long-standing rule that a state may inquire into whether a utility reasonably chose to pay the FERC-approved rate of one source, as opposed to the lower FERC-approved rate of another source.); *Mississippi Power & Light Co. v. Mississippi ex rel. Moore*, 487 U.S. 354, 373-374, 108 S.Ct. 2428, 2440, 101 L.Ed.2d 322 (1988) (finding a FERC-approved tariff that expressly dictates that each of the Entergy Operating Companies, including EMI, must purchase a specific amount of power from the Grand Gulf I Nuclear Generating Unit and sets the price for such power -- which is to be contrasted with the Entergy System Agreement which does not compel EMI to purchase any amount of power from its affiliates -- that the state, not FERC, has power to find "it might well be unreasonable for a utility to purchase unnecessary quantities of high-cost power, even at FERC-approved rates, if it had the legal right to refuse to buy that power.").

FERC has consistently confirmed it does not have exclusive subject matter jurisdiction over claims involving a choice among FERC-approved rates. *See, e.g., Cent. Vt. Pub. Serv. Corp.*, 84 FERC ¶ 61,194 at 61,975 (1998) (finding, "[FERC] has consistently recognized that wholesale ratemaking does not, as a general matter, determine whether a purchaser has prudently chosen from among available supply options."); *Pa. Power & Light Co.*, 23 FERC ¶ 61,325 at 61,716 (1983) (holding, "[FERC] do[es] not view our responsibilities under the Federal Power Act as including a determination that the purchaser has purchased wisely or has made the best deal available."); FERC Order No. 888-B, 81 FERC ¶ 61,248 at 62,081 (1997); *Arkansas-Louisiana Gas Company v. Hall*, 7 FERC ¶ 61,175 at 61,322 (1979).

The Attorney General has alleged EMI failed to pursue less expensive supplies of power, as an alternative to the price it paid Entergy for power from the Exchange – similar to the allegations in *Pike County*. The facts of *Pike County*, thus, are similar to the facts of the instant case and Defendants have failed to distinguish its holding. While the United States Supreme Court has not specifically adopted the *Pike County* exception, it has expressly assumed it exists in *Mississippi Power & Light Co. v. Mississippi, ex rel. Moore*, 487 U.S. 354, 373-74, 101 L.Ed.2d 322, 108 S.Ct. 2428 (1988) and *Nantahala Power & Light Co. v. Thornburg*, 476 U.S. 953, 972, 90 L.Ed.2d 943, 106 S.Ct. 2349 (1986).

**By: JIM HOOD, ATTORNEY GENERAL STATE OF MISSISSIPPI**

/s/ LUKE F. PIONTEK
J. Kenton Parsons (La. Bar No. 10377)
Luke F. Piontek (La. Bar No. 19979)
Andre G. Bourgeois (La. Bar No. 19298)
Shelley Ann McGlathery (La. Bar No. 32585)
*Pro Hac Vice*
**ROEDEL PARSONS KOCH BLACHE BALHOFF & McCOLLISTER**
A Law Corporation
8440 Jefferson Highway, Suite 301
Baton Rouge, Louisiana 70809
Telephone: (225) 929-7033
Facsimile: (225) 928-4925

Vincent F. Kilborn, III, Esq. (MSB #103028)
Special Assistant Attorney General
**KILBORN & ROEBUCK**
Post Office Box 478
Montrose, Alabama 36559
Telephone: (251) 479-9010
Fax: (251) 479-6747

Harold E. Pizzetta, III, MSB No. 99867
Bridgette W. Wiggins, MSB No. 9676
**Office of the Attorney General**
P. O. Box 220

Jackson, Mississippi 39225-2947
Telephone: (601) 359-4230
Facsimile: (601) 359-4231

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Luke F. Piontek, Attorney for the State of Mississippi, do hereby certify that on April 3, 2019, I caused to be electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to the following:

James L. Robertson, Esq.
Michael B. Wallace, Esq.
Charles E. Ross, Esq.
Rebecca W. Hawkins, Esq.
Wise, Carter, Child & Caraway, PA
Post Office Box 651
Jackson, Mississippi 39205

Jay Breedveld, Esq.
Mark Strain, Esq.
Duggins Wren Mann & Romero
600 Congress Avenue, Suite 1900
Austin, TX 78701

John A. Braymer, Esq.
Associate General Counsel
Entergy Services, Inc.
639 Loyola Avenue, #2600
New Orleans, LA 70113

John D. Martin, Esq.
Nelson Mullins Riley & Scarborough, LLP
1320 Main Street, 17th Floor
Columbia, SC 29201

Roy D. Campbell, III
J. William Manuel
Alicia N. Netterville
Bradley Arant Boult Cummings, LLP
One Jackson Place, Suite 400
188 East Capitol Street
Post Office Box 1789
Jackson, MS 39215-1789

Sanford I. Weisburst, *Pro Hac Vice*
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
sandyweisburst@quinnemanuel.com

Tianna H. Raby, Esq.
Christopher R. Shaw, Esq.
Entergy Mississippi, Inc.
308 E. Pearl Street, Suite 700 (39201)
Mail Unit M-ELEC-4A
P.O. Box 1640
Jackson, Mississippi 39215-1640

This the 3rd day of April, 2019.

                                              <u>/s/ LUKE F. PIONTEK</u>
                                              Luke F. Piontek (La. Bar No. 19979)