# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**STATE OF MISSISSIPPI ex rel. Jim Hood,**                                    **PLAINTIFF**
**Attorney General**

**V.**                                                 **CAUSE NO. 3:08-CV-780-CWR-LRA**

**ENTERGY MISSISSIPPI, INC., et al.**                                        **DEFENDANTS**

## ORDER OF REMAND

Federal courts "have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (citation omitted). This obligation helps the judiciary adhere to the principles of federalism enshrined in the Constitution. It exists no matter what the parties may prefer or how much time they have spent preparing their case for adjudication in federal court.[1] If "a federal court determines that it is without subject matter jurisdiction, the court is powerless to continue." *Amason & Assocs., Inc., v. Columbus Land Dev., LLC*, No. 7:12-CV-2459-VEH, 2013 WL 12250379, at *3 (N.D. Ala. Feb. 28, 2013) (citing *Wernick v. Mathews*, 524 F.2d 543, 545 (5th Cir. 1975)).

In this case, jurisdiction depends on the existence of a federal question in the complaint. Judge Southwick succinctly explained this strand of the law in *Quinn v. Guerrero*, when he recited that

> The plaintiff's federal question must appear on the face of his well-pleaded complaint. The plaintiff need not specifically cite a federal provision such as Section 1983, but he must allege facts sufficient to establish a colorable issue of federal law. The plaintiff is the master of the claim, so he may confine his

---

[1] It is precisely because "removal raises significant federalism concerns" that "the removal statute is strictly construed and any doubt as to the propriety of removal should be resolved in favor of remand." *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (vacating judgment and remanding case to district court with instructions to remand to state court); *see also Rayburn v. Miss. Dev. Authority*, 877 F. Supp. 2d 494 (S.D. Miss. 2012) (remanding case to state court on its own motion after finding a lack of subject matter jurisdiction).

arguments to those arising under state law even if federal claims are available. If he so chooses, there is no basis for federal jurisdiction. Further, anticipation of a federal defense is insufficient to establish federal-question jurisdiction.

863 F.3d 353, 358-59 (5th Cir. 2017) (quotation marks, citations, and brackets omitted). This law is well-established. *See Arkansas v. Kansas & Texas Coal Co.*, 183 U.S. 185, 188 (1901) ("[I]t has been settled that a case cannot be removed from a state court into the circuit court of the United States on the sole ground that it is one arising under the Constitution, laws, or treaties of the United States, unless that appears by plaintiff's statement of his own claim.").

This case is presently in its first week of trial. On day two, during examination of the plaintiff's first witness, counsel for Entergy urged the Court to apply *Entergy Corporation v. Jenkins* to our dispute. *See* 469 S.W.3d 330 (Tex. App. 2015). The Court took a close look at the decision.

*Jenkins* is indeed similar to our case.[2] There, as here, the plaintiff(s) "filed suit against Entergy alleging that it had devised and operated an improper energy-purchasing scheme under which it had selected internally generated, higher-priced electrical power while rejecting less expensive, available third-party power, resulting in theft from . . . retail power customers in violation of" state law.[3] *Id.* at 335. There, as here, "Entergy removed the suit to federal court alleging federal question jurisdiction." *Id.* So far, so good.

In *Jenkins*, however, "[t]he federal court remanded the case to state court, concluding that the suit did not invoke federal law." *Id.* The question then becomes, if *Jenkins* is so similar to

---

[2] The defendants have told the Court repeatedly that *Jenkins* is "instructive," and they have embraced that decision, asserting that the case had "*circumstances identical to those here*." Defendants' Pre-Trial Memorandum, Docket No. 359 at 11 (emphasis added); *see also* Defendants' Proposed Findings of Fact and Conclusions of Law as Submitted in Advance of Trial at ¶¶ 134-36 ("Especially instructive is *Jenkins*."). In prior filings with this Court, the State too has told us that this case is "virtually identical" to *Jenkins*. Docket No. 10 at 33.
[3] In both cases, the plaintiff(s) also sued Entergy's state-based affiliates.

2

this case and was resolved in state court, why is this case being heard in federal court? The trial was paused so the parties could provide supplemental briefing and argue this issue.

In an earlier Order, the District Judge presiding over this case determined that jurisdiction was proper under the Class Action Fairness Act. *See* Docket No. 37. When an intervening U.S. Supreme Court decision revealed that conclusion to be incorrect and rendered CAFA unavailing as a source of jurisdiction, *see Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014), the District Judge pivoted and determined that jurisdiction was proper because there was a federal question buried in the complaint. He reasoned as follows:

> Mississippi's complaint challenges EMI's [Entergy Mississippi's] failure to use its discretion to purchase the allegedly cheaper energy from third-party suppliers. Specifically, Mississippi accuses EMI and the other EOCs of failing to "make a purchase of electricity from a non-affiliate for its/their 'own account.' Entergy Agreement, Sec. 402. Despite this ability to do so, EMI deliberately decided not to pursue less expensive non-affiliate supplies of electricity, and, instead, merely accepted transfers . . . of the expensive ESX electricity." Mississippi's Complaint at 38.
>
> Mississippi's challenge, then, requires an analysis of the Entergy Agreement. The Entergy Agreement is a FERC tariff, which applies with the force of federal law. *See Carter v. Am. Tel. & Tel. Co.*, 365 F.2d 486, 496 (5th Cir. 1966). In essence, Mississippi is suing EMI for its failure to vindicate its federal power to initiate the process of buying energy from a third-party supplier. Mississippi's cause of action, therefore, derives from federal law; this court simply cannot adjudicate Mississippi's claim without determining the precise nature of the discretion vested in EMI by federal law. Whether EMI had the discretion to purchase energy from third-party suppliers—and failed to do so—within the meaning of the federal tariff is an essential element of Mississippi's claim.

Docket No. 68 at 11-12.[4]

In the *Jenkins* federal court action, however, Judge Kent arrived at the opposite conclusion. He found no federal question jurisdiction on the face of the complaint.

> None of the Texas common-law or statutory causes of action cited by Plaintiffs in their Petition require the violation of a federal tariff. Conduct that violates the tariff

---

[4] The District Judge certified the Order for an immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The Fifth Circuit declined to hear the appeal.

> may also violate the [Texas statute] or other common-law duties, but a violation of the tariff is not an essential element to any of Plaintiffs' claims. . . . Defendants have tried to escape this result through very skillful briefing of the issues in this Motion, but the fact remains that the federal tariff at issue is <u>not</u> an <u>essential element</u> to any of Plaintiffs' claims.

*Jenkins v. Entergy Corp.*, No. G-03-746, Docket No. 29 at 5 (S.D. Tex. Jan. 29, 2004). Without subject matter jurisdiction, Judge Kent remanded the dispute to state court, where Entergy later prevailed.

Entergy argues that Judge Kent's decision is not persuasive because it predates *Grable & Sons Metal Products v. Darue Engineering and Manufacturing*, a Supreme Court decision on federal question jurisdiction. 545 U.S. 308 (2005). So let us turn to *Grable*.

The Fifth Circuit has articulated the *Grable* standard in this way:

> "The question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable,* 545 U.S. at 314, 125 S. Ct. 2363. In other words, federal question jurisdiction exists where (1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities.

*Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008) (brackets omitted). Only "a special and small category of cases" has ever satisfied this test. *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (quotation marks and citation omitted). "In cases lacking a federal cause of action, the Supreme Court has clearly upheld jurisdiction under § 1331 in only four instances." *PlainsCapital Bank v. Rogers*, 715 F. App'x 325, 328 (5th Cir. 2017) (quotation marks and citation omitted).

Entergy has not shown that today's case can "be squeezed into the slim category *Grable* exemplifies." *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 701 (2006). Although this case involves a federal issue—the Entergy Agreement—there is no dispute about the

4

Agreement to resolve. The parties agree that Entergy Mississippi had the authority to, and in fact did, make own-account purchases under the Entergy Agreement. *See, e.g.*, Trial Tr. Vol. 2 at 26. The plaintiff's claims do not require showing a breach of that Agreement or otherwise "turn on substantial questions of federal law." *Grable*, 545 U.S. at 312; *accord Cent. Iowa Power Co-op. v. Midwest Indep. Transmission Sys. Operator, Inc.*, 561 F.3d 904, 913 (8th Cir. 2009) ("If CIPCO must prove a violation of the O & T Agreement to recover under its state law claims, and if proving that violation challenges FERC-filed rates, then those claims would raise a federal issue. But as we explain below, CIPCO need not establish a violation of the O & T Agreement to succeed in proving its state law claims."). Rather, the plaintiff "filed this action in a Mississippi state court, to enforce Mississippi's consumer protection and antitrust laws, for the protection of the economic well-being of Mississippi's consumers and governmental entities." *Mississippi ex rel. Hood v. AU Optronics Corp.*, 876 F. Supp. 2d 758, 779 (S.D. Miss. 2012), *aff'd*, 571 U.S. 161 (2014).[5]

To be sure, there are decisions on both sides of this issue. Two judges within this District have now come to opposite conclusions about the very same case.[6] But to the extent this is a close call—and this Court is not persuaded that it *is* a close call—the law favors remand. As discussed above, "[f]ederal courts are courts of limited jurisdiction," and "[i]t is to be presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*,

---

[5] Mississippi federal courts have a history of remanding consumer protection and antitrust cases brought by the Mississippi Attorney General on behalf of the State and as *parens patriae* on behalf of Mississippi citizens. *See, e.g.*, *Moore ex rel. State of Miss. v. Abbott Labs., Inc.*, 900 F. Supp. 26 (S.D. Miss. 1995); *Hood v. Capital One Bank (USA) N.A.*, No. 3:12-CV-565-WHB-LRA, 2014 WL 12496736 (S.D. Miss. Sept. 30, 2014); *Hood v. AstraZeneca Pharma.*, 744 F. Supp. 2d 590 (N.D. Miss. 2010); *Hood v. Ortho-McNeil-Janssen Pharma., Inc.*, No. 1:08-CV-166-SA-JAD, 2009 WL 561575 (N.D. Miss. Mar. 4, 2009); *Hood ex rel. Miss. v. Miss. Farm Bureau Ins.*, No. 3:05-CV-572-L-N, 2006 WL 8197045 (S.D. Miss. Mar. 8, 2006).

[6] This is not the first time judges in this District have reached different, but informed conclusions. *Compare AU Optronics*, 876 F. Supp. 2d 758 *with Hood v. JPMorgan Chase & Co.*, 958 F. Supp. 2d 681 (S.D. Miss.), *rev'd*, 737 F.3d 78 (5th Cir. 2013). Surely, it will happen again.

5

511 U.S. 375, 377 (1994). Where there is doubt as to the propriety of removal, the case must be remanded. *Dubose v. Merchants and Farmers Bank*, 318 F. Supp. 2d 419, 424 (S.D. Miss. 2003) (citations omitted).

Entergy presses that "remanding to state court at this stage would only serve as a lengthy and costly detour in this already long-running case." It is a valid point. It would have been better to remand this case before trial commenced. All involved, including the undersigned, bear some responsibility for that.[7] But the Court is confident that "the state court in which the . . . suit was lodged is competent to apply federal law, to the extent it is relevant," and has particular expertise in deciding the many state law issues that are central to this case. *Empire Healthchoice*, 547 U.S. at 701.

Although the parties do not wish to hear this right now, the Court is also confident that remanding will avoid a significant risk of an even more inefficient outcome. Consider *Oliver v. Trunkline Gas Co.*, 789 F.2d 341, 343 (5th Cir. 1986). In that case, the Fifth Circuit vacated a multi-million-dollar judgment after finding that "the presence of a federal issue, however much it may dominate the case, is insufficient to confer federal-question jurisdiction. On the contrary, such jurisdiction is conferred by statute only when the plaintiff is asserting a right created by federal law." The appellate court continued,

> We are fully aware of the inefficiency and expense to which these [plaintiffs] are being subjected. They properly chose a state forum. When their suit was removed to federal court, they properly moved for a remand, and they supported their motion with the correct legal arguments. Now, after having won a judgment that would have been worth almost $4 million, they are being told that they must start all over again in the state court that they originally and correctly chose. We cannot avoid this result, for the rules of federal jurisdiction, while sometimes technical and counterintuitive, are strict and mandatory. *Cf. In re Carter,* 618 F.2d 1093, 1100

---

[7] In its supplemental briefing, the State abandoned its original assertion that the "Defendants have clearly failed to carry their heavy burden of establishing the propriety of removal." Docket No. 10 at 35. It now says *Jenkins* does not apply and the "Court's original reasoning in asserting federal question jurisdiction remains persuasive." Docket No. 376 at 2-3.

(5th Cir. 1980), *cert. denied,* 450 U.S. 949, 101 S. Ct. 1410, 67 L. Ed. 2d 378 (1981). Furthermore the presumption is that every federal court is "without jurisdiction" unless "the contrary appears affirmatively from the record." *King Bridge Co. v. Otoe County,* 120 U.S. 225, 226, 7 S. Ct. 552, 30 L. Ed. 623 (1887). Federal courts are courts of limited jurisdiction by origin and design, implementing a basic principle of our system of limited government. In sum, we do not visit a mere technicality upon the parties. Rather, we uphold a basic tenet of the American system of diffused political and judicial power.

*Id.* In short, it is better to finally resolve the jurisdictional issue now than risk having everyone's work evaporate many years from now on appeal.[8] *E.g., Cent. Iowa Power Co-op.*, 561 F.3d at 920 ("The district court's judgment is reversed, and the case is remanded to the district court with directions to remand the case to the Iowa District Court in and for Linn County, the court from which it was wrongfully removed.").

For these reasons, the Court lacks subject matter jurisdiction.

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). In accordance with this statute, this case is remanded to the Chancery Court of Hinds County, Mississippi.

**SO ORDERED**, this the 4th day of April, 2019.

s/ Carlton W. Reeves
UNITED STATES DISTRICT JUDGE

---

[8] A $4 million judgment pales in comparison to the more than $1 billion judgment the State is seeking in this case. It certainly would do no one any good to obtain such a significant judgment in federal court only to be told later that the state court is the appropriate forum.